**IN THE UNITED DISTRICT COURT FOR THE DISTRICT OF VIRGINIA**
**EASTERN DISTRICT**
**(NEWPORT NEWS DIVISION)**

Patricia Sanders
18 Reynolds Dr.
Hampton, VA 23664

      Plaintiff

v.

Oquirrh Mountain Law Group, P.C.,
d/b/a Lexington Law Firm, Lexington Law
Serve On: John Heath
257 E. 200 South STE 1000,
Salt Lake City, UT, 84111

      Defendant.

Case No. 4:25-cv-00149-JKW-DEM

---

**AMENDED COMPLAINT**

Plaintiff, Patricia Sanders, by and through her attorney, Lucrecia P. Johnson, Esq.,  and LPJ Legal PLLC, hereby files this complaint against Oquirrh Mountain Law Group, P.C., d/b/a Lexington Law Firm ("Lexington Law"), and alleges on knowledge as to her own action, and otherwise upon information and belief as follows:

**INTRODUCTION**

This is an action for damages and injunctive relief arising from Lexington Law's systematic violation of the Credit Repair Organizations Act (CROA) and its contractual and common law duties.

Lexington Law holds itself out as a professional law firm providing credit repair services to consumers, including Plaintiff Patricia Sanders, who retained the firm to improve her creditworthiness. After Ms. Sanders had spent years paying monthly fees, she discovered that Lexington Law was generating false and fabricated monthly credit reports and statements to

1

Plaintiff, falsely indicating that previously resolved or timely paid accounts were delinquent. Lexington Law made these false representations to create the illusion of ongoing negative credit activity, thereby inducing Plaintiff to believe her credit remained "horrible" so that she would be in continuous need of Defendant's expensive monthly remediation services. Lexington Law's actions constituted fraud, breach of contract, and multiple violations of the CROA.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under 15 U.S.C. § 1679 et seq.

2. This Court has personal jurisdiction over Defendants because at all relevant times, it has engaged in substantial business activities in the Commonwealth of Virginia. At all relevant times, Defendant actively marketed, advertised, and provided services to residents of Virginia.

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Plaintiff resided in Hampton, Virginia, during the relevant time period. The fraudulent reports were transmitted to, received by, and relied upon by Plaintiff in this District, and many of the monthly payments constituting Plaintiff's damages were made by Plaintiff from this District.

## PARTIES

4. Plaintiff, Patricia Sanders, is an individual who resides in Virginia. Plaintiff is a consumer as defined in 15 U.S.C. § 1679a.

5. Defendant Oquirrh Mountain Law Group, P.C., d/b/a Lexington Law Firm, is a Utah professional corporation with its principal place of business in Salt Lake City, Utah. At all relevant times, Lexington Law was a nationwide credit repair organization as defined by 15 U.S.C. § 1679a(3).

2

**FACTS**

6.  Lexington Law primarily operates a high-volume, nationwide credit repair service to citizens and residents throughout the United States, including the Commonwealth of Virginia.

7.  Lexington advertises its services to Virginia residents and claims to have worked with "thousands of clients in Virginia." *See* https://www.lexingtonlaw.com/credit-repair-services/virginia.



8.  Lexington Law provides "fully remote" credit repair services, expressly designed to allow clients to follow their cases entirely online without physical meetings.

9.  Lexington Law's business model relies on a proprietary digital platform, including a mobile application and an online client portal, which provides clients with 24/7 access to credit monitoring, case progress tracking, and document review.

10. Lexington Law utilizes various digital channels, including telephone, text messaging (SMS), and online chat, to communicate with clients.

3

11. Through these interactive channels, Lexington Law actively solicited business from Virginia residents and maintained continuous business relationships with them.

12. Plaintiff Patricia Sanders retained Lexington Law to help her improve her credit.

13. As a condition of service, Plaintiff was required to enter into a written Retainer Agreement and pay monthly fees to Lexington Law for its ongoing services. Plaintiff paid approximately $129 a month until fees increased to $150 a month for services. Plaintiff performed her contractual obligations for nearly five years, paying over $8,000 to Lexington Law.

14. Plaintiff accessed Lexington Law's services while residing in Virginia.

15. Sometime around 2022, Mrs. Sanders started observing that Lexington Law was providing false and fabricated monthly credit reports and status updates.

16. These false reports misrepresented the status of Plaintiff's accounts, specifically alleging that Plaintiff's creditworthiness was declining or failing to improve, despite Plaintiff's timely payments to creditors.

17. Although Mrs. Sanders would pay off credit cards and other payments on time, Lexington would send Mrs. Sanders a monthly credit report that showed a late payment. Lexington Law would then make claims that they would be disputing the late payment to assist Plaintiff.

18. For example, Plaintiff completely paid off her student loan debt with American Education Services in March 2021. Despite this, Lexington Law's monthly reports continued to show this paid account as delinquent through 2022.

19. When Plaintiff asked Lexington Law to contact the student loan creditor and other creditors directly to correct the incorrect information, Lexington Law refused, stating it could not do so.

20. Plaintiff eventually contacted her creditors directly, who confirmed that they had reported timely payments and that the negative items claimed by Lexington Law were never reported by them.

21. Plaintiff ultimately discovered that the monthly reports provided by Lexington Law were not real reports derived from the credit bureaus but were made up by the Defendant.

22. Lexington Law's actions of fabricating and providing false credit reports were done with the intent and purpose of deceitfully extending the contractual relationship and inducing Plaintiff to continue paying the monthly fees under the fraudulent belief that her credit score required constant and ongoing remediation by Defendant.

23. Plaintiff terminated her service with Lexington Law around 2022, after paying monthly fees for services that were misrepresented or not performed.

## CAUSES OF ACTIONS

### Count 1
### Violation Of The Credit Repair Organizations Act (CROA)
### (15 U.S.C. §§1679a *et seq.*)

24. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

25. At all relevant times, Lexington Law was a "credit repair organization" as defined in 15 U.S.C. § 1679a(3) because it sold services for improving consumers' credit records and represented that it could remove negative items from credit reports.

26. 15 U.S.C.S. § 1679b(a)(1) prohibits untrue or misleading statements with respect to a consumer's credit standing or creditworthiness.

27. Lexington Law violated 15 U.S.C.S. § 1679b(a)(1) by lying about Plaintiff's credit standing and stating that she was late on her student loan payments in 2022.

28. 15 U.S.C.S. § 1679b(a)(3) prohibits untrue or misleading representations of the services of the credit repair organization.

29. Lexington Law violated 15 U.S.C. § 1679b(a)(3) by making untrue or misleading statements to Plaintiff regarding the services it was performing, including but not limited to falsely representing that negative items (late payments, delinquent loans) existed on Plaintiff's credit report and falsely representing that it was successfully disputing and removing those items.

30. 15 U.S.C.S. § 1679b(a)(4) prohibits credit-repair organizations from engaging in, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

31. Lexington Law violated 15 U.S.C. § 1679b(a)(4) by engaging in acts, practices, or a course of business that resulted in the commission of fraud or deception on the Plaintiff in connection with the sale of its services, specifically by fabricating credit reports to induce continued monthly payments.

32. 15 U.S.C.S. § 1679b(b) prohibits credit repair organizations from charging or receiving any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed.

33. Lexington Law violated 15 U.S.C. § 1679b(a)(b) by collecting payment ($129.00 to $150.0 every month) in advance of fully performing the services it was contracted to provide.

34. An entity that violates CROA is liable for actual damage, punitive damages, attorney fees, and costs. 15 U.S.C.S. § 1679g.

35. As a direct result of Defendant's violations of CROA, Plaintiff suffered damages, including all amounts paid to Lexington Law, lost opportunities to obtain credit, and emotional distress from dealing with inaccurate credit reporting.

36. Pursuant to 15 U.S.C. § 1679g, Plaintiff is entitled to recover actual damages, punitive damages, and attorney's fees and costs.

**Count 2**
**Breach Of Contract And**
**Breach Of The Implied Covenant Of Good Faith And Fair Dealing**

37. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

38. Plaintiff and Defendant entered into a written Retainer Agreement under which Defendant agreed to provide credit-repair services, communicate with credit bureaus and creditors on Plaintiff's behalf, and take reasonable steps to remove inaccurate or obsolete information from Plaintiff's credit reports. Plaintiff performed her obligations by paying monthly fees.

39. Defendant breached the express terms of the contract by:

a. Failing to provide services consistent with the representations made by a professional credit repair organization.

b. Refusing or failing to contact Plaintiff's student-loan creditor after the debt was paid, despite its contractual obligation to take reasonable steps to remove inaccurate information.

c. Fabricating and providing false "credit reports" to Plaintiff instead of providing accurate status updates.

40. "[E]very contract contains an implied covenant of good faith and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009).

41. Defendant violated the implied covenant of good faith and fair dealing by acting in bad faith, specifically by misrepresenting the status of Plaintiff's credit and the efficacy of its services

7

and prioritizing its financial interest (collecting monthly fees) over its fiduciary duty to Plaintiff.

42. As a direct result of Defendant's breaches, Plaintiff suffered monetary damages, including all fees paid to Lexington Law, and other consequential losses.

### Count 3
### Fraud

43. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44. Lexington Law made false representations to Plaintiff through the regular transmission of fabricated monthly credit reports and status updates, beginning in or around 2022.

45. Specifically, these reports falsely showed: (a) late payments on Plaintiff's credit card accounts when payments were made timely; and (b) a student loan account as delinquent when the debt had been fully paid off in March 2021.

46. The status and accuracy of Plaintiff's credit information were material facts that directly determined the necessity and value of Lexington Law's ongoing monthly services.

47. Lexington Law intentionally and knowingly created and transmitted the fabricated reports. This knowledge is demonstrated by the fact that the reports directly contradicted the actual information available to the Defendant (or which should have been available) and were generated internally, rather than being passed through directly from credit bureaus.

48. The false representations were made with the intent to mislead Plaintiff into believing her credit status remained poor and required immediate, continuous, and expensive remediation by Lexington Law. The purpose was to fraudulently induce Plaintiff to continue paying the monthly fees beyond the point where genuine credit repair was required.

49. Plaintiff relied on the false reports and the corresponding false statements from Lexington Law. Plaintiff, having contracted with a law firm specializing in credit repair, reasonably believed

the reports were accurate indicators of her credit standing and, therefore, continued paying monthly fees from 2022 until the fraud was discovered.

50. As a direct and proximate result of the fraudulent representations, Plaintiff suffered damage, including but not limited to the recovery of all monthly fees paid to Lexington Law during the period the fraudulent scheme was in effect, as well as consequential damages and emotional distress.

**Count 4**
**Negligent Misrepresentation**

51. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52. Lexington Law made a misrepresentation of a material fact to Plaintiff by providing fabricated monthly credit reports and status updates, representing that Plaintiff's accounts were delinquent (e.g., late credit card payments, delinquent student loans) when in fact they were timely or paid off.

53. While Lexington Law represented the false information to Plaintiff, it should have known the representations were false because the firm, in its professional capacity, was either creating the reports internally or failing to perform even the most basic duty of checking the alleged negative items against reliable data sources (the creditors and credit bureaus), demonstrating a profound lack of reasonable care or professional competence.

54. Lexington Law made these misrepresentations to Plaintiff with the intent to induce Plaintiff's reliance on the false necessity of its services, thereby causing her to continue paying the monthly Retainer Agreement fees.

55. Plaintiff acted in justifiable reliance on the misrepresentations, reasonably trusting a professional law firm to provide accurate information regarding her financial standing. As a

direct and proximate result, Plaintiff suffered injury, including but not limited to the fees paid during the period of misrepresentation.

**Count 5**
**Unjust Enrichment**
**(In the Alternative)**

56. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57. Plaintiff brings this claim for Unjust Enrichment in the alternative to her claim for Breach of Contract. If the Court finds that the Retainer Agreement is, for any reason, void, unenforceable, or otherwise inapplicable to the period of fraudulent fees, Plaintiff is entitled to restitution under the doctrine of unjust enrichment.

58. Defendant was enriched by receiving and retaining monthly payments from Plaintiff for nearly five years, particularly the monthly fees paid from 2022 onward during the period the services were based on fabricated reports.

59. Plaintiff was impoverished by paying these monthly fees to Lexington Law in exchange for professional services that were not performed in good faith or were based on fraudulent representations.

60. There is a direct relation between Defendant's enrichment and Plaintiff's impoverishment, as the exact funds constituting the enrichment (the monthly fees retained by Defendant) originated directly from the Plaintiff.

61. The retention of these fees by Lexington Law is without legal justification because the payments were secured through a scheme involving deceit and the fabrication of material facts, rendering the service provided fundamentally inequitable.

62. As a direct result of the unjust enrichment of the Defendant, Plaintiff seeks restitution of all sums paid to Defendant during the period of alleged misrepresentation.

10

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Patricia Sanders respectfully prays for judgment against Defendant Lexington Law Firm as follows:

A. For the greater of actual damages sustained by Plaintiff or statutory damages pursuant to 15 U.S.C. § 1679g;

B. For a refund of the monthly fees that Plaintiff paid to Defendant, more than $8,000.00.

C. For an award of punitive damages pursuant to 15 U.S.C. § 1679g;

D. For an award of reasonable attorney's fees and costs, as authorized by 15 U.S.C. § 1679g and other applicable law;

E. For pre-judgment and post-judgment interest at the highest legal rate; and

F. For such other and further relief as the Court deems just and proper.

Dated December 5, 2025

Respectfully Submitted,

/s/Lucrecia P. Johnson
Lucrecia P. Johnson, Esq. (VSB No. 96310)
LPJ Legal, PLLC
853 New Jersey Ave SE, Suite 200
Washington, DC 20003
202-643-6211
lucrecia@lpjlegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December 2025 true and correct copy of the foregoing was served by e-service and on the Defendant at:

Oquirrh Mountain Law Group, P.C.,
d/b/a Lexington Law Firm, Lexington Law
Serve On: John Heath
257 E. 200 South STE 1000

11

Salt Lake City, UT, 84111

/s/Lucrecia P. Johnson
Lucrecia P. Johnson, Esq.