# EXHIBIT 2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PGX HOLDINGS, INC., *et al.*,[1] | ) | Case No. 23-10718 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING LEXINGTON LAW STALKING HORSE PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF CERTAIN ASSETS OF THE DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (IV) GRANTING RELATED RELIEF**

Upon the motion, dated June 6, 2023 (the "Motion"),[2] of PGX Holdings, Inc., and its affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (each, a "Debtor" and, collectively, the "Debtors"), pursuant to Bankruptcy Code sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an order (this "Order"): (a) approving that certain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110). The location of the Debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion, the Lexington Law Stalking Horse Purchase Agreement (as defined herein), or the Bidding Procedures Order (as defined herein), as applicable.

*Asset Purchase Agreement* (as may be amended or otherwise modified from time to time and including all related documents, exhibits, schedules, and agreements thereto, collectively, the "Lexington Law Stalking Horse Purchase Agreement"), substantially in the form attached hereto as **Exhibit 1**, between and among John C. Heath, Attorney At Law PC d/b/a Lexington Law (the "Lexington Law Seller") and AcquisitionCo (together with each of its permitted successors, assigns and designees, collectively, the "Lexington Law Purchaser"), and authorizing the sale of the "Purchased Assets" (as defined in the Lexington Law Stalking Horse Purchase Agreement and hereinafter referred to as the "Transferred Assets") outside the ordinary course of business pursuant to the terms of the Lexington Law Stalking Horse Purchase Agreement and this Order (the "Sale" and, such transaction, the "Sale Transaction"), (b) approving the Sale of the Transferred Assets and other transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement to the Lexington Law Purchaser free and clear of all Claims (as defined below), Encumbrances (as defined in the Lexington Law Stalking Horse Purchase Agreement), Liabilities (as defined in the Lexington Law Stalking Horse Purchase Agreement), rights, other interests of any kind or nature whatsoever ("Interests"), and other encumbrances of any kind or nature whatsoever ("Encumbrances" and, collectively, "Claims, Interests and Encumbrances") (other than Permitted Encumbrances and Assumed Liabilities, as defined in the Lexington Law Stalking Horse Purchase Agreement) in accordance with the terms of the Lexington Law Stalking Horse Purchase Agreement, (c) approving the assumption and assignment of certain executory contracts and unexpired leases, and (d) granting certain related relief; and the Court having entered the *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets; (II) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder; (III) Scheduling an Auction and*

2

*Approving the Form and Manner of Notice Thereof; (IV) Approving Assumption and Assignment Procedures; (V) Scheduling a Sale Hearing and Approving the Forms and Manner of Notice Thereof and (VI) Granting Related Relief* (the "Bidding Procedures Order") on August 4, 2023 [Docket No. 331] authorizing the applicable Debtors to enter into the Lexington Law Stalking Horse Purchase Agreement pursuant to which the Lexington Law Purchaser agreed to serve as the "stalking horse bidder" with respect to the Transferred Assets, free and clear of any Claims, Interests and Encumbrances, with such Sale to be in accordance with the terms and conditions of the Bidding Procedures Order and the Lexington Law Stalking Horse Purchase Agreement; and the Bidding Procedures Order having authorized the Debtors to conduct, and approved the terms and conditions of, an auction, if applicable, as required and as set forth in the Bidding Procedures (as defined in the Bidding Procedures Order) (the "Auction") to consider higher or otherwise better offers for the Transferred Assets, establishing a date for the Auction, and approving, among other things (i) the Bidding Procedures to be used in connection with the Auction, if applicable; (ii) the form and manner of notice of the Auction and Bidding Procedures; (iii) the form of Sale Notice (as defined below); (iv) the form of Assumption Notice (as defined below); and (v) the procedures relating to the assumption and assignment of the Assumed Contracts (as defined in the Lexington Law Stalking Horse Purchase Agreement); and the Sale Hearing having been held on August 25, 2023; and the Court having reviewed and considered the relief sought in the Motion, the Lexington Law Stalking Horse Purchase Agreement, all objections to the Motion, and the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular

3

circumstances of these chapter 11 cases and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion, the Augustine Declaration [Docket No. 67], and the Frejka Declaration [Docket No. 68] and the supplemental Augustine Declaration [Docket No. 392] and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[3]**

### Jurisdiction and Venue

A.       This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

### Statutory Predicates

B.       The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363 and 365. Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1 and 6004-1.

### Final Order

C.       This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent

---

[3]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4

necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, waives any stay, and expressly directs entry of judgment as set forth herein.

### Notice of the Lexington Law Stalking Horse Purchase Agreement, Assumption and Assignment of Assumed Contracts, Sale Transaction, Sale Hearing and Bidding Procedures Order

D.      On June 4, 2023 (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.[4]

E.      The Debtors gave due and proper notice of the Sale on August 4, 2023 [Docket No. 335] (the "Sale Notice").  The Sale Notice constituted good, sufficient, and appropriate notice of the Sale under the particular circumstances and no further notice need be given with respect to the proposed Sale.  As provided by the Sale Notice, a reasonable and sufficient opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.  Other parties interested in bidding on the Transferred Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to bid.

F.      The Debtors also gave due and proper notice of the potential assumption and assignment of each executory contract or unexpired lease available to be assumed by the Debtors

---

[4]   A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Chad Wallace, Chief Executive Officer of PGX Holdings, Inc., in Support of Debtors' Chapter 11 Filing and First Day Motions*, filed on the Petition Date [Docket No. 12] and incorporated by reference herein.

and assigned to the Lexington Law Purchaser to each non-Debtor party under each such executory contract or unexpired lease as reflected on the notice of assumption, sale and assignment of the Assumed Contracts filed on August 4, 2023 [Docket No. 336] (the "Assumption Notice"). Such notice was good, sufficient, and appropriate under the particular circumstances, and the counterparties to the Assumed Contracts are hereby deemed to consent to the relief granted herein unless otherwise provided in this Order.

G. As evidenced by the affidavits of service [Docket Nos. 350, 354] and publication [Docket No. 341] previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Lexington Law Stalking Horse Purchase Agreement, this Order and the Sale Transaction has been provided in accordance with Bankruptcy Code sections 102(1) and 363, Bankruptcy Rules 2002, 9007, 9008 and 9014, and Local Rules 2002-1 and 6004-1. The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Lexington Law Stalking Horse Purchase Agreement, this Order and the Sale Transaction as required by the Bidding Procedures Order. The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Bid Deadline, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts, the Contract Objection Deadline, the Sale Objection Deadline, the Post-Auction Objection Deadline (each as defined in the Bidding Procedures Order), the Lexington Law Stalking Horse Purchase Agreement, this Order or the Sale Transaction is or shall be required.

H. A reasonable opportunity to object or be heard regarding the relief requested in the Motion and provided in this Order was afforded to all parties in interest.

**Compliance with the Bidding Procedures Order**

I. As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bidding Procedures Order. The Debtors and their professionals have adequately and appropriately marketed the Transferred Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtors' fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Transferred Assets.

J. The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Transferred Assets. The Debtors conducted the sale process without collusion and in accordance with the Bidding Procedures. No other entity or group of entities has presented a higher or otherwise better offer to the Debtors to purchase the Transferred Assets for greater economic value to the Debtors' estates than the Lexington Law Purchaser.

K. The Bidding Procedures Order is incorporated herein by reference.

L. The Lexington Law Purchaser is the Successful Bidder (as defined in the Bidding Procedures), and the Lexington Law Stalking Horse Bid is the Successful Bid (as defined in the Bidding Procedures), for the Transferred Assets in accordance with the Bidding Procedures Order. The Lexington Law Purchaser has complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the Lexington Law Stalking Horse Purchase Agreement, and the Sale Transaction and the Lexington Law

7

Stalking Horse Purchase Agreement likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

### Sale in Best Interests of the Debtors' Estates

M.      The Lexington Law Stalking Horse Purchase Agreement, including the form and total consideration to be realized by the Debtors under the Lexington Law Stalking Horse Purchase Agreement, (i) constitutes the highest and best offer received by the Debtors for the Transferred Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

N.      The Debtors' determination that the consideration provided by the Lexington Law Purchaser under the Lexington Law Stalking Horse Purchase Agreement constitutes the highest and best offer for the Transferred Assets constitutes a valid and sound exercise of the Debtors' business judgment.

O.      Good and sufficient reasons for approval of the Lexington Law Stalking Horse Purchase Agreement and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.  The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale Transaction other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale Transaction to the Lexington Law Purchaser is necessary and appropriate to maximize the value of the Debtors' estates.

P.      The Sale Transaction must be approved and consummated promptly in order to preserve the viability of the Debtors' businesses as a going concern and to maximize the value of the Debtors' estates.  Time is of the essence in consummating the Sale Transaction.  Given all of

the circumstances of these Chapter 11 Cases and the adequacy and fair value of the consideration received in exchange for the Transferred Assets (as further detailed in the Lexington Law Stalking Horse Purchase Agreement), the proposed Sale Transaction constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved. The transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors, and therefore, do not constitute a *sub rosa* plan.

Q.     The consummation of the Sale Transaction and the assumption and assignment of the Assigned Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

### Corporate Authority

R.     Subject to entry of this Order, the Debtors (i) have full corporate power and authority to execute and deliver the Lexington Law Stalking Horse Purchase Agreement and all other documents contemplated thereby, (ii) have all of the necessary corporate power and authority to consummate the transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (iii) have taken all corporate action necessary to authorize and approve the Lexington Law Stalking Horse Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, and (iv) subject to entry of this Order, need no consents or approvals, including any consents or approvals from any

9

non-Debtor entities, other than those expressly set forth in the Lexington Law Stalking Horse Purchase Agreement, the DIP Orders (as defined below) or this Order, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

S.      The Lexington Law Stalking Horse Purchase Agreement was not entered into, and none of the Debtors, including the Lexington Law Seller, or the Lexington Law Purchaser has entered into the Lexington Law Stalking Horse Purchase Agreement or proposes to consummate the Sale Transaction, for the purpose of hindering, delaying or defrauding the Debtors' creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

### Good Faith

T.      The sales process engaged in by the Debtors and the Lexington Law Purchaser, including, without limitation, the Auction, which was conducted in accordance with the Bidding Procedures and the Bidding Procedures Order, and the negotiation of the Lexington Law Stalking Horse Purchase Agreement, was non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.  None of the Debtors or the Lexington Law Purchaser has engaged in any conduct that would cause or permit the Lexington Law Stalking Horse Purchase Agreement or the Sale Transaction to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n).

U.      The Debtors and the Lexington Law Purchaser have complied, in good faith, in all respects with the Bidding Procedures Order and the Bidding Procedures.  The Debtors (including the Lexington Law Sellers), and their respective management, board of directors, board of

managers (or comparable governing authority), employees, agents, and representatives, and the Lexington Law Purchaser and its employees, agents, advisors and representatives, each actively participated in the bidding process and in the Auction, and each acted in good faith and without collusion or fraud of any kind. Lexington Law Purchaser subjected its bid to competitive bidding in accordance with the Bidding Procedures and was designated the Successful Bidder for the Transferred Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.

V.     The Lexington Law Purchaser is a good faith purchaser within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision in respect of the Sale Transaction, each term of the Lexington Law Stalking Horse Purchase Agreement (and any ancillary documents executed in connection therewith) and each term of this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding. None of the Debtors (including the Lexington Law Sellers) or the Lexington Law Purchaser has engaged in any conduct that would prevent the application of Bankruptcy Code section 363(m). The Debtors were free to deal with any other party interested in buying or selling some or all of the Transferred Assets on behalf of the Debtors' estates. The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Lexington Law Purchaser would not consummate the Sale Transaction without such protections.

W.     The form and total consideration to be realized by the Debtors under the Lexington Law Stalking Horse Purchase Agreement constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Transferred Assets.

**Free and Clear**

X.    The transfer of the Transferred Assets to the Lexington Law Purchaser will be legal, valid, and effective transfers of the Transferred Assets, and will vest the Lexington Law Purchaser with all right, title, and interest of the Debtors to the Transferred Assets free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights and encumbrances, including, without limitation, the following: all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed

or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or theories of liability related to acting in concert or active participation with the Debtors or related theories (all of the foregoing, including, without limitation, Liens and Liabilities, but excluding Assumed Liabilities (as defined in the Lexington Law Stalking Horse Purchase Agreement), collectively being referred to in this Order as "Claims" and, as used in this Order, the term "Claims" includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof); provided, however, that such transfer shall not be free and clear of any Permitted Encumbrances and Assumed Liabilities.

Y.    The Debtors may transfer the Transferred Assets free and clear of all Claims, Interests and Encumbrances, other than any Permitted Encumbrances and Assumed Liabilities, including, without limitation, rights or claims based on any successor or transferee liability or theories of liability related to actions in concert or active participation with the Debtors, because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.

Z.    Those (a) holders of Claims or Interests and (b) non-Debtor parties to the Assumed Contracts, who did not object or who withdrew their objections to the Motion, are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).  Those (i) holders of Claims or Interests and (ii) non-Debtor parties to the Assumed Contracts who did object, fall within one or more of the other subsections of Bankruptcy Code section 363(f).

AA.    Each of the DIP Secured Parties (as defined in the DIP Orders) has consented to the sale of the Transferred Assets to the Lexington Law Purchaser pursuant to the Lexington

13

Law Stalking Horse Purchase Agreement free and clear of any Claims, Interests, or Encumbrances (other than the Permitted Encumbrances and Assumed Liabilities) of the DIP Secured Parties against the Transferred Assets (the "Secured Lenders' Liens"), and any reference herein to Claims, Interests, or Encumbrances shall include the Secured Lenders' Liens.

BB.    The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

CC.    The Lexington Law Purchaser would not have entered into the Lexington Law Stalking Horse Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, (i) if the transfer of the Transferred Assets were not free and clear of all Claims, Interests, and Encumbrances (other than any Permitted Encumbrances and Assumed Liabilities), or (ii) if the Lexington Law Purchaser would, or in the future could, be liable for any such Claims, Interests, and Encumbrances (other than any Permitted Encumbrances and Assumed Liabilities).    The Lexington Law Purchaser will not consummate the transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, unless this Court expressly orders that none of the Lexington Law Purchaser, its affiliates, its present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever (other than any Permitted Encumbrances and Assumed Liabilities) with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims, Interests, and Encumbrances.

DD.    Not transferring the Transferred Assets free and clear of all Claims, Interests, and Encumbrances (other than any Permitted Encumbrances and Assumed Liabilities) would

14

adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Transferred Assets other than pursuant to a transfer that is free and clear of all Claims, Interests, and Encumbrances (other than any Permitted Encumbrances and Assumed Liabilities) would be of substantially less benefit to the Debtors' estates.

EE.    Neither the Lexington Law Purchaser nor any of its affiliates are a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Lexington Law Purchaser, any of its affiliates and any of the Debtors, and there is no continuity of enterprise or transfer of operations between the Lexington Law Purchaser, any of its affiliates and any of the Debtors.  Neither the Lexington Law Purchaser nor any of its affiliates are holding themselves out to the public as a continuation of any of the Debtors. Neither the Lexington Law Purchaser nor any of its affiliates are a successor to, or assignee or transferee of, any of the Debtors or their estates and none of the transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts amounts to a consolidation, merger, or *de facto* merger of the Lexington Law Purchaser or any of its affiliates with or into any of the Debtors or an assignment of all or part of the Debtors' operations to the Progrexion Purchaser.

FF.    Without limiting the generality of the foregoing, and other than as may be set forth in the Lexington Law Stalking Horse Purchase Agreement, none of the Lexington Law Purchaser, its affiliates, its and their respective present or contemplated members or shareholders, or the Transferred Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities,

that the Debtors may incur in connection with consummation of the transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, or that the Debtors have otherwise incurred prior to the consummation of the transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement.

### Validity of Transfer

GG.     The consummation of the transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Lexington Law Stalking Horse Purchase Agreement.

HH.     The Transferred Assets constitute property of the Debtors' estates and good title to the Transferred Assets of the Debtors is vested in the Debtors' estates within the meaning of Bankruptcy Code section 541(a).  The Debtors are the sole and lawful owners of the Transferred Assets, and no other person has any ownership right, title, or interest therein.

II.     The Lexington Law Stalking Horse Purchase Agreement has been duly and validly executed and delivered by the Debtors and, subject to the terms of the Lexington Law Stalking Horse Purchase Agreement, shall constitute a valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms.  The Lexington Law Stalking Horse Purchase Agreement, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and

16

any chapter 7 or chapter 11 trustee appointed in these Chapter 11 Cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

JJ.    Nothing herein is intended to release or discharge the Debtors, the Committee (as defined below), or the Lexington Law Purchaser from their respective obligations consistent with the terms of the Global Settlement Term Sheet (as defined below).

## Assumed Contracts

KK.    The assumption and assignment of the Assumed Contracts pursuant to the Assumption Notice, the terms of this Order and the Lexington Law Stalking Horse Purchase Agreement is integral to the transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement and is in the best interests of the Debtors, their estates and creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

LL.    Pursuant to the terms of the Lexington Law Stalking Horse Purchase Agreement and this Order, on or before the Closing Date (as defined in the Lexington Law Stalking Horse Purchase Agreement), the Debtors or the Lexington Law Purchaser, as applicable, shall have, except as otherwise provided in the Lexington Law Stalking Horse Purchase Agreement or this Order or as otherwise expressly agreed to between the Debtors or the Lexington Law Purchaser (as applicable) and such counterparty: (i) cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(A), (ii) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(B), and (iii) provided adequate assurance of future performance under the Assumed Contracts within

17

the meaning of Bankruptcy Code sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B). Pursuant to section 363(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the Lexington Law Stalking Horse Purchase Agreement shall be assigned and transferred to the Lexington Law Purchaser (in accordance with the Lexington Law Stalking Horse Purchase Agreement), and remain in full force and effect for the benefit of the Lexington Law Stalking Horse Purchaser, notwithstanding any provision in the contracts or other prohibitions or restrictions prohibiting or conditioning their assignment or transfer.

**Application of Proceeds**

MM. Pursuant to the interim and final orders authorizing and approving the Debtors' debtor in possession financing and use of Cash Collateral [Docket Nos. 70 and 332] (together, the "DIP Orders"), the Transferred Assets constitute Cash Collateral and DIP Collateral and are subject to the Adequate Protection Liens (as defined in the DIP Orders) and DIP Liens. Pursuant to the DIP Orders and the DIP Documents (as defined in the DIP Orders), the Debtors are required to apply all consideration received from the Sale of the Transferred Assets in accordance with the terms of the DIP Orders and the Lexington Law Stalking Horse Purchase Agreement.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1. The Motion is granted as provided herein, and entry into and performance under, and in respect of, the Lexington Law Stalking Horse Purchase Agreement attached hereto as **Exhibit 1** and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts is authorized and approved.

18

2.	Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein, including for purposes of sections 363(f)(2), 365(c)(1), and 365(e)(2) of the Bankruptcy Code.

<u>**Approval of the Lexington Law Stalking Horse Purchase Agreement**</u>

3.	The Lexington Law Stalking Horse Purchase Agreement, all ancillary documents, the transactions contemplated thereby, including, without limitation, the Sale Transaction, any transaction necessary to effectuate the Sale Transaction including any transaction necessary to effectuate a Reorganization (as defined and subject to the terms and conditions set forth in the Lexington Law Stalking Horse Purchase Agreement) if elected, and the assumption and assignment of the Assumed Contracts (but subject to the Lexington Law Purchaser's rights with respect thereto pursuant to the Lexington Law Stalking Horse Purchase Agreement) and all the terms and conditions thereof, are approved. The failure specifically to include any particular provision of the Lexington Law Stalking Horse Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Lexington Law Stalking Horse Purchase Agreement be authorized and approved in its entirety.

4.	The Debtors and their respective officers, employees and agents are authorized and directed to take any and all actions necessary, appropriate or reasonably requested by the Lexington Law Purchaser to perform, consummate, implement and close the Sale Transaction, including, without limitation, (a) the sale to the Lexington Law Purchaser of all Transferred Assets, in accordance with the terms and conditions set forth in the Lexington Law Stalking

Horse Purchase Agreement, any applicable rules of professional conduct, and this Order; and (b) execution, acknowledgment and delivery of such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and any action for purposes of assigning, transferring, granting, conveying and confirming to the Lexington Law Purchaser, or reducing to possession, the Transferred Assets, all without further order of this Court. The Debtors are further authorized to pay, without further order of this Court and in accordance with the Approved Budget (as defined in the DIP Orders), whether before, at or after the Closing Date, any reasonable and documented out-of-pocket expenses or costs that are required to be paid by the Debtors under the Lexington Law Stalking Horse Purchase Agreement, this Order or the Bidding Procedures Order, in order to consummate the Sale Transaction or perform their obligations under the Lexington Law Stalking Horse Purchase Agreement.

5. All persons and entities, including, without limitation, the Debtors, the Debtors' estates, all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, clients, trustees, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Claims (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated) against the Debtors or the Transferred Assets owned by the Debtors, arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Assets owned by the Debtors, the operation or ownership of the Transferred Assets by the Debtors prior to the Closing Date, or the Sale Transaction, are hereby prohibited, forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against Lexington Law Purchaser, its affiliates, successors, assigns, its property or the Transferred Assets, including, without limitation, taking any of the following actions with

respect to any Claims: (a) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against Lexington Law Purchaser, its affiliates, successors, assigns, assets (including the Transferred Assets), and/or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Lexington Law Purchaser, its affiliates, successors, assigns, assets (including the Transferred Assets), and/or properties; (c) creating, perfecting, or enforcing any Claim against Lexington Law Purchaser, its affiliates, any of their respective successors, assigns, assets (including the Transferred Assets), and/or properties; (d) asserting a Claim as a setoff, right of subrogation, or recoupment of any kind against any obligation due against Lexington Law Purchaser, its affiliates or any of their respective successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order, the Lexington Law Stalking Horse Purchase Agreement, or the agreements or actions contemplated or taken in respect thereof, including the Debtors' ability to transfer the Transferred Assets to the Lexington Law Purchaser in accordance with the terms of this Order, any applicable rules of professional conduct and the Lexington Law Stalking Horse Purchase Agreement. No such Person shall assert or pursue against Lexington Law Purchaser or its affiliates, successors or assigns any such Claim.

6. The Sale of the Transferred Assets to the Lexington Law Purchaser under the Lexington Law Stalking Horse Purchase Agreement constitutes a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all applicable jurisdictions, including, without limitation, the laws of each jurisdiction in which the Transferred Assets are located, and the sale of the Transferred Assets to the Lexington Law Purchaser may not be avoided under any statutory or common law fraudulent conveyance and fraudulent

21

transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

### Transfer of the Transferred Assets Free and Clear

7.      Pursuant to Bankruptcy Code sections 105(a) and 363(f), the Transferred Assets shall be sold free and clear of all Claims, Interests, and Encumbrances (other than any Permitted Encumbrances and Assumed Liabilities), including, for the avoidance of doubt, the Secured Lenders' Liens, with all such Claims to attach to the proceeds of the Sale Transaction to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Transferred Assets, subject to any claims and defenses the Debtors may possess with respect thereto; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale Transaction.

8.      At Closing, all of the Debtors' right, title and interest in and to, and possession of, the Transferred Assets shall be immediately vested in the Lexington Law Purchaser pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f) free and clear of any and all Claims, Interests, and Encumbrances (other than any Permitted Encumbrances and Assumed Liabilities). Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Lexington Law Purchaser with good and marketable title to, the Transferred Assets. All persons or entities, presently or on or after the Closing Date, in possession of some or all of the Transferred Assets are directed to surrender possession of the Transferred Assets to the Lexington Law Purchaser or its designees on the Closing Date or at such time thereafter as the Lexington Law Purchaser may request.

9.      This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies,

22

recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the Lexington Law Stalking Horse Purchase Agreement.

10. Except as otherwise expressly provided in the Lexington Law Stalking Horse Purchase Agreement or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, clients, vendors, employees, trade creditors, litigation claimants and other creditors holding Claims against the Debtors or the Transferred Assets arising under or out of, in connection with, or in any way relating to, the Debtors, their estates, the Debtors' predecessors or affiliates, the Transferred Assets, the ownership, sale or operation of the Transferred Assets prior to the Closing Date or the transfer of the Transferred Assets to the Lexington Law Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting or prosecuting any cause of action or any process or other act or seeking to collect, offset, or recover on account of any Claims against the Lexington Law Purchaser, its successors or assigns, their property or the Transferred Assets, other than Permitted Encumbrances and Assumed Liabilities. Following the Closing Date, no holder of any Claim, Interest or Encumbrance (other than Permitted Encumbrances and Assumed Liabilities) shall interfere with the Lexington Law Purchaser's title

to or use and enjoyment of the Transferred Assets based on or related to any such Claim, Interest or Encumbrance (other than Permitted Encumbrances and Assumed Liabilities), or based on any action or omission of the Debtors, including any action or omission the Debtors may take in the Chapter 11 Cases.

11.     The Debtors are authorized and directed to execute such documents as may be necessary to release any Claims, Interests, or Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) of any kind against the Transferred Assets as such Claims, Interests, or Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements, lis pendens or other documents or agreements evidencing Claims, Interests, or Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) against or in the Transferred Assets shall not have delivered to the Debtors prior to the Closing Date of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims, Interests, or Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) that the person or entity has with respect to the Transferred Assets, (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Transferred Assets; (b) the Lexington Law Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Claims, Interests, or Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) against the Lexington Law Purchaser and the applicable Transferred Assets; (c) the Debtors' creditors and the holders of any Claims, Interests, or Encumbrances (other than Permitted

Encumbrances and Assumed Liabilities) are authorized and directed to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Claims, Interests, or Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) in the Transferred Assets and (d) the Lexington Law Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Claims, Interests, or Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) with respect to the Transferred Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office, and such agencies, departments and offices are authorized to accept this Order for filing or recording. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Transferred Assets free and clear of Claims, Interests, and Encumbrances (other than any Permitted Encumbrances and Assumed Liabilities) shall be self-executing, and none of the Debtors or the Lexington Law Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

12. To the maximum extent permitted under applicable law and any applicable rule of professional conduct, the Lexington Law Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Transferred Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Lexington Law Purchaser with respect to the Transferred Assets as of the Closing Date. To the extent the Lexington Law Purchaser cannot

operate under any such license, permit, registration and governmental authorization or approval in accordance with the previous sentence, such licenses, permits, registrations and governmental authorizations and approvals shall be in effect while the Lexington Law Purchaser, with assistance from the Debtors (and at the Lexington Law Purchaser's sole cost and expense), works promptly and diligently to apply for and secure all necessary government approvals for new issuance of such licenses, permits, registrations and governmental authorizations and approvals to the Lexington Law Purchaser. Nothing in this Order or the Lexington Law Stalking Horse Purchase Agreement precludes or enjoins the enforcement of any valid police or regulatory liability to a governmental unit for acts taken by the Lexington Law Purchaser after the Closing Date, to which the Lexington Law Purchaser may be subject to as the owner or operator of any property that is a Transferred Asset after the Closing Date; provided, however, that all rights and defenses of the Lexington Law Purchaser under nonbankruptcy law are preserved. Nothing in this Order or the Lexington Law Stalking Horse Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law.

13. No governmental unit (as defined in Bankruptcy Code section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Transferred Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale Transaction to the extent that

any such action by a governmental unit or any representative thereof would violate Bankruptcy Code section 525.

14. The maintenance and transfer of the Transferred Assets, including, without limitation, the Lexington Law Records throughout the Sale process and as part of the Sale Transaction was in accordance with any and all applicable rules of professional conduct.

**No Successor or Transferee Liability**

15. Upon the Closing Date, except as provided in the Lexington Law Stalking Horse Purchase Agreement, the entry of this Order and the Lexington Law Stalking Horse Purchase Agreement shall mean that the Lexington Law Purchaser (and any of its affiliates, successors, or assigns), as a result of any action taken in connection with the Lexington Law Stalking Horse Purchase Agreement, the consummation of the transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, or the transfer or operation of the Transferred Assets, shall not be, nor be deemed to: (a) be a legal successor or successor employer to the Debtors, or otherwise be deemed a successor to the Debtors, and shall instead be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Debtors; or (c) have received an assignment or transfer of all or part of the operations of the Debtor or Debtors' estates; or (d) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, or otherwise be deemed to be acting in concert or active participation with the Debtors, including, in the case of each of (a)-(c), without limitation, (x) within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation

Act, the WARN Act (29 U.S.C. §§ 2101 et seq.) ("WARN"), Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, et seq. or (y) in respect of (i) any environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, (ii) any liabilities, penalties, costs, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), (iii) any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine or (iv) any consumer protection law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, including, without limitation, any liabilities, penalties, costs, debts or obligations imposed by the Federal Trade Commission and/or Bureau of Consumer Protection, of or required to be paid by the Debtors.

16. Without limiting the generality of the foregoing, and except as otherwise provided in the Lexington Law Stalking Horse Purchase Agreement and this Order, neither the Lexington Law Purchaser (nor any of its affiliates, successors or assigns) shall have any responsibility for (a) any liability or other obligation of the Debtors related to the Transferred Assets or (b) any Claims against the Debtors or any of their predecessors or affiliates. By virtue of the Lexington Law Purchaser's purchase of the Transferred Assets, neither the Lexington Law Purchaser nor any of its affiliates shall have any liability whatsoever with respect to the Debtors' (or their

28

predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or any theory based on acting in concert or active participation with the Debtors, or based upon any theory of antitrust, environmental (including, but not limited to CERCLA), successor or transferee liability, *de facto* merger or substantial continuity, labor and employment (including, but not limited to, WARN), consumer protection law, or products liability law, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing Date or such later time as Lexington Law Purchaser is assigned and assumes any Assumed Contract (collectively, with the potential claims set forth in paragraph 14 above, "Successor or Transferee Liability").  The Lexington Law Purchaser would not have acquired the Transferred Assets but for the foregoing protections against Successor or Transferee Liability.

17.     None of the Lexington Law Purchaser or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Lexington Law Stalking Horse Purchase Agreement and the entry into and consummation of the Sale of the Transferred Assets, except as expressly provided in the Lexington Law Stalking Horse Purchase Agreement and this Order.

18. Nothing in this Order or the Lexington Law Stalking Horse Purchase Agreement shall require the Lexington Law Purchaser or any of its affiliates to (a) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, fringe benefit or any trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including, without limitation, pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

19. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Order, including, without limitation, the Lexington Law Stalking Horse Purchase Agreement and the Sale Transaction.

### Good Faith Sale

20. The Lexington Law Stalking Horse Purchase Agreement has been negotiated and executed, and the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, are and have been undertaken, by Debtors, the Lexington Law Purchaser and their respective representatives without collusion and in "good faith," as that term is defined in Bankruptcy Code section 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the Lexington Law Stalking Horse Purchase Agreement, and shall not permit the unwinding of the Sale Transaction. The Lexington Law Purchaser is a good faith purchaser

within the meaning of Bankruptcy Code section 363(m) and, as such, is entitled to the full protections of Bankruptcy Code section 363(m).

21.     None of the Debtors or the Lexington Law Purchaser has engaged in any conduct that would cause or permit the Lexington Law Stalking Horse Purchase Agreement or the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, to be avoided or costs or damages to be imposed, under Bankruptcy Code section 363(n).  The consideration provided by the Lexington Law Purchaser for the Transferred Assets under the Lexington Law Stalking Horse Purchase Agreement is fair and reasonable, and the Sale Transaction may not be avoided under Bankruptcy Code section 363(n).

### Assumption and Assignment of the Assumed Contracts

22.     Except as otherwise expressly provided in the Lexington Law Stalking Horse Purchase Agreement or this Order, upon the Closing Date, pursuant to Bankruptcy Code sections 105(a), 363, and 365, the Debtors are authorized to (a) assume each of the Assumed Contracts and assign the Assumed Contracts, set forth in **Exhibit 2** (the "Assumed Contracts Exhibit") attached hereto, which may be subsequently modified at any time prior to the date that is two (2) business days prior to the Closing Date and upon Lexington Law Purchaser's delivery of written notice to the Debtors, to add or remove certain executory contracts or unexpired leases, pursuant to the terms of the Lexington Law Stalking Horse Purchase Agreement, to the Lexington Law Purchaser free and clear of all Claims, Interests, and Encumbrances (other than any Permitted Encumbrances and Assumed Liabilities) and (b) execute and deliver to the Lexington Law Purchaser such documents or other instruments as may be reasonably requested by Lexington Law Purchaser to assign and transfer the Assumed Contracts to the Lexington Law Purchaser.

23. Nothing in this Order, the Lexington Law Stalking Horse Agreement or any documents related to any of the foregoing shall be construed to authorize or permit the Lexington Law Sellers' assumption and assignment of any surety bond issued by Capitol Indemnity Corporation. Capitol Indemnity Corporation expressly reserves the right to seek relief from the automatic stay so as to seek cancellation of any surety bonds it issued on behalf of the Debtors, and the Debtors and all parties in interest reserve their respective rights to object to any such request for relief.

24. The Cure Amounts (as defined in the Lexington Law Stalking Horse Purchase Agreement) listed on the Assumption Notice and Assumed Contracts Exhibit are the sole amounts necessary to be paid upon assumption of the Assumed Contracts under Bankruptcy Code sections 365(b)(1)(A) and (B) and 365(f)(2)(A). All Cure Amounts, if any, shall be satisfied by the Lexington Law Purchaser. Upon the satisfaction of the Cure Amounts, if any, by the Lexington Law Purchaser, the Assumed Contracts shall remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default. The Cure Amounts shall not be subject to further dispute or audit, including, without limitation, any based on performance prior to the Closing Date, irrespective of whether such Assumed Contract contains an audit clause. After the payment of the Cure Amounts by the Lexington Law Purchaser, none of the Debtors or the Lexington Law Purchaser shall have any further liabilities to the counterparties to the Assumed Contracts other than the Lexington Law Purchaser's obligations under the Assumed Contracts that accrue and become due and payable on or after the Closing Date.

25.      In the event of a dispute as of, or after, the Closing Date regarding assumption and assignment or Cure Amount of any executory contract or unexpired lease proposed to be an Assumed Contract, the assumption and assignment of such executory contract or unexpired lease, and payment of any applicable Cure Amounts, shall be made following the entry of an order of the Court resolving any such dispute (or upon the consensual resolution of such dispute as may be agreed by the Lexington Law Purchaser and such counterparty and, solely with respect to disputes regarding Cure Amounts, the Debtors).  Upon an election of the Lexington Law Purchaser to designate an executory contract or unexpired lease as an Excluded Contract (as defined in the Lexington Law Stalking Horse Purchase Agreement), the Lexington Law Purchaser shall have no liability whatsoever to the counterparty to such executory contract or unexpired lease or the Debtors; *provided*, *however*, that a counterparty to an Assumed Contract shall not be barred from seeking additional amounts on account of any defaults occurring between the deadline to object to the Cure Amounts and the assumption of the contract.

26.      To the extent any non-Debtor counterparty to an Assumed Contract has failed to timely object to a proposed Cure Amount, such Cure Amount has been and shall be deemed to be finally determined as the Cure Amount listed on the Assumption Notice and Assumed Contracts Exhibit and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time.  The non-Debtor counterparty to an Assumed Contract is forever bound by the applicable Cure Amount and, upon payment of the Cure Amounts as provided herein and in the Lexington Law Stalking Horse Purchase Agreement, is hereby enjoined from taking any action against Lexington Law Purchaser with respect to any claim for cure under the Assumed Contract.

27.     Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.

28.     Any party that may have had the right to consent to the assignment of an Assumed Contract is deemed to have consented to such assignment, including for purposes of Bankruptcy Code sections 365(c)(1)(B) and 365(e)(2)(A)(ii) and otherwise, if such party failed to timely object to the assumption and assignment of such Assumed Contract.

29.     Each Assumed Contract constitutes an executory contract or unexpired lease under the Bankruptcy Code and all requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to the Lexington Law Purchaser of the Assumed Contracts have been, or will be, satisfied.  Upon the Lexington Law Purchaser's assumption of the Assumed Contracts in accordance with the terms hereof, in accordance with Bankruptcy Code sections 363 and 365, (a) the Lexington Law Purchaser shall be fully and irrevocably vested with all rights, title and interest of the Debtors under the Assumed Contracts, (b) the Lexington Law Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts, and (c) the Debtors shall be relieved, pursuant to Bankruptcy Code section 365(k), from any further liability under the Assumed Contracts.

30.     The Lexington Law Purchaser has demonstrated adequate assurance of future performance under the relevant Assumed Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

31. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtors or the Lexington Law Purchaser as a result of the assumption, assignment and sale of the Assumed Contracts. Subject to the terms of the Lexington Law Stalking Horse Purchase Agreement, the validity of the transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts, shall not be affected by any dispute between any of the Debtors or their affiliates, and another party to an Assumed Contract regarding the payment of any amount. Upon assignment to the Lexington Law Purchaser, the Assumed Contracts shall be valid and binding, in full force and effect and enforceable by the Lexington Law Purchaser in accordance with their respective terms.

32. Pursuant to Bankruptcy Code sections 105(a), 363, and 365, all counterparties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Lexington Law Purchaser any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of and including the Closing Date under the Lexington Law Stalking Horse Purchase Agreement or arising by reason of the consummation of transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assumed Contracts.

33. All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Lexington Law Purchaser, and shall not charge the Debtors or the Lexington Law Purchaser for, any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority

35

or other party or entity to effectuate the applicable transfers in connection with the Sale of the Transferred Assets.

### Good Faith

34.      The transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement are undertaken by the Lexington Law Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts) with the Lexington Law Purchaser, unless such authorization is duly stayed pending such appeal.  The Lexington Law Purchaser is a good faith purchaser of the Transferred Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

### Failure to Specify Provisions

35.      The failure specifically to include any particular provisions of the Lexington Law Stalking Horse Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Lexington Law Stalking Horse Purchase Agreement be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any inconsistency between the Lexington Law Stalking Horse Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Order shall control.

### Non-Material Modifications

36.     The Lexington Law Stalking Horse Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplements by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

### Additional Provisions

37.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction and all other transactions contemplated by the Lexington Law Stalking Horse Purchase Agreement.

38.     No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Transferred Assets sold, transferred or conveyed to the Lexington Law Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale of the Transferred Assets in accordance with applicable rules of professional conduct.

39.     Absent the express written consent of the Lexington Law Purchaser, the Debtors shall not settle or otherwise resolve any existing or future litigation with any third party or any governmental entity other than any settlement pursuant to which no restrictions are placed on or affecting the Transferred Assets or the operation of the business from and after the Closing Date or otherwise directly or indirectly materially affect the operation of, or impose successor or any other theory of liability upon, the Lexington Law Purchaser.

40.     Notwithstanding anything to the contrary herein or in the Lexington Law Stalking Horse Purchase Agreement, all claims and causes of action under chapter 5 of the

37

Bankruptcy Code and similar claims and causes of action under state or other applicable law held by the Lexington Law Seller first arising on or prior to the Closing Date, whether actual or potential, against any and all parties, including the current and former directors, officers, and managers of the Lexington Law Seller (such claims and actions, the "Avoidance Actions") and all of the rights, claims or causes of action of the Lexington Law Sellers of any kind, including those available under the Bankruptcy Code, against any officer, director, employee, manager or Affiliate of, or lender to, any Lexington Law Seller or any of their respective Affiliates shall be Transferred Assets pursuant to the Lexington Law Stalking Horse Purchase Agreement (together with the Avoidance Actions, the "Transferred Claims"); provided that that the Wind Down Debtor (as defined in the Restructuring Support Agreement) or the Debtors' estates shall retain all Avoidance Actions solely to the extent used defensively or as a counterclaim. The Lexington Law Purchaser agrees it shall not initiate, and shall cause its Affiliates or any subsidiary acquired in the Sale Transaction, not to initiate, continue, or otherwise maintain, any civil, administrative, or other proceeding related to Avoidance Actions against any party. For the avoidance of doubt, except to the extent expressly preserved pursuant to the Lexington Law Stalking Horse Purchase Agreement or this Order, the Lexington Law Purchaser, to the fullest extent permissible under applicable law, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged any and all Avoidance Actions.

41. Except as expressly provided in the Lexington Law Stalking Horse Purchase Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or

counterclaim in respect of any Excluded Asset (as defined in the Lexington Law Stalking Horse Purchase Agreement).

42. This Order shall not release or discharge the Debtors, the Committee, or the Lexington Law Purchaser from their respective obligations consistent with the terms and conditions of that certain Term Sheet for Plan and Settlement in Principle attached as Exhibit C to the Final DIP Order and incorporated by reference therein (the "Global Settlement Term Sheet"), which among other things, resolved the Committee's objections to the Sale.

43. Notwithstanding anything to the contrary in this Order or the Lexington Law Stalking Horse Purchase Agreement, the Lexington Law Purchaser agrees to be bound by all provisions reflected in Sections I, II, III, VII, VIII, IX, X, XI, and XII of the Stipulated Final Judgment and Order, to the extent such provisions are applicable to the Lexington Law Purchaser, to be entered by the United States District Court for the District of Utah (the "Utah District Court"), in the matter *Bureau of Consumer Financial Protection v. Progrexion Marketing, Inc., et al.*, Case No. 2:19-cv-00298-BSJ and which Stipulated Final Judgment and Order shall be in form and substance acceptable to the Lexington Law Purchaser (the "CFPB Settlement"). Notwithstanding anything to the contrary in this Order or the Lexington Law Stalking Horse Purchase Agreement, the Closing Date shall not occur until the earlier of (i) entry of the CFPB Settlement by the Utah District Court, or (ii) September 18, 2023 (such date or as may be consensually extended by the CFPB and the Debtors with the consent of the Progrexion Purchaser and Lexington Law Purchaser, the "Backstop Date"). Nothing in this Order or the Lexington Law Stalking Horse Purchase Agreement shall limit the CFPB's right to enforce or seek appropriate relief in a court of competent jurisdiction, or require the CFPB to submit to the jurisdiction of the Bankruptcy Court for any dispute related to or arising from the CFPB

Settlement, provided, however, that the Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters arising in connection with or related to this Order.

44.     In consideration of the CFPB Settlement, (a) the objection of the United States of America on behalf of the Consumer Financial Protection Bureau (the "CFPB") to entry of this Order is resolved and withdrawn, and (b) upon the occurrence of the Closing Date, the CFPB's motion to convert or dismiss these chapter 11 cases is resolved and shall be withdrawn with prejudice; provided that, in the event the CFPB Settlement is not entered by the Backstop Date, such objection and motion shall not be deemed withdrawn; provided, further that the Closing shall not occur until such objection and motion are adjudicated by the Bankruptcy Court or the CFPB Settlement is subsequently entered following expiration of the Backstop Date.

45.     Notwithstanding any other provision of this Order or the Lexington Law Stalking Horse Purchase Agreement to the contrary, the claims of the Maricopa County Treasurer for 2023 personal property taxes which are not yet due and owing shall constitute an Assumed Liability (as defined in the Lexington Law Stalking Horse Purchase Agreement) the corresponding lien arising under applicable state law shall constitute a Permitted Encumbrance (as defined in the Lexington Law Stalking Horse Purchase Agreement), and such taxes shall be paid in accordance with applicable state law by the Lexington Law Purchaser in the ordinary course of business.  The rights of the Lexington Law Purchaser to contest the amount, extent, validity, priority, or enforceability of any such lien are reserved.

46.     Notwithstanding anything to the contrary herein, in the Progrexion Stalking Horse Agreement, the Lexington Law Stalking Horse Agreement, or in the Final DIP Order, the amounts held in the Carve Out Reserves (as defined in the Final DIP Order) shall constitute Excluded Cash (as defined in the Progrexion Stalking Horse Agreement) and, following entry of

40

this Order and upon the Closing Date of the Sale Transactions, such amounts shall be transferred into an account to be maintained in trust by an escrow agent solely for the benefit of the Professional Persons (as defined in the Final DIP Order) of the Debtors and the Committee (the "Case Professionals"), in each case, retained in these cases under section 327, 328 and/or 1102 of the Bankruptcy Code (the "Professional Fees Account" and, such cash, the "Professional Fees Cash") to satisfy their Professional Fees and Expenses (as defined in the Progrexion Stalking Horse Agreement). The DIP Agent and DIP Lenders (both as defined in the Final DIP Order) shall be deemed to have satisfied their obligations with respect to the Carve Out (as defined in the Final DIP Order) and the Carve Out Reserves as set forth in the Final DIP Order upon such transfer. Except as set forth in this paragraph, nothing in this Order shall impair, modify, or otherwise affect the Carve Out. The Debtors are authorized, without further notice or relief from this Court, to enter into an escrow agreement which shall govern the distributions from the Professional Fees Account (the "Escrow Agreement"), take any and all actions that are necessary or appropriate in the exercise of their business judgment to implement the terms of the Escrow Agreement, including engaging applicable escrow agents and to make or authorize the payments contemplated in connection therewith. Professional Fees Cash may be released and applied in accordance with the terms of the Escrow Agreement, upon Court order approving the payment of any fees and expenses of any Case Professionals (including pursuant to the Interim Compensation Order, any Final Fee Orders, or any order of the Court allowing professional fees and expenses on an interim basis or a final basis); provided, that, to the extent there are any unused Professional Fees Cash in the Professional Fees Account after the satisfaction of all such claims of Case Professionals, such cash shall be returned to the Lexington Law Purchaser.

47.     Except as expressly set forth in this Order, nothing herein shall otherwise impair, modify, or affect the Final DIP Order.

48.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Transferred Assets are hereby directed to surrender possession of the Transferred Assets to the Lexington Law Purchaser on or prior to the Closing Date or such later date that such party and Lexington Law Purchaser mutually agree.

49.     Nothing contained in any plan of liquidation or reorganization, or order of any type or kind entered in their Chapter 11 Cases, any subsequent chapter 7 or chapter 11 case of the Debtors, or any related proceeding subsequent to entry of this Order, will conflict with or derogate from the terms of this Order or the Lexington Law Stalking Horse Purchase Agreement.

50.     This Order and the Lexington Law Stalking Horse Purchase Agreement shall be binding in all respects upon all prepetition and postpetition creditors of the Debtors, all interest holders of the Debtors, all non-Debtor parties to the Assumed Contracts, the Official Committee of Unsecured Creditors appointed on June 14, 2023 (the "Committee"), all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in these Chapter 11 Cases or upon a conversion of the Debtors' cases to those under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the Lexington Law Stalking Horse Purchase Agreement and Sale Transaction shall not be subject to rejection or avoidance under any circumstances by any party. If any order under Bankruptcy Code section 1112 is entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that this Order and the rights granted to the Lexington Law Purchaser hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.  For the avoidance of doubt, the

42

Debtors' inability to satisfy in full all administrative expense claims of the Debtors' estates shall not be a basis for termination, rejection or avoidance (as applicable) of the Lexington Law Stalking Horse Purchase Agreement or the Sale Transaction.

51. This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Lexington Law Stalking Horse Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Lexington Law Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction, including any and all disputes with any counterparty to any executory contract or unexpired lease of the Debtors (including, without limitation, disputes with respect to assumption and assignment of any Assumed Contracts or any cure disputes) and any party that has, or asserts, possession, control or other rights in respect of any of the Transferred Assets; provided, however, that, in the event the Court abstains from exercising or declines to exercise such jurisdiction with respect to the Lexington Law Stalking Horse Purchase Agreement, the Bidding Procedures Order, or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter. This Court retains exclusive jurisdiction to compel delivery of the Transferred Assets, to protect the Debtors and their assets, including the Transferred Assets, against any Claims and Successor or Transferee Liability and to enter orders, as appropriate, pursuant to Bankruptcy Code sections 105(a) or 363 (or other applicable provisions) necessary to transfer the Transferred Assets to the Lexington Law Purchaser.

52.     At any time prior to the Closing, the Lexington Law Purchaser or the Debtors may terminate the Lexington Law Stalking Horse Purchase Agreement pursuant to the terms thereof without any penalty or liability to the Lexington Law Purchaser or the Debtors (or their estates), except as set forth in the Lexington Law Stalking Horse Purchase Agreement and this Order.

53.     Pursuant to the Lexington Law Stalking Horse Purchase Agreement, the Lexington Law Purchaser and Lexington Law Sellers may enter into the Transition Services Agreement, to the extent necessary, on or prior to the Closing Date pursuant to which, effective as of the Closing Date, the Lexington Law Purchaser and Lexington Law Sellers may provide certain services to each other for a transitional period following the Closing Date.  The Lexington Law Purchaser and Lexington Law Sellers are hereby authorized to execute and deliver any additional documentation as contemplated by the Lexington Law Stalking Horse Purchase Agreement, and to perform all such other and further acts as may be required under or in connection with the Transition Services Agreement, to the extent such agreement is necessary.

54.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors and the Lexington Law Purchaser may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

55.     The Lexington Law Purchaser shall not be required to seek or obtain relief from the automatic stay under Bankruptcy Code section 362, to give any notice permitted by the Lexington Law Stalking Horse Purchase Agreement or to enforce any of its remedies under the Lexington Law Stalking Horse Purchase Agreement or any other sale-related document.  The automatic stay imposed by Bankruptcy Code section 362 is modified solely to the extent necessary to implement the preceding sentence; provided however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

56.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction and the Debtors and the Lexington Law Purchaser intend to close the Sale Transaction as soon as practicable.

57.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**Dated: August 25th, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

45

**Exhibit 1**

**Lexington Law Stalking Horse Purchase Agreement**


(*See Docket No. 331-3*)

## **Exhibit 2**

**Assumed Contracts Exhibit**

(*Notice to be Filed on Docket by Debtors*)