# EXHIBIT 4

Docket #0681  Date Filed: 12/26/2023

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PGX HOLDINGS, INC., *et al.*,[1] | ) | Case No. 23-10718 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related to Docket Nos. 468 and 570** |

**FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND ORDER APPROVING THE
DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMING THE
SECOND AMENDED JOINT CHAPTER 11 PLAN OF PGX HOLDINGS, INC. AND ITS
DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

a.  commenced, on June 4, 2023 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.  continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  obtained, on August 4, 2023, entry of the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 332] (the "Final DIP Order"), which included as Exhibit C the Global Settlement Term Sheet, and the *Order (I)(A) Approving*

---

1  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110). The location of the Debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

2  All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings given to them in the *Second Amended Joint Chapter 11 Plan of Reorganization of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, attached hereto as **Exhibit A**. The rules of interpretation set forth in Article I of the Plan shall apply to this Confirmation Order.

10787781.v7



2310718231226000000000001

*the Bidding Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder; (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (D) Approving Assumption and Assignment Procedures; and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 331] (the "Bidding Procedures Order");

d.  filed, on August 24, 2023, (a) the *Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliate Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 410] (as amended, modified, supplemented from time to time, the "Plan"), and (b) the *Disclosure Statement for the Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 412] (the "Disclosure Statement");

e.  filed, on August 25, 2023, the *Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement on an Interim and Final Basis; (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (III) Approving the Solicitation and Notice Procedures; (V) Approving the Combined Hearing Notice, and (VI) Granting Related Relief* [Docket No. 413] (the "Disclosure Statement Motion")

f.  obtained, on August 25, 2023, (a) the *Order (I) Approving Progrexion Stalking Horse Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection therewith, and (IV) Granting Related Relief* [Docket No. 422] (the "Progrexion Sale Order"), and (b) the *Order (I) Approving Lexington Law Stalking Horse Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection therewith, and (IV) Granting Related Relief* [Docket No. 423] (the "Lexington Law Sale Order" and together with the Progrexion Sale Order, the "Sale Orders");

g.  filed, on September 14, 2023, the *Motion of Debtors for Entry of an Order (I) Extending the Debtors' Exclusive Period to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 460];

h.  filed, on September 15, 2023, (a) the *First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 466], and (b) the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 468];

i.  obtained, on September 16, 2023, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement on an Interim Basis, (II) Scheduling a Combined Disclosure Statement*

2

*Approval and Plan Confirmation Hearing, (III) Approving the Solicitation and Notice Procedures, (IV) Approving the Combined Hearing Notice, and (V) Granting Related Relief* [Docket No. 478] (the "Disclosure Statement Order"), which approved, among other things, solicitation procedures and related notices (the "Solicitation and Notice Procedures"), forms, Ballots, and Master Ballots (collectively, the "Solicitation Packages");

j.  filed, on September 19, 2023, the *Notice of Hearing to Consider (I) the Adequacy of the Disclosure Statement and (II) Confirmation of the First Amended Joint Chapter 11 Plan Filed by the Debtors* [Docket No. 483] (the "Combined Hearing Notice") and, as evidenced by the *Certificate of Service* [Docket No. 560], caused the Combined Hearing Notice to be published on the case website on September 22, 2023 and served as further detailed therein;

k.  filed, on September 20, 2023, the solicitation version of (a) the *First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 486], and (b) the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 487];

l.  caused the Solicitation Packages, the Non-Voting Status Notices (as defined in the Disclosure Statement Order), and the Combined Hearing Notice to be distributed on or before September 22, 2023, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and the Disclosure Statement Order, as evidenced by, among other things, the *Certificate of Service* [Docket No. 560] (the "Solicitation Affidavit") and the Voting Report (as defined below);

m.  obtained, on September 25, 2023, the entry of the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 494], extending the Debtors' exclusive period to file a plan and solicit acceptances thereof to January 2, 2024 and February 29, 2024, respectively;

n.  caused the Combined Hearing Notice to be published in the *USA Today* (National Edition) on September 25, 2023, as evidenced by, among other things, the *Affidavit Verification of Publication* [Docket No. 499] (the "Publication Affidavit" and together with the Solicitation Affidavit, the "Affidavits");

o.  filed and caused to be served, on October 13, 2023, the (a) initial *Plan Supplement* [Docket No. 546] (as amended, modified, or supplemented from time to time, the "Plan Supplement") and (b) *Notice of Filing of Plan Supplement* [Docket No. 547] (the "Notice of Plan Supplement"), as evidenced by the *Certificate of Service* [Docket No. 561];

p.  filed, on October 24, 2023, the *Second Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 570];

q.  filed, on October 24, 2023, the *Debtors' Memorandum of Law in Support of an Order (I) Approving the Debtors' Disclosure Statement on a Final Basis and (II) Confirming the*

3

10787781.v7

*Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 572] (the "Confirmation Brief");

r.  filed on October 25, 2023, the *Declaration of Matthew Henry, Managing Director at Alvarez & Marsal North America, LLC, in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 573] (the "Henry Declaration");

s.  filed, on October 25, 2023, the *Declaration of Chad Wallace, Chief Executive Officer of PGX Holdings, Inc., in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 575] (the "Wallace Declaration");

t.  caused to be filed, on October 24, 2023, the *Declaration of Sydney Reitzel Regarding the Solicitation and Tabulation of Votes on the First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 569] (as may be amended, modified, or supplemented, the "Voting Report"); and

u.  filed, on October 25, 2023, the *Second Plan Supplement* [Docket No. 576], which included certain revisions to the forms of the PIK Notes and Plan Administrator Agreement.

This Bankruptcy Court having:

a.  entered, on September 16, 2023, the Disclosure Statement Order;

b.  set October 20, 2023, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Plan (the "Plan Objection Deadline");

c.  set October 20, 2023, at 4:00 p.m., prevailing Eastern Time, as the deadline for voting on the Plan (the "Voting Deadline");

d.  set October 20, 2023, at 4:00 p.m., prevailing Eastern Time, as the deadline for parties to opt out (or otherwise object) to the release provisions provided in the Plan;

e.  set October 27, 2023, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

f.  considered the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Wallace Declaration, the Henry Declaration, the Voting Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

g.  held a status conference with respect to confirmation of the Plan on October 27, 2023 (the "Confirmation Hearing");

4

10787781.v7

h. considered the resolution (the "WARN Settlement") of the *Objection to Confirmation of Kirsten Hansen, on Behalf of Herself and Others Similarly Situated, to Confirmation of the First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 563] (the "WARN Objection" and, such objecting party, the "WARN Plaintiff") proffered by counsel to the Debtors and counsel to the WARN Plaintiff and the certified class (the "Class Counsel") at the hearing held on December 11, 2023 (the "WARN Hearing")

i. considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan;

j. overruled any and all objections to the approval of the Disclosure Statement and to Confirmation of the Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; ; and

k. considered the pleadings and other documents filed and all evidence and arguments proffered or otherwise presented with respect to the confirmation of the Plan.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and confirmation of the Plan and all evidence proffered or adduced establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

5

10787781.v7

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Findings of Fact and Conclusions of Law**

1.     The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order constitute the Bankruptcy Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.     Jurisdiction, Venue, Core Proceeding**

2.     The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper before the Bankruptcy Court pursuant sections 1408 and 1409 of the Judicial Code.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.

**C.     Eligibility for Relief**

3.     The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On June 6, 2023, the Bankruptcy Court entered the *Order (I) Directing the Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 55] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.      Committee Appointment**

5.      On June 14, 2023, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 90] pursuant to section 1102 of the Bankruptcy Code, which Committee currently consists of (i) Hawthorne Direct, LLC., (ii) Site Selection Group, LLC, and (iii) Argano, LLC.

**F.       Objections**

6.      This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed and orders entered thereon.  The Bankruptcy Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.  Any resolution of objections to Confirmation explained on the record in these Chapter 11 Cases is hereby incorporated by reference, including, for the avoidance of doubt, the terms of the resolution of the WARN Objection.  All unresolved objections, statements, informal objections, and reservations of rights

7

(except with respect to unresolved cure amounts), if any, related to the Disclosure Statement or Confirmation of the Plan are overruled on the merits.

**G.      Plan Supplement**

7.      The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Plan, the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with the terms of the Plan, this Confirmation Order, the Asset Purchase Agreements, the Bankruptcy Code, and the Bankruptcy Rules.

**H.      Interim Disclosure Statement Order**

8.      On September 16, 2023, the Bankruptcy Court entered the Interim Disclosure Statement Order, which, among other things, (a) approved, on an interim basis, the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) approved the Solicitation and Notice Procedures, (c) approved the Solicitation Packages, (d) set October 20, 2023, at 4:00 p.m., prevailing Eastern

Time, as the Plan Objection Deadline and the Voting Deadline, respectively, and (e) set October 27, 2023, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing. The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims or Interests in the Voting Classes to have made an informed decision to accept or reject the Plan.

**I.      Adequacy of the Disclosure Statement**

9.      The Disclosure Statement contains extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and complies with any additional applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and non-bankruptcy law. The Debtors' solicitation of acceptances and rejections of the Plan via transmittal of the Disclosure Statement and the other materials in the Solicitation Packages was authorized by and complied with the Disclosure Statement Order and was appropriate under the circumstances.

**J.      Solicitation and Notice**

10.      The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

11.      As described in the Voting Report, the Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Disclosure Statement Order. The solicitation of votes on the Plan complied with the Solicitation and Notice Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with section 1125,

10787781.v7

section 1126, and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.     As described in the Voting Report and the Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto. Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**K.     Voting Report**

13.     Prior to the Confirmation Hearing, the Debtors filed the Voting Report. As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

14.     As set forth in the Plan, Holders of Claims in Classes 4, 5, 6A, 6B, 6C, and 6D (collectively, the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation and Notice Procedures. In addition, Holders of Claims in Classes 1, 2, and 3 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan. Depending on their ultimate treatment by the Debtors, Holders of Claims and Interests in Classes 7 and 8 are either Unimpaired or Impaired and will be either conclusively deemed to accept or conclusively deemed to reject the Plan, and in either scenario are not entitled to vote on the Plan. Holders of Claims and Interests in Classes 9, 10, and 11 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

15.     As evidenced by the Voting Report, each of Classes 4, 5, 6A, and 6B voted to accept the Plan, Class 6C voted to reject the Plan, and Class 6D did not cast a vote.

10

10787781.v7

**L.      Bankruptcy Rule 3016**

16.      The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**M.      Burden of Proof**

17.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.  Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**N.      Plan Modifications**

18.      Subsequent to filing the first amended version of the Plan (solicitation version) on September 20, 2023, the Debtors made certain technical amendments and modifications to the Plan (the "Plan Modifications"), which are reflected in the version of the Plan attached hereto as **Exhibit A**.  The Plan Modifications were made to address objections and informal comments received from various parties in interest, including the Office of the United States Trustee, the WARN Plaintiff, and counsel to certain surety bonds.  The Plan Modifications neither materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan nor require resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code or Bankruptcy Rules 3018 or 3019.  The filing with the Bankruptcy Court of the Plan as modified by the Plan Modifications constitutes due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code.  The Plan as modified and attached hereto, and as

10787781.v7

may be further modified consistent with the terms of this Confirmation Order and the Plan, shall constitute the Plan submitted for Confirmation by the Bankruptcy Court.

19.     At the WARN Hearing, the Debtors and WARN Plaintiff confirmed the terms of the WARN Settlement (as more fully described below) that resolves the WARN Objection in full and is incorporated into this Confirmation Order.  The WARN Settlement neither materially or adversely affects the treatment of any Claim against or Interest in any of the Debtors under the Plan, other than the WARN Claim, as expressly set forth herein, nor requires re-solicitation of votes on the Plan under section 1126 of the Bankruptcy Code or Bankruptcy Rules 3018 or 3019. The announcement of the WARN Settlement at the WARN Hearing constitutes due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the WARN Settlement does not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code.  The Plan, as modified and attached hereto, and as may be further modified consistent with the terms of this Confirmation Order and the Plan, shall constitute the Plan submitted for Confirmation by the Bankruptcy Court.

**O.     Presumed Acceptance of Plan as Modified**

20.     In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to have accepted the Plan as modified by the Plan Modifications.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

12

10787781.v7

**P.      Compliance with the Bankruptcy Code (11 U.S.C. §§ 1125 and 1127)**

21.      The Debtors have complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**Q.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)**

22.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**a)  Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

23.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

**i.  Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

24.      The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into eleven Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Priority Tax Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees, which are addressed in Article II of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or

10787781.v7

among Holders of Claims or Interests. In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii. Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).

25. The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1, 2, and 3 are Unimpaired. Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 4, 5, 6A, 6B, 6C, and 6D. Holders of Claims and Interests in Classes 7 and 8 are deemed to accept or deemed to reject the Plan depending on whether such Claims or Interests are reinstated or canceled and released without any distribution on account of such Claims or Interests. Holders of Claims and Interests in Classes 9, 10, and 11 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

### iii. No Discrimination (11 U.S.C. § 1123(a)(4)).

26. The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

### iv. Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

27. The Plan and the various documents included in the Plan Supplement (collectively, the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the Plan Documents provide adequate and proper means for the Plan's

14

implementation, including by providing for, among other things, consummation of the Restructuring Transactions and the appointment of a Creditor Trustee and Plan Administrator.

### v. Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

28. The Plan does not provide for the issuance of equity or other securities by the Debtors or the Wind-Down Debtor. Accordingly, the requirements of section 1123(a)(6) are inapplicable in these Chapter 11 Cases.

### vi. Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

29. The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The Plan discharges all of the Debtors' officers, directors, members, and managers from their duties effective as of the Effective Date without any further action. The Plan further provides for continuation of the Wind-Down Debtor and the appointment of the Plan Administrator.

### vii. Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

30. The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code. The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

### (b) Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).

31. Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Article V.A of the Plan provides that, except as otherwise provided in the Plan or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract

15

that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is subject to the terms of the Asset Purchase Agreements; or (6) is to be assumed by the Debtors and assigned to the Purchasers in connection with the Sale Transaction and pursuant to the Sale Transaction Documents.  Neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Orders to assume and assign Executory Contracts and Unexpired Leases to Purchaser pursuant to the Asset Purchase Agreements.  Notwithstanding anything to the contrary in the Plan, the Debtors, the Wind-Down Debtor, and the Plan Administrator, as applicable, with the consent of the Purchasers, not to be unreasonably withheld, shall have the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in Article V of the Plan and in the Plan Supplement.

32.      The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests and other parties in interest in these Chapter 11 Cases.

        **(c)   Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

33.      **Compromise and Settlement.**  To the extent provided for by the Bankruptcy Code and Bankruptcy Rule 9019 (as applicable), and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan, including the terms of the Global Settlement and incorporating the terms of the Global

Settlement Term Sheet. To the extent provided for by the Bankruptcy Code and Bankruptcy Rule 9019, the Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, including the Global Settlement, and the entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

34.     **Debtor Release.** Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.B of the Plan (the "Debtor Release"). The Debtor Release is an essential component of the Plan. The scope of the Debtor Releases is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. The Debtor Release is given and made after due notice and opportunity for hearing.

35.     The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of a good-faith and arm's-length negotiation between sophisticated parties that had representation from able counsel and advisors. The Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these Chapter 11 Cases is critical to the Debtors' successful emergence from bankruptcy. Each of the Released Parties shares a common goal with the Debtors in seeing the Plan succeed and Implementing the transactions contemplated in the Plan. The record shows that the releases

17

10787781.v7

relating to the Debtors' current and former directors, officers, affiliates, and principals have an identity of interest in supporting the release because the Debtors will assume certain indemnification obligations under the Plan and the Wind-Down Debtor will honor such obligations in accordance with the terms of the Plan. The evidence establishes that the Debtors conducted a thorough analysis of the Debtors' claims and causes of action in determining to grant the Debtor Release and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

36. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good an valuable consideration provided by the Released Parties, including, the Released Parties' contribution to facilitating the Restructuring Transactions and implementing the plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors, the Wind-Down Debtor, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Debtors, the Wind-Down Debtor, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

37. **Releases by Holders of Claims and Interests.** Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.C of the Plan

18

(the "Third-Party Release").  The Third-Party Release is given and made after due notice and opportunity for hearing.

38.　　The Third-Party Release is consensual with respect to the Releasing Parties.  The Ballots sent to all Holders of Claims and Interests entitled to vote, the Non-Voting Status Notice sent to Holders of Claims and Interests not entitled to vote, and the notice of the Confirmation Hearing sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan.  Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to confirmation of the Plan, the opportunity to opt out of (or otherwise object to) the Third-Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt-Out Form, returned in advance of the Voting Deadline would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all Claims and Causes of Action against the Debtors and the Released Parties.  Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Non-Voting Status Notice.  Thus, the Third-Party Release is consensual as to those Releasing Parties that did not specifically and timely object.

39.　　Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provide by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the

Third-Party Release; (5) in the best interests of the Debtors, the Wind-Down Debtor, and the Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

40.     **Exculpation.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in Article VIII.D of the Plan (the "Exculpation").  The Exculpation is essential to the Plan.  The evidence before the Bankruptcy Court demonstrates that the Plan's Exculpation was critical to the parties' willingness to support the Debtors' chapter 11 efforts and that these parties would not have been so inclined to participate in the Plan process without the promise of exculpation, and such parties did so in reliance upon the protections afforded in the Exculpation.  The Exculpation appropriately affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

41.     **Injunction.**  Section 105(a) and section 1123(b)(3) and (b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article VIII.E of the Plan (the "Injunction") and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article VIII of the Plan.  Such Injunction is appropriately tailored to achieve those purposes.

20

10787781.v7

**viii.     Cure of Defaults (11 U.S.C. § 1123(d)).**

42.     Article V.D of the Plan provides for the satisfaction of cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan (it being understood that the assumption and assignment of the Executory Contracts or Unexpired Leases pursuant to the Asset Purchase Agreements shall be authorized and governed by the Bidding Procedures Order and applicable Sale Order, and, in the event of any inconsistency between the Plan, Bidding Procedures Order, and Sale Orders concerning the assumption and assignment of such Executory Contracts or Unexpired Leases, the terms of the applicable Sale Order shall govern and control) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.D of the Plan, and applicable bankruptcy and non-bankruptcy law.  As such, the Plan provides that the Debtors, the Wind-Down Debtor, or the Purchaser, as applicable, will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**b)  The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

43.     The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

21

44.     The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Disclosure Statement Order approving the Solicitation Packages and Solicitation and Voting Procedures.

45.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article X.E of the Plan.

### c) Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).

46.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and Plan Documents in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Disclosure Statement Hearing, and all the proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

47.     The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors

22

10787781.v7

and certain of their key stakeholders including, but not limited to, the Committee.  Further, the Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### d) Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

48.     Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.   The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

### e) Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).

49.     Because the Plan provides for the orderly wind-down of the Debtors and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Wind-Down Debtor, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity of the Creditor Trustee and Plan Administrator.

10787781.v7

**f) No Rate Changes (11 U.S.C. § 1129(a)(6)).**

50.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**g) Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

51.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced in these Chapter 11 Cases and the facts and circumstances of these Chapter 11 Cases establish that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis (as defined in the Disclosure Statement and attached as Exhibit B thereto), and the other evidence related thereto, as supplemented by any evidence proffered or adduced in these Chapter 11 Cases, are persuasive and credible.  The Liquidation Analysis demonstrates that recoveries under the Plan are at least as high as they would be in a hypothetical liquidation.  The methodology used and assumptions made in the Liquidation Analysis as supplemented by any evidence proffered or adduced in these Chapter 11 Cases, are reasonable.

**h) Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

52.     The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Classes 1, 2, and 3 are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 4 (Prepetition First Lien Claims), Class 5 (Prepetition Second Lien Claims), Class 6A (Continuing Trade Claims), Class 6B (Other General Unsecured Claims), and Class 6D (CFPB Claims) voted to accept the Plan.

Class 6C has voted to reject the Plan.[3]  Class 7 and Class 8 are either Unimpaired by the Plan and conclusively presumed to have accepted the Plan or Impaired and deemed to have rejected the Plan.  Class 9, Class 10, and Class 11 are Impaired Classes that will not receive or retain any property under the Plan on account of the Claim in each such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan.  To the extent a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, such Class shall be deemed to have accepted the Plan.  Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to reject the Plan.

    i)   **Deemed Rejecting Classes (11 U.S.C. § 1129(b)).**

53.    Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes, as described further below.

    j)   **Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

54.    The treatment of Administrative Claims, Priority Tax Claims, Other Priority Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees under Article XII of

---

[3]   At the WARN Hearing, the party voting against the Plan, the named WARN Plaintiff, confirmed that she no longer objects to the confirmation of the Plan subject to the incorporation of the terms of the WARN Settlement in this Confirmation Order.

10787781.v7

the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**k) Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

55. The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Report, all Voting Classes are Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code). Further, as set forth in the Voting Report, the Classes that are not entitled to receive or retain any property under the Plan are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**l) Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

56. The evidence proffered or adduced in these Chapter 11 Cases and in the Wallace Declaration, the Henry Declaration, and the Confirmation Brief: (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors or the Wind-Down Debtor will have sufficient funds available to meet their obligations under the Plan. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**m) Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

57. Article XIII.C of the Plan provides for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code. The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

10787781.v7

**n) Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), 1129(a)(14), (15), and (16)).**

58.     The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.   Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**o) Only One Plan (11 U.S.C. § 1129(c)).**

59.     Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**p) Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

60.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**q) Not a Small Business Case (11 U.S.C. § 1129(e)).**

61.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**r) Satisfaction of Confirmation Requirements.**

62.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**R.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

63.     Each of the conditions precedent to the Effective Date, as set forth in Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.C of the Plan.

10787781.v7

S.    **Implementation**

64.    The Plan, all documents contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors, their Estates, and the Wind-Down Debtor, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.    The documents and agreements are essential elements of the Plan and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

T.    **Good Faith Solicitation (11 U.S.C. § 1125(e))**

65.    The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.    The Plan accomplishes this goal.    Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order.    Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.D of the Plan.    The Exculpated Parties have, and upon completion o the Plan shall be deemed to have,

28

participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liability at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptance of rejections of the Plan or such distributions made pursuant to the Plan.

**U.      Executory Contracts and Unexpired Leases**

66.      Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided in the Plan or the Asset Purchase Agreements. The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests and other parties in interest in these Chapter 11 Cases.

**V.      Disclosure:  Agreements and Other Documents**

67.      The Debtors have disclosed all material facts regarding:  (a) the Plan; (b) the sources and distribution of Cash under the Plan; (c) the adoption, execution, and delivery of all contracts, leases, instruments, releases, indentures, and other agreements related to any of the foregoing; (d) the various releases set forth in Article VIII of the Plan; and (e) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Wind-Down Debtor.

10787781.v7

**ORDER**

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS
THEREFORE ORDERED, JUDGED, AND DECREED THAT:

**W.      Findings of Fact and Conclusions of Law**

68.      The above-referenced findings of fact and conclusions of law are hereby
incorporated by reference as though fully set forth in this Confirmation Order and constitute
findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by
Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of
law, it is deemed so, and vice versa.

**X.      Final Approval of Disclosure Statement**

69.      The Disclosure Statement shall be, and hereby is, approved on a final basis as
containing adequate information within the meaning of section 1125 of the Bankruptcy Code and
sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable
non-bankruptcy laws, rules, and regulations.

**Y.      Confirmation of the Plan**

70.      The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, shall be, and
hereby is, confirmed under section 1129 of the Bankruptcy Code.  The Debtors are authorized to
enter into and execute the all documents and agreements related to the Plan (including all exhibits
and attachments thereto and documents referred to therein, including the Plan Supplement), and
the execution, delivery, and performance thereafter by the Wind-Down Debtor and the Creditor
Trust, are hereby approved and authorized.  The Debtors, the Wind-Down Debtor and the Creditor
Trust, as applicable, are authorized to take all actions necessary or appropriate to enter into,
implement, and consummate the contracts, instruments, releases, leases, indentures, and other
agreements or documents created in connection with the Plan, including without limitation entry

30

10787781.v7

into any agreements contained in the Plan Supplement, as applicable, as may be modified by the

Debtors in their business judgment subject to the terms and conditions of the Plan. The terms of

the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

71.     The failure to include or refer to any particular article, section, or provision of the

Plan, the Plan Supplement or any related document, agreement, or exhibit does not impair the

effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the

Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**Z.      Objections**

72.     To the extent that any objections (including any reservations of rights contained

therein) to Confirmation of the Plan or approval of the Disclosure Statement have not been

withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief

granted in this Confirmation Order, or have not been otherwise resolved as stated on the record at

the WARN Hearing, all such objections (including any reservation of rights contained therein) are

hereby overruled in their entirety and on the merits in all respects.

**AA.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

73.     The release, exculpation, injunction, and related provisions set forth in Article VIII

of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their

entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date

without further action or notice by this Bankruptcy Court, any of the Parties subject to such

provisions, or any other party, including, but not limited to:

    a.  **Liens**. The release of liens provisions set forth in Article VIII.A of the Plan are hereby
        approved.

    b.  **Releases by the Debtors**. The Debtor Release provisions set forth in Article VIII.B of
        the Plan are hereby approved.

c. **Third-Party Releases**. The Third-Party Release provisions set forth in Article VIII.C of the Plan are hereby approved.

d. **Exculpation**. The Exculpation provisions set forth in Article VIII.D of the Plan are hereby approved.

e. **Injunction**. The Injunction provisions set forth in Article VIII.E of the Plan are hereby approved.

**BB. Classifications of Claims and Interests**

74. The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**CC. Provisions Regarding the United States**

75. As to the United States, nothing in the Plan, this Confirmation Order, any Plan Supplement, or any implementing Plan documents, notwithstanding any provision to the contrary contained therein, shall: (a) enjoin or affect any Governmental Unit's setoff rights under federal law, as recognized in section 553 of the Bankruptcy Code, and/or recoupment rights, and such rights shall be preserved and are unaffected (provided that the Debtors expressly reserve all defenses to any such rights of setoff or recoupment); (b) be construed as a compromise or settlement of any liability, claim, cause of action, or interest of the United States, except as explicitly provided for in respect of the CFPB Claim and in accordance with the Stipulated Final

32

10787781.v7

Judgment and Order; or (c) be deemed a waiver or release of any liability, claim, cause of action, or interest of the United States, except as otherwise provided in respect of the CFPB Claim and in accordance with the Stipulated Final Judgment and Order.

**DD.** **WARN Settlement**

76. The Debtors, with the consent of the Committee, and the WARN Plaintiff, on behalf of the certified class (the "WARN Class"), have resolved the WARN Objection in accordance with the terms incorporated herein, including, for the avoidance of doubt, the terms provided in paragraph 79 hereof. The WARN Class shall have an Allowed Other Priority Claim on account of the WARN Act Claim (as defined in the WARN Objection) in the amount of $1,450,000 (the "WARN Claim"). Notwithstanding anything to the contrary in the Plan, the WARN Class has agreed to accept as satisfaction for such claim the payment of $1,200,000 to be paid on or as soon as practicable after the Effective Date, but not later than 10 days from the Effective Date (the "WARN Cash Payment") plus any unused portion of the Wind-Down Budget at the conclusion of these Chapter 11 Cases, not to exceed $250,000 ("WARN Contingent Payment"). The Wind-Down Debtor and Plan Administrator shall provide to the WARN Class (email to Class Counsel being sufficient) on a monthly basis a report of the actions to date regarding resolution of claims and progress toward concluding these Chapter 11 Cases and fees incurred following the Effective Date. Such report shall include all amounts paid to date to professionals from the Wind-Down Budget on a line-item basis. The WARN Class shall have the right to object to the progress towards concluding these Chapter 11 Cases to the same extent as any other creditor and such right shall neither be enlarged nor diminished by this Confirmation Order or the WARN Settlement. The Debtors, the Plan Administrator, and the WARN Class acknowledge that notwithstanding the timely transfers of the WARN Cash and WARN Contingent Payments to the WARN Class as set forth herein, those funds shall be not be distributed to the WARN Class members until the amount

33

of the WARN Contingent Payment is realized at the conclusion of these Chapter 11 Cases.  The

WARN Claim shall be inclusive of the service payment to the Plaintiff as class representative of

the WARN Class, Class Counsel's attorneys' fees and expenses, and the cost of noticing and

administration of the WARN Settlement.  Notwithstanding anything to the contrary in the Plan,

any objections to General Unsecured Claims shall be Filed on or before the later of (1) one-hundred

twenty (120) days after the Effective Date, and (2) such other period of limitation as may be

specifically fixed by a Final Order of the Bankruptcy Court, subject to a notice and objection

period, for objecting to such Claims; *provided* that all rights of the Debtors, Wind-Down Debtor,

Plan Administrator, and any other party in interest to seek extensions of such applicable objection

deadlines are fully preserved.  The WARN Class has consented to the entry of this Confirmation

Order, the confirmation of the Plan, and the occurrence of the Effective Date notwithstanding that

additional approvals and noticing may be necessary subsequent to the Effective Date.  All Claims

of the WARN Class related to the subject matter of the pleadings filed in the adversary proceeding

styled as *Kristen Hansen vs. PGX Holdings, Inc., et. al.*, Adv. Pro. No. 23-50396 are fully resolved

and upon entry of this Confirmation Order and any claims arising out of the adversary proceeding

complaint shall not receive any distribution on account of such claims, except from the WARN

Settlement. The Debtors, the Plan Administrator, and Class Counsel shall cooperate to effectuate

the terms of the WARN Settlement, including providing Class Counsel or their settlement

administrator with necessary data and documentation, on a professional eyes only basis, to

effectuate the WARN Settlement. The Debtors, the Plan Administrator, and Class Counsel shall

use commercially reasonable efforts to implement the WARN Settlement.  To that end, the Debtors

and the WARN Plaintiff shall file pleadings seeking joint approval of the WARN Settlement in

the adversary proceeding no later than five days from the date of entry of this Order.  Within five

10787781.v7

(5) business days following remittance of the WARN Cash Payment, Class Counsel shall dismiss the adversary proceeding with prejudice.

**EE.    Plan Supplement**

77.    The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Debtors, the Wind-Down Debtor, the Creditor Trust and their successors are authorized when they are finalized, executed, and delivered.  Without further order or authorization of this Bankruptcy Court, the Debtors, the Wind-Down Debtor, the Creditor Trust and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

**FF.    Restructuring Transactions**

78.    On or before the Effective Date, the applicable Debtors or the Wind-Down Debtor shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, consummation of the Sale Transaction pursuant to the Asset Purchase Agreements, the issuance of all certificates and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other

35

corporate transactions (collectively, the "Restructuring Transactions"). The actions to implement the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and Asset Purchase Agreements and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the Filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making Filings or recordings that may be required by applicable law in connection with the Plan. This Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

**GG.  Sources of Consideration for Plan Distribution**

79.     The Debtors and Wind-Down Debtor, as applicable, shall fund the distributions and obligations under the Plan with Available Cash from the Wind-Down Budget held in the Wind-Down Debtor Account, as applicable, on the Effective Date. Sources to fund the distributions and obligations under the Plan include cash from the Creditor Trust in the amount of $100,000, from the GUC Trade Settlement Cash in the amount of $3.25 million, from the GUC Litigation Claims Settlement Cash in the amount of $750,000 (of which $50,000 will be paid to the Holder of the

Allowed CFPB Claim on account of the CFPB Claim as set forth in Article III of the Plan), and from the PIK Notes to be issued by the Progrexion Purchaser. Within the sources to fund distributions and obligations under the Plan, the WARN Cash Payment shall be funded as follows: $700,000 from the GUC Litigation Claims Settlement Cash, $100,000 from the GUC Trade Settlement Cash, and $400,000 from the Wind-Down Budget. As indicated in Article II of the Plan, pursuant to the Sale Orders, the DIP Claims have been satisfied in full in connection with the Sale Transaction.

**HH.    Wind-Down Debtor**

80.    The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtor solely for the purposes of (l) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtor, if any, (2) resolving any Disputed Claims, (3) paying or otherwise satisfying Allowed Claims, (4) filing appropriate tax returns, and (5) administering the Plan in an efficacious manner. The Wind-Down Debtor shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to File motions or substitutions of parties or counsel in each such matter; *provided, however*, that the Creditor Trustee shall have the rights, powers and authority as provided in Article IV.G of the Plan and in the Creditor Trust Agreement, and shall be substituted as the party-in-lieu of the Debtors to the extent provided therein.

81.    On the Effective Date, the Wind-Down Debtor Assets shall vest in the Wind-Down Debtor for the primary purpose of liquidating the Wind-Down Debtor Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business.

The Wind-Down Debtor will, in an expeditious but orderly manner, liquidate and convert to Cash the Wind-Down Debtor Assets, make timely distributions pursuant to the Plan and Confirmation Order, and not unduly prolong its duration.  Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. The Wind-Down Debtor shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

**II.      Plan Administrator**

82.      Upon entry of the Confirmation Order, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors shall be deemed to have been terminated and such persons shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed by each Debtor as the sole director and the sole officer of such Wind-Down Debtor and shall succeed to the powers of such Debtor's directors and officers.  The Plan Administrator shall be the sole representative of, and shall act for each Wind-Down Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same), except as applicable to the Creditor Trustee to the extent provided in Article IV.G of the Plan and in the Creditor Trust Agreement.  For the avoidance of doubt, the foregoing shall not limit the authority of each Wind-Down Debtor or the Plan Administrator, as applicable, to continue the employment of any former director or officer.

83.      The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtor, upon the monthly

submission of statements to the Plan Administrator and in accordance with the Wind-Down Budget. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

**JJ.     The Creditor Trust**

84.     The Committee shall have the right in its sole discretion, but not the obligation, to appoint the Creditor Trustee at any time prior to the Plan Supplement Filing Date. If so appointed, the Creditor Trust will be established on the Effective Date and governed by the terms of the Creditor Trust Agreement, and the cash from the Debtors' cash on hand in the amount of $100,000, Excess Distributable Cash, and the PIK Notes shall be transferred, and the Other Assets and all rights to pursue the liquidation and/or monetization of the Other Assets (including collecting amounts due under or realizing upon the PIK Notes), shall be deemed transferred, to the Creditor Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests without any further action of any of the Debtors, the Plan Administrator on behalf of the Wind-Down Debtor, the Committee, the Creditor Trustee, or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors or the Wind-Down Debtor. The Creditor Trustee's duties, powers, responsibilities, and compensation will be established by the Creditor Trust Agreement. Pursuant to Bankruptcy Code section 1123(b)(3), the Creditor Trustee shall be deemed the appointed representative to liquidate and/or monetize the Other Assets, collect amounts due under or realize upon the PIK Notes, and effectuate all distributions as detailed in the Creditor Trust Agreement, and the Creditor Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle or take any other actions necessary to effectuate those duties and all other duties as detailed in the Creditor Trust Agreement based upon its powers as a bankruptcy appointed representative of the Debtors' Estates with the same or similar abilities

39

possessed by bankruptcy or insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, creditors' committees, or similar officials or entities.

85.     Distributions made with respect to Holders of Allowed Other General Unsecured Claims in Class 6B shall be made by the Creditor Trustee.  Ryniker Consultants, LLC is recognized and approved as the initial Creditor Trustee, and the Creditor Trustee is (a) authorized to execute and perform under the Creditor Trust Agreement, to appear and be heard before this Bankruptcy Court on all matters relating to these Chapter 11 Cases and to present to creditors, other courts of competent jurisdiction, and any other party the Creditor Trust Agreement, the Plan, and this Confirmation Order as evidence of its authority and (b) vested with all of the power and authority set forth in the Plan and the Creditor Trust Agreement and otherwise as is necessary or proper to carry out the provisions of the Plan or the Creditor Trust Agreement, as applicable.

### KK.    Plan Administrator and Creditor Trustee Exculpation, Indemnification, Insurance, and Liability Limitation

86.     The Plan Administrator, the Creditor Trustee, and all professionals retained by the Plan Administrator and the Creditor Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each Wind-Down Debtor.  The Plan Administrator and the Creditor Trustee may each obtain, at the expense of the Wind-Down Debtor, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtor. The Plan Administrator and the Creditor Trustee may rely upon written information previously generated by the Debtors.

### LL.    Tax Returns

87.     After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and the Wind-Down

40

10787781.v7

Debtor, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

**MM. Dissolution of the Wind-Down Debtor**

88. Upon a certification to be Filed with this Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of these Chapter 11 Cases, the Wind-Down Debtor shall be deemed to be dissolved without any further action by the Wind-Down Debtor, including the Filing of any documents with the secretary of state for the state in which the Wind-Down Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtor in and withdraw the Wind-Down Debtor from applicable states.

**NN. Statutory Committee and Cessation of Fee and Expense Payment**

89. On the Effective Date, any statutory committee appointed in these Chapter 11 Cases, including the Committee, shall dissolve, and any such committee, and members and professionals thereof, shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except in connection with applications for compensation. The Wind-Down Debtor shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except fees or expenses incurred in connection with applications for compensation for services rendered prior to the Effective Date that are Allowed by this Bankruptcy Court.

**OO. Cancellation of Securities and Agreements**

90. On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate,

41

Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the Wind-Down Debtor shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released.  Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

**PP.  Corporate Action**

91.     Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including:  (1) selection of the Plan Administrator; (2) selection of the Creditor Trustee; (3) implementation of the Restructuring Transactions; (4) consummation of the Sale Transaction under the Asset Purchase Agreements; (5) funding of all applicable escrows and accounts; (6) entry into and consummation of the Creditor Trust Agreement; and (6) all other

actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtor, and any corporate action required by the Debtors or the Wind-Down Debtor in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtor shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtor. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements and documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtor.  The authorizations and approvals contemplated by Article IV.M of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**QQ.    Effectuating Documents; Further Transactions**

92.    On and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**RR.    Section 1146 Exemption**

93.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Wind-Down Debtor, Creditor Trust, or to any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of

43

any debt, equity security, property, or other interest in the Debtors or the Wind-Down Debtor; (2) the Restructuring Transactions; (3) any Sale Transactions; (4) the transfer of the Creditor Trust Assets to the Creditor Trust; (5) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (6) the making, assignment, or recording of any lease or sublease; or (7) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code Filing or recording fee, regulatory Filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All Filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**SS.    Director and Officer Liability Insurance; Other Insurance**

94.    On or before the Effective Date, the Debtors shall purchase (to the extent not already purchased) and maintain directors, officers, managers, and employee liability tail coverage

for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement. Reasonable directors and officers insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

95.     Any directors and officers insurance policies shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Wind-Down Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under any such policies shall remain available to all individuals within the definition of "Insured" in any such policies. In addition, on and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any directors and officers insurance policy in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions on or after the Effective Date, in each case, to the extent set forth in such policies.

**TT.     Preservation of Causes of Action**

96.     Pursuant to the Sale Transaction Documentation, the Debtors assigned and transferred to the Purchasers all of the Transferred Causes of Action pursuant to the Sale Transaction Documentation in connection with the Sale Transactions and in accordance with the Sale Orders. For the avoidance of doubt, the Wind-Down Debtors or the Plan Administrator, as applicable, will retain the right to enforce the terms of the Sale Transaction Documentation.

45

97. Except as otherwise provided in the Plan or in the Sale Orders, in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, each Debtor reserves and, as of the Effective Date, assigns to the Wind-Down Debtor the Retained Causes of Action which shall include those actions specifically enumerated in the Schedule of Retained Causes of Action. On and after the Effective Date, the Wind-Down Debtor and the Plan Administrator (following transfer of such Causes of Action to the Plan Administrator) may enforce all rights to commence and pursue, as appropriate, any and all of the Retained Causes of Action on behalf of and for the benefit of the applicable beneficiaries, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Wind-Down Debtor's or the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and the Wind-Down Debtor as of the Effective Date.

98. The Wind-Down Debtor or the Plan Administrator, as applicable, may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtor. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against it as any indication that the Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.** Unless any Causes of Action

46

of the Debtors against a Person or Entity are waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Wind-Down Debtor or the Plan Administrator, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, prior to the Effective Date any Litigation Settlement or other settlement of any Litigation Claim (for the avoidance of doubt, other than the CFPB Claim) shall be subject to the consent of the Committee (which consent shall not be unreasonably withheld), and on and after the Effective Date, such consent rights shall belong to the Creditor Trustee.

**UU.    Treatment of Executory Contracts and Unexpired Leases**

99.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

100.    On the Effective Date, except as otherwise provided in the Plan or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is the Asset Purchase

Agreements; or (6) is to be assumed by the Debtors and assigned to the Purchasers in connection with the Sale Transaction and pursuant to the Sale Transaction Documents.

101. Entry of this Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign Executory Contracts and Unexpired Leases to Purchaser pursuant to the Asset Purchase Agreements. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by this Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtor. Each Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any order of this Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, if any, shall revest in and be fully enforceable by the Wind-Down Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of this Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

102. Notwithstanding anything to the contrary in the Plan or the Sale Transaction Documents, the Debtors, the Wind-Down Debtor, the Purchasers and the Plan Administrator, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in Article V of the Plan and in the Plan Supplement. The Debtors or the Wind-Down Debtor, as applicable, shall provide notice of any amendments to the Rejected Executory Contracts and Unexpired Leases Schedule or the Assumed Executory Contracts and

48

Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby. For the avoidance of doubt, Article V of the Plan relates to Executory Contracts or Unexpired Leases other than such agreements assumed, assumed and assigned, or rejected in accordance with the terms of the Sale Orders.

## VV. Provisions Governing Distributions

103. The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan or this Confirmation Order, the Distributions under the Plan shall be made by the Disbursing Agent, or the Entity or Entities selected by the Debtors or the Wind-Down Debtor, as applicable, to make or facilitate distributions contemplated under the Plan, including the Plan Administrator, if applicable.

## WW. Procedures for Resolving Disputed, Contingent, and Unliquidated Claims or Equity Interests

104. The procedures for resolving disputed, contingent, and unliquidated claims or equity interests contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.

## XX. Conditions to Effective Date

105. The provisions governing the conditions precedent to the Effective Date set forth in Article IX of the Plan shall be, and hereby are, approved in their entirety. The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms.

## YY. Retention of Jurisdiction

106. The provisions governing the retention of jurisdiction set forth in Article XI of the Plan shall be, and hereby are, approved in their entirety. This Bankruptcy Court may, and upon

49

the Effective Date shall, retain exclusive jurisdiction over the matters arising in, and under, and related to, these Chapter 11 Cases, as set forth in Article XI of the Plan.

## ZZ.    Immediate Binding Effect

107.    Subject to Article IX of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code and applicable nonbankruptcy law and deemed binding upon the Debtors, the Wind-Down Debtor, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), the Purchasers and its affiliates, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

## AAA.  Additional Documents

108.    On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Wind-Down Debtor, as applicable, and all Holders receiving distributions pursuant to the Plan, the Creditor Trustee and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## BBB.  Payment of Statutory Fees

109.    Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Wind-Down Debtor, the Creditor Trust,  and any entity making disbursements on behalf of any of the Wind-Down Debtor, or making

disbursements on account of an obligation of any Debtor or the Wind-Down Debtor (each, a "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Wind-Down Debtor, on behalf of itself, the Creditor Trust, or any entity making disbursements on behalf of the Wind-Down Debtor, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, the Wind-Down Debtor, the Creditor Trust (until its wind-down) and the Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code or the wind-down of the Creditor Trust. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

**CCC.  Reservation of Rights**

110.    Except as expressly set forth in the Plan, the Plan shall have no force or effect until entry of this Confirmation Order, and this Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

**DDD.  Notices**

111.    After the Effective Date, the Wind-Down Debtor may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective

51

10787781.v7

Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**EEE.  Non-Severability of Plan Provisions Upon Confirmation**

112.    The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent, provided that, notwithstanding the inclusion of the Asset Purchase Agreements or any documents ancillary thereto in the Plan Supplement, the Sale Transaction contemplated in the Asset Purchase Agreements is severable from the Plan and this Confirmation Order, and the non-Confirmation or non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Transaction contemplated in the Asset Purchase Agreements or the revocation of the Debtors' authority under the Sale Order to consummate such Sale Transaction.

**FFF.  Governmental Approvals Not Required**

113.    Except as otherwise specifically provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

52

## GGG.  Recording

114.    The Debtors and the Wind-Down Debtor hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan and Asset Purchase Agreements attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer.

## HHH.  Effect of Conflict between Plan and Confirmation Order

115.    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

## III.    Documents, Mortgages, and Instruments

116.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

## JJJ.    Authorization to Consummate

117.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article IX of the Plan.

## KKK.  Debtors' Actions Post-Confirmation Through the Effective Date

118.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in

10787781.v7

possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement or the Restructuring Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement or the Restructuring Transactions, in each case subject to the terms and conditions of the Plan.  Notwithstanding anything to the contrary herein or in the Plan, upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Pleadings.

**LLL.   Notices of Confirmation and Effective Date**

119.    The Wind-Down Debtor shall serve notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c), on all known Holders of Claims and Interests and the Bankruptcy Rule 2002 service list within five Business Days after the Effective Date.  As soon as reasonably practicable after the Effective Date, the Wind-Down Debtor shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties.  The notice of the Effective Date may be included in this Confirmation Order Notice.  Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the

54

Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Further, the Wind-Down Debtor shall only be required to serve those members who have not filed a proof of claim in these Chapter 11 cases with the Confirmation Order Notice to the extent that such members have active electronic mail addresses.  In addition, no later than five Business Days after the Effective Date, the Wind-Down Debtor shall cause this Confirmation Order Notice, modified for publication, to be published on one occasion in *USA TODAY* or another similar nationally circulated news publication.  The above-referenced notices are adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

120.    After the Effective Date, the Plan Administrator or Wind-Down Debtor may notify parties that, in order to continue to receive service of documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive service of documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Plan Administrator or Wind-Down Debtor, as applicable, is authorized to limit the list of parties receiving such service pursuant to Bankruptcy Rule 2002 to those parties who have Filed such renewed requests; provided that the Notice of the Effective Date discloses that parties who wish to continue to receive service of documents must file a renewed request for service under Bankruptcy Rule 2002.

**MMM.        Return of Adequate Assurance Deposits.**

121.    On the Effective Date, all funds in the Adequate Assurance Account as defined and established by the Debtors in the *Final Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Approving the Debtors' Proposed Procedures for Resolving Additional Assurance Requests, (III) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Services, and (IV) Granting Related Relief* [Docket No. 200] shall be returned to the Wind-Down Debtor.

### NNN. Dissolution of Statutory Committees

122.    On the Effective Date, any statutory committee appointed in these Chapter 11 Cases shall dissolve and the members and professionals thereof, shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except in connection with applications for compensation.  The Wind-Down Debtor shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with applications for compensation for services rendered prior to the Effective Date that are Allowed by this Bankruptcy Court in accordance with the terms of the Plan and the wind-down budget.

### OOO. Headings

123.    Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

### PPP. Final Order and Waiver of Stay

124.    For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

**Dated: December 26th, 2023**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

10787781.v7

**Exhibit A**

**Plan**

10787781.v7

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PGX HOLDINGS, INC., *et al.*,[1] | ) Case No. 23-10718 (CTG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF PGX HOLDINGS, INC. AND**
**ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**KLEHR HARRISON HARVEY**
**BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:      (302) 426-1189
Facsimile:      (302) 426-9193
Email:      dpacitti@klehr.com
      myurkewicz@klehr.com

- and -

Morton R. Branzburg (*pro hac vice* pending)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:      (215) 569-3007
Facsimile:      (215) 568-6603
Email:      mbranzburg@klehr.com

*Co-Counsel to the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Ave
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:      joshua.sussberg@kirkland.com

- and -

Spencer A. Winters (admitted *pro hac vice*)
Whitney C. Fogelberg (admitted *pro hac vice*)
Alison J. Wirtz (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:      spencer.winters@kirkland.com
      whitney.fogelberg@kirkland.com
      alison.wirtz@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

Dated: October 24, 2023

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW .................................................................................................................1

    A.    Defined Terms ............................................................................................................1
    B.    Rules of Interpretation .............................................................................................16
    C.    Computation of Time ...............................................................................................17
    D.    Governing Law ........................................................................................................17
    E.    Reference to Monetary Figures ...............................................................................17
    F.    Reference to the Debtors or the Wind-Down Debtor ..............................................17
    G.    No Substantive Consolidation; Limited Administrative Consolidation .....................17

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS ............17

    A.    General Administrative Claims ................................................................................17
    B.    Professional Fee Claims ...........................................................................................18
    C.    DIP Claims ...............................................................................................................19
    D.    Priority Tax Claims ..................................................................................................20

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....................20

    A.    Classification of Claims and Interests ......................................................................20
    B.    Treatment of Claims and Interests ..........................................................................21
    C.    Special Provision Governing Unimpaired Claims ....................................................26
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................26
    E.    Subordinated Claims ...............................................................................................26
    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ............26
    G.    Intercompany Interests ............................................................................................26
    H.    Controversy Concerning Impairment ......................................................................26

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ...............................................27

    A.    General Settlement of Claims and Interests .............................................................27
    B.    Restructuring Transactions .......................................................................................27
    C.    Sources of Consideration for Plan Distributions ......................................................27
    D.    Wind-Down Debtor ................................................................................................28
    E.    Liquidating Trust .....................................................................................................28
    F.    Plan Administrator ...................................................................................................29
    G.    Creditor Trustee ......................................................................................................30
    H.    Exculpation, Indemnification, Insurance, and Liability Limitation ...........................30
    I.    Tax Returns ..............................................................................................................30
    J.    Dissolution of the Wind-Down Debtor ..................................................................31
    K.    Statutory Committee and Cessation of Fee and Expense Payment ...........................31
    L.    Cancellation of Securities and Agreements ..............................................................31
    M.    Corporate Action .....................................................................................................31
    N.    Effectuating Documents; Further Transactions .......................................................32
    O.    Section 1146 Exemption .........................................................................................32
    P.    Director and Officer Liability Insurance; Other Insurance ......................................32
    Q.    Causes of Action .....................................................................................................33
    R.    Section 1145 Exemption .........................................................................................33
    S.    Global Settlement ....................................................................................................33
    T.    Provisions Regarding the United States ...................................................................33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............34

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .................34
    B.    Indemnification Obligations ....................................................................................34

| | | |
|---|---|---|
| C. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 34 |
| D. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 35 |
| E. | Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases | 35 |
| F. | Insurance Policies | 36 |
| G. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 36 |
| H. | Reservation of Rights | 36 |
| I. | Nonoccurrence of Effective Date | 36 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ... 36

| | | |
|---|---|---|
| A. | Timing and Calculation of Amounts to Be Distributed | 36 |
| B. | Disbursing Agent | 37 |
| C. | Rights and Powers of Disbursing Agent | 37 |
| D. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 37 |
| E. | Compliance with Tax Requirements | 38 |
| F. | Allocations | 38 |
| G. | No Postpetition or Default Interest on Claims | 38 |
| H. | Setoffs and Recoupment | 38 |
| I. | No Double Payment of Claims. | 39 |
| J. | Claims Paid or Payable by Third Parties | 39 |

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS** ... 40

| | | |
|---|---|---|
| A. | Allowance of Claims | 40 |
| B. | Claims Administration Responsibilities | 40 |
| C. | Estimation of Claims | 40 |
| D. | Adjustment to Claims or Interests Without Objection | 41 |
| E. | Time to File Objections to Claims | 41 |
| F. | Disallowance of Claims or Interests | 41 |
| G. | Amendments to Proofs of Claims or Interests | 41 |
| H. | No Distributions Pending Allowance | 41 |
| I. | Distributions After Allowance | 41 |

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ... 42

| | | |
|---|---|---|
| A. | **Release of Liens** | 42 |
| B. | **Releases by the Debtors** | 42 |
| C. | **Releases by the Releasing Parties.** | 43 |
| D. | **Exculpation** | 44 |
| E. | **Injunction** | 44 |
| F. | Protections Against Discriminatory Treatment | 45 |
| G. | Reimbursement or Contribution | 45 |
| H. | Term of Injunctions or Stays | 45 |

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ... 45

| | | |
|---|---|---|
| A. | Conditions Precedent to the Confirmation of the Plan | 45 |
| B. | Conditions Precedent to the Effective Date | 46 |
| C. | Waiver of Conditions | 46 |
| D. | Effect of Failure of Conditions | 47 |

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ... 47

| | | |
|---|---|---|
| A. | Modification and Amendments | 47 |
| B. | Effect of Confirmation on Modifications | 47 |
| C. | Revocation or Withdrawal of Plan | 47 |

ARTICLE XI. RETENTION OF JURISDICTION ................................................................................48

ARTICLE XII. MISCELLANEOUS PROVISIONS ...........................................................................49

      A.     Immediate Binding Effect.............................................................................................49
      B.     Additional Documents ..................................................................................................50
      C.     Payment of Statutory Fees ...........................................................................................50
      D.     Reservation of Rights....................................................................................................50
      E.     Successors and Assigns.................................................................................................50
      F.     Notices ..........................................................................................................................50
      G.     Entire Agreement .........................................................................................................54
      H.     Exhibits .........................................................................................................................54
      I.     Non-Severability of Plan Provisions ...........................................................................54
      J.     Closing of Chapter 11 Cases .......................................................................................54
      K.     Conflicts........................................................................................................................54

**INTRODUCTION**

PGX Holdings, Inc. and the above-captioned debtors and debtors in possession (each, a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") propose this Plan for the resolution of the outstanding claims against, and equity interests in, the Debtors. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters. Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

*A.*      *Defined Terms*

As used in this Plan, capitalized terms have the meanings given to them below.

1.      "***Administrative Claim***" means a Claim against a Debtor arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) Adequate Protection Claims (as defined in the DIP Order and subject to allowance and procedures set forth in the DIP Order); and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.      "***Administrative Claims Bar Date***" means the applicable deadline for Filing requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code), which shall be (a) September 7, 2023, at 4:00 p.m. prevailing Eastern Time for Administrative Claims that may have arisen, accrued, or otherwise become due and payable at any time on and subsequent to the Petition Date but on or before July 31, 2023, or (b) 45 days after the Effective Date for Administrative Claims that may have arisen, accrued, or otherwise become due and payable at any time on and subsequent to July 31, 2023.

3.      "***Administrative Claims Objection Bar Date***" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code), which shall be the later of (1) 60 days after the Effective Date and (2) 60 days after the Filing of the applicable request for payment of the Administrative Claims; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

4.      "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

5.      "***Agent***" means each of, and in each case in its capacity as such, the Prepetition First Lien Agent, the Prepetition Second Lien Agent, and the DIP Agent.

6.      "***Allowed***" means with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the applicable claims objection deadline and that is evidenced by a Proof of Claim or Interest, as applicable, Filed or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order;

1

(b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; or (c) a Claim or Interest that is upheld or otherwise Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith, or (iv) by Final Order of the Bankruptcy Court (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order); *provided* that with respect to a Claim or Interest described in clauses (a) and (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof has been interposed within the applicable period of time fixed in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest, as applicable, shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for Secured Tax Claims or any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be deemed expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, in no event shall any Intercompany Claim be deemed as Allowed for purposes of distributions hereunder. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or such Wind-Down Debtor, as applicable. For the avoidance of doubt: (x) the Debtors or the Wind-Down Debtor, as applicable, shall remain responsible for the allowance of any Other General Unsecured Claims; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims and Interests would be allowed under applicable non-bankruptcy law. "Allow," "Allowing," and "Allowance" shall have correlative meanings.

7. "***Approved Budget***" shall have the same meaning ascribed to such term in the DIP Order.

8. "***Asset Purchase Agreements***" means the Lexington Law APA and the Progrexion APA, as approved by the Sale Orders, together with all exhibits, appendices, supplements, and documents, and agreements ancillary thereto, in each case as amended, modified, or supplemented from time to time in accordance with the terms thereof.

9. "***Assumed Executory Contracts and Unexpired Leases Schedule***" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, if any, which shall be included in the Plan Supplement and shall be in form and substance reasonably acceptable to the Required Consenting Lenders and the applicable Purchaser, as the same may be amended, modified, or supplemented from time to time.

10. "***Auction***" means the auction, if any, for some or all of the Debtors' assets, conducted in accordance with the Bidding Procedures.

11. "***Available Cash***" means, collectively, all Cash on hand held by the Debtors and Wind-Down Debtor on and after the Effective Date, including the net proceeds from the Sale Transaction, the GUC Trade Settlement Cash Reserve (which, for the avoidance of doubt was provided by the Prepetition First and Second Lien Lenders from their Cash Collateral (as defined in the DIP Order) and released to the Debtors upon entry of the Sale Orders) (the proceeds of which shall be released upon Confirmation of the Plan), and the GUC Litigation Claims Settlement Cash.

12. "***Avoidance Actions***" mean any and all avoidance, recovery, or subordination actions or remedies that may be brought by or on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 544, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code.

13. "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 100–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

14.     "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Delaware.

15.     "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

16.     "***Bar Date Order***" means the final order entered by the Bankruptcy Court granting the *Debtors' Motion for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Claim, Including Claims Under 11 U.S.C. § 503(b)(9) and Administrative Expense Requests; (B) Approving the Form and Manner for Filing Proofs of Claim and Administrative Expense Requests; (C) Approving Notice Thereof; and (D) Granting Related Relief* [Docket No. 194] (as the same may be amended, supplemented, or modified from time to time after entry thereof), entered by the Bankruptcy Court on July 19, 2023.

17.     "***Bidding Procedures***" means the procedures governing the sale and marketing process for the Sale Transaction as approved pursuant to the Bidding Procedures Order.

18.     "***Bidding Procedures Motion***" means the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 66].

19.     "***Bidding Procedures Order***" means the *Order (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder; (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; (D) Approving Assumption and Assignment Procedures; and (E) Scheduling A Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 331] (as may be modified, amended, or supplemented), entered by the Bankruptcy Court on August 4, 2023.

20.     "***Business Day***" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

21.     "***Cash***" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

22.     "***Cause of Action***" or "***Causes of Action***" means any actions, Avoidance Actions, Claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

23. "**CFPB Action**" means the action styled Bureau of *Consumer Financial Protection v. Progrexion Marketing, Inc.*, et al., Case No. 19-CV-00298-DBP, currently pending in the United States District Court for the District of Utah and any appeals or any other recourse in connection therewith.

24. "**CFPB Claim**" means any Claim arising under, derived from, or based upon the CFPB Action.

25. "**CFPB Settlement Order**" means the *Stipulated Final Judgment and Order* approving the CFPB settlement [CFPB Action ECF No. 600] entered on August 30, 2023, by the United States District Court for the District of Utah.

26. "**Chapter 11 Cases**" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

27. "**Claim**" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

28. "**Claims and Noticing Agent**" means Kurtzman Carson Consultants LLC in its capacity as claims and noticing agent for the Debtors and any successor.

29. "**Claims Bar Date**" means, collectively, the date established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims for which the Bankruptcy Court entered an order excluding the Holders of such Claims from the requirement of Filing Proofs of Claim.

30. "**Claims Register**" means the official register of Claims maintained by the Claims and Noticing Agent.

31. "**Class**" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

32. "*Committee*" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on June 14, 2023, as set forth in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 90].

33. "**Company Parties**" means, collectively, PGX, each of its direct and indirect subsidiaries that have executed and delivered counterpart signature pages to the Restructuring Support Agreement.

34. "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

35. "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

36. "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code.

37. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Required Consenting Lenders and the Committee.

38. "**Consenting Lenders**" means the Consenting Prepetition First Lien Lenders and the Consenting Prepetition Second Lien Lenders.

39.     "**_Consenting Prepetition First Lien Lenders_**" means, collectively, the holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold Prepetition First Lien Claims that have executed and delivered counterpart signature pages to the Restructuring Support Agreement, a joinder to the Restructuring Support Agreement, or an executed form of the transfer agreement providing, among other things, that a transferee is bound by the terms of the Restructuring Support Agreement, as applicable, to counsel to the Company Parties.

40.     "**_Consenting Prepetition Second Lien Lenders_**" means, collectively, the holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold Prepetition Second Lien Claims that have executed and delivered counterpart signature pages to the Restructuring Support Agreement, a joinder to the Restructuring Support Agreement, or an executed form of the transfer agreement providing, among other things, that a transferee is bound by the terms of the Restructuring Support Agreement, as applicable, to counsel to the Company Parties.

41.     "**_Consenting Stakeholders_**" means the Consenting Lenders and PGX TopCo, LLC.

42.     "**_Consummation_**" means the occurrence of the Effective Date as to the applicable Debtor.

43.     "**_Continuing Trade Claim_**" means any General Unsecured Claim arising from the provision of ordinary course trade, vendor, professional, or other services provided to the Debtors and that, in the Debtors' reasonable discretion (in consultation with the Committee), is expected to continue with the respective Purchaser after the consummation of the Sale Transaction or be utilized by the Wind-Down Debtor or Liquidating Trust, as applicable, to the extent not fully paid as a Critical Vendor (as defined in the Critical Vendor Order).

44.     "**_Continuing Trade Claimants_**" means, collectively, the Holders of Continuing Trade Claims.

45.     "**_Credit Bid Amount_**" means, as set forth in the Progrexion APA, a credit bid equal to (a) all obligations under the DIP Facility and (b) not less than $237,563,673.27 of the obligations under the Prepetition First Lien Credit Agreement.

46.     "**_Credit Bid Transaction_**" means a Sale Transaction pursuant to the Progrexion APA on account of a credit bid all of the DIP Claims and some or all of the Prepetition First Lien Claims, which credit bid is selected by the Debtors as the highest and best bid as set forth in the Bidding Procedures Order and as approved by the Bankruptcy Court pursuant to the Progrexion Sale Order.

47.     "**_Creditor Trust_**" means a trust established by the Debtors for the benefit of the Other GUC Claimants with the Creditor Trustee acting as trustee thereof, the governing terms of which shall be determined by the Committee, and which is funded with cash from the Debtors' cash on hand in the amount of $100,000, and which shall have the right to pursue the liquidation or monetization of the Other Assets (including collecting amounts due under or realizing upon the PIK Notes). The Creditor Trust shall also hold the PIK Notes for distribution in accordance with the Plan.

48.     "**_Creditor Trust Agreement_**" means the trust agreement that documents and governs the powers, duties and responsibilities of the Creditor Trustee, which will be materially consistent with and subject to the Plan and otherwise reasonably acceptable to the Debtors and the Committee in the substance and form included in the Plan Supplement. All Creditor Trust governance issues shall be determined by the Committee.

49.     "**_Creditor Trust Assets_**" means the assets transferred to the Creditor Trust on or after the Effective Date, including: (a) $100,000 of funding from the Debtors' cash on hand; (b) the PIK Notes; (c) the Other Assets; (d) any Excess Distributable Cash; and (e) a portion of GUC Litigation Claims Settlement Cash (as allocated by the Committee).

50.     "**_Creditor Trustee_**" means Ryniker Consultants, LLC, the Person appointed by the Committee to serve as trustee of the Creditor Trust, as identified in the Plan Supplement and in accordance with Article IV.G of the Plan.

51.     "**Critical Vendor Order**" means the *Final Order (I) Authorizing Debtors to Pay Certain Prepetition Claims of Critical Vendors and (II) Granting Related Relief* [Docket No. 225].

52.     "**Cure Claim**" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

53.     "**Cure Notice**" means, with respect to an Executory Contract or Unexpired Lease to be assumed under the Plan, a notice that (a) sets forth the proposed amount to be paid on account of a Cure Claim in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed under the Plan; (c) sets forth the procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases, including the proposed objection deadline, and for the resolution by the Bankruptcy Court of any such disputes; and (d) states that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance of the Executory Contract(s) to be assigned, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease

54.     "**Debtor Release**" means the releases given on behalf of the Debtors and their Estates as set forth in Article VIII.B of the Plan.

55.     "**Deficiency Claims**" means, collectively, the Prepetition First Lien Deficiency Claims and the Prepetition Second Lien Deficiency Claims.

56.     "**Definitive Document**" means (a) the Confirmation Order; (b) the DIP Order; (c) the Sale Transaction Documentation; (d) all material pleadings filed by the Company Parties in connection with the Chapter 11 Cases (or related order), including the First Day Pleadings and all orders sought pursuant thereto; provided, however, that monthly or quarterly operating reports, retention applications, fee applications, fee statements, and any declarations in support thereof or related thereto shall not constitute material pleadings; and (e) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments or other documents reasonably necessary or desirable to consummate and document the transactions contemplated by the Restructuring Support Agreement or the Restructuring Transactions (including any exhibits, amendments, modifications, or supplements from time to time).

57.     "**DIP Agent**" means Blue Torch Finance LLC (in such capacity, together with its successors and assigns).

58.     "**DIP Claims**" means all Claims arising under, derived from, based upon, or secured pursuant to the DIP Order or other DIP Facility Documents, with respect to the DIP Facility.

59.     "**DIP Credit Agreement**" means that certain *Superpriority Secured Debtor-in Possession Financing Agreement*, attached as <u>Exhibit A</u> to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling A Final Hearing, and (VI) Granting Related Relief* [Docket No. 70] (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

60.     "**DIP Facility**" means that certain debtor-in-possession financing facility documented pursuant to the DIP Facility Documents and the DIP Order.

61.     "**DIP Facility Documents**" means the DIP Credit Agreement together with the schedules and exhibits attached thereto, and all security agreements, pledge agreements, related agreements, documents, instruments and amendments executed and delivered in connection therewith, including the DIP Order.

6

62. "**DIP Lenders**" means the banks, financial institutions, and other lenders under the DIP Credit Agreement.

63. "**DIP Order**" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 332] (as may be modified, amended, or supplemented pursuant to a subsequent Final Order), entered by the Bankruptcy Court on August 4, 2023.

64. "**Disbursing Agent**" means the Debtors, Wind-Down Debtor or Creditor Trustee (as applicable), or the Entity or Entities selected by the Debtors, Wind-Down Debtor or Creditor Trustee, as applicable, to make or facilitate distributions contemplated under the Plan, including the Plan Administrator, if applicable.

65. "**Disclosure Statement**" means the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to the Disclosure Statement Order. The Disclosure Statement shall be reasonably acceptable to the Committee, the DIP Lenders, the Prepetition First Lien Lenders, and the Prepetition Second Lien Lenders, and consistent with the terms of the Global Settlement Term Sheet.

66. "**Disclosure Statement Order**" means the *Order (I) Approving the Adequacy of the Disclosure Statement on an Interim Basis, (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (III) Approving the Solicitation and Notice Procedures, (IV) Approving the Combined Hearing Notice, and (V) Granting Related Relief* [Docket No. 478] (as may be modified, amended, or supplemented by further Final Order), entered by the Bankruptcy Court on September 16, 2023.

67. "**Disputed**" means, with respect to any Claim or Interest, any Claim or Interest that is subject to an objection or request for estimation Filed by any of the Debtors or any other party-in-interest in accordance with applicable law and which objection or request has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court.

68. "**Distributable Proceeds**" means all Cash of the Debtors or Wind-Down Debtor, as applicable, on or after the Effective Date, after giving effect to the funding of the Wind-Down Debtor Account and Professional Fee Escrow Account.

69. "**Distribution Record Date**" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the Effective Date, or such other date as is designated in a Final Order of the Bankruptcy Court.

70. "**Effective Date**" means, as to the applicable Debtor, the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.A, Article IX.B, and Article IX.C of the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

71. "**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

72. "**Estate**" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

73. "**Excess Distributable Cash**" means Available Cash after funding the Secured Tax Claims, Other Secured Claims, Other Priority Claims, and the funding of the amounts set forth in the Global Settlement Term Sheet, as applicable, including but not limited to the GUC Trade Settlement Cash; *provided* that any Cash placed in the Wind-

Down Debtor Account, or Professional Fee Escrow Account shall not be Excess Distributable Cash, except, to the extent, following the wind down of the Chapter 11 Cases, any amounts remain in the Wind-Down Debtor Account or Professional Fee Escrow Account.

74. "*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such: (a) each of the Debtors; (b) the Committee and each of its respective members; and (c) with respect to the Entities in clause (a) and (b), each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

75. "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

76. "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

77. "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

78. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

79. "*First Day Pleadings*" means the first-day pleadings that the Company Parties File with the Bankruptcy Court upon the commencement of the Chapter 11 Cases.

80. "*General Unsecured Claim*" means collectively, Continuing Trade Claims, Litigation Claims, Other General Unsecured Claims, and the CFPB Claim.

81. "*Global Settlement*" means the settlement agreement incorporated herein, which memorializes and implements the terms of the Global Settlement Term Sheet. For the avoidance of doubt, to the extent the terms of the Global Settlement are inconsistent with the Global Settlement Term Sheet, the terms of the Global Settlement Term Sheet shall control.

82. "*Global Settlement Term Sheet*" means that certain *Term Sheet for Plan and Settlement in Principle* attached as Exhibit C to the DIP Order and incorporated by reference therein.

83. "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or any Wind-Down Debtor, as applicable.

84. "*Governmental Bar Date*" means December 1, 2023, at 4:00 p.m. prevailing Eastern Time, which is the date by which Proofs of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the Bar Date Order.

85. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

86. "*GUC Litigation Claims Settlement Cash*" means cash in the amount of $750,000.

8

87. "*GUC Trade Settlement Cash*" means cash in the amount of $3.25 million.

88. "*GUC Trade Settlement Cash Reserve*" shall have the same meaning ascribed to such term in the Progrexion Sale Order. For the avoidance of doubt, the GUC Trade Settlement Cash Reserve was that certain reserve provided by the Prepetition Secured Lenders' release from the Debtors' then-existing Cash Collateral (which came solely from the Debtors' cash on hand at the time of entry of the Progrexion Sale Order) an amount equal to the GUC Trade Settlement Cash.

89. "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor.

90. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

91. "*Independent Directors*" means Neal Goldman, David Gibbons, Eugene Davis, and Roger Meltzer, in their capacities as current or former independent directors of certain of the Debtors.

92. "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate of a Debtor against another Debtor arising before the Petition Date.

93. "*Intercompany Interest*" means an Interest in a Debtor held by a Debtor or an Affiliate of a Debtor.

94. "*Interest*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

95. "*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 208] (as may be modified, amended, or supplemented by further order of the Bankruptcy Court), as entered by the Bankruptcy Court on July 19, 2023.

96. "*IRS*" means the United States Internal Revenue Service.

97. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

98. "*Lexington Law APA*" means that certain Asset Purchase Agreement, as may be amended, supplemented, or otherwise modified by the parties thereto, dated September 28, 2023, by and among Lexington Law Firm and the Lexington Law Purchaser for substantially all the assets of Lexington Law Firm, subject to the terms of Lexington Law Sale Order.

99. "*Lexington Law Firm*" means Debtor John C. Heath, Attorney At Law PC (d/b/a Lexington Law Firm), a professional corporation incorporated under the Laws of Utah.

100. "*Lexington Law Purchaser*" means Oquirrh Mountain Law Group, P.C., whose bid for part or all of the Debtors' assets was selected by the Debtors and approved by the Lexington Law Sale Order as the highest or otherwise best bid in accordance with the Bidding Procedures Order.

101. "*Lexington Law Sale Order*" means the order of the Bankruptcy Court approving the Sale Transaction related to the Lexington Law APA as contemplated by the Bidding Procedures Order.

102. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

103. "*Liquidating Trust*" shall have the meaning ascribed to such term in Article IV.E herein.

104. "*Liquidating Trust Assets*" means any assets transferred from the Wind-Down Debtor to the Liquidating Trust in accordance with Article IV.E herein.

105. "*Litigation Claim*" means any non-priority, unsecured Claims, other than the CFPB Claim, arising under the WARN Act, class action, or other litigation claim or controversy.

106. "*Litigation Claimant*" means any Holder of a Litigation Claim arising from pending litigation, as set forth in Global Settlement Term Sheet.

107. "*Litigation Portion*" means the amount of the GUC Litigation Claims Settlement Cash allocated for payment and settlement solely with Litigation Claimants, which is acceptable to the Committee.

108. "*Litigation Settlement*" means the settlement with the Litigation Claimants in full and final settlement of all controversies and claims as consented to by the Committee or the Creditor Trustee, as applicable.

109. "*Other Assets*" means, collectively, the remaining assets of any of the Debtors excluded from the Sale Transaction. For the avoidance of doubt, Other Assets shall not include any of the Transferred Causes of Action.

110. "*Other General Unsecured Claim*" means any General Unsecured Claim that is not a Continuing Trade Claim, a Litigation Claim, or the CFPB Claim.

111. "*Other GUC Claimants*" means, collectively, Holders of Allowed Other General Unsecured Claims. The Prepetition First and Second Lien Lenders shall not constitute Other GUC Claimants for purposes of any distributions or other payments hereunder on account of their Deficiency Claims unless and until distributions are made on account of other Allowed General Unsecured Claims in the amount of $10 million, at which point the Prepetition First and Second Lien Lenders shall begin to participate in distributions Pro Rata on account of their Deficiency Claims. For the avoidance of doubt, the Prepetition First and Second Lien Lenders shall constitute Other GUC Claimants for all purposes hereunder on account of their Deficiency Claims solely to the extent the distribution on account of other Allowed General Unsecured Claims exceeds $10 million in the aggregate (which such distribution shall include, for the avoidance of doubt, the GUC Trade Settlement Cash Reserve and including any Other Assets subsequently monetized pursuant to the terms and conditions of the Creditor Trust); provided however, that any distribution on account of the PIK Notes shall not be made on account of the Deficiency Claims.

112. "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

113. "*Other Secured Claim*" means any Secured Claim that is not a DIP Claim, a Prepetition First Lien Claim, Prepetition Second Lien Claim, or a Secured Tax Claim.

114. "*Permitted Transfer*" means a transfer of all or a portion of the assets of the Wind-Down Debtor to the Liquidating Trust in accordance with Article IV.E herein.

115. "*Person*" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

116. "*Petition Date*" means June 4, 2023, the date on which each of the Debtors commenced the Chapter 11 Cases.

117. "*PGX*" means PGX Holdings, Inc., a company incorporated under the Laws of Delaware.

118.    "*PIK Notes*" means, collectively the two (2) tranches of subordinated, unsecured notes to be issued by the Progrexion Purchaser or a subsidiary thereto, each tranche shall be in the principal amount of $250,000 and accruing at a 5% yearly PIK interest.  All PIK Notes shall mature 5 years after the Effective Date and shall be subordinate to all current and future indebtedness of the issuer; *provided*, that the PIK Notes may be repaid in the first two (2) years at a 20% discount.  For the avoidance of doubt, the PIK Notes shall not (a) be guaranteed by the Lexington Law Purchaser or its subsidiaries nor (b) include any covenants or information rights.

119.    "*Plan*" means this *First Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be altered, amended, modified, or supplemented from time to time.  Any Filed Plan shall be reasonably acceptable to the Committee, the DIP Lenders, the Prepetition First Lien Lenders, and the Prepetition Second Lien Lenders, and consistent with the terms of the Global Settlement Term Sheet.

120.    "*Plan Administrator*" means Alvarez & Marsal North America, LLC, as designated by the Debtors in consultation with the Committee, who will be disclosed at or prior to the Confirmation Hearing, to have all powers and authorities set forth in Article IV.F of this Plan.

121.    "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims in accordance with the Plan.

122.    "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed initially by the Debtors no later than the Plan Supplement Filing Date and may be further amended thereafter, including the following to the extent applicable: (a) Rejected Executory Contracts and Unexpired Leases Schedule, (b) Assumed Executory Contracts and Unexpired Leases Schedule, (c) Schedule of Retained Causes of Action, (d) any necessary documentation related to the Sale Transactions, (e)(i) the identity of the Creditor Trustee and (ii) the terms of the governing agreement of the Creditor Trust, (f) the Litigation Portion of the GUC Litigation Claims Settlement Cash, (g) the PIK Notes, and (h) the Plan Administrator Agreement.

123.    "*Plan Supplement Filing Date*" means, the date that is (a) seven days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan or (b) such later date as may be approved by the Bankruptcy Court.

124.    "*Prepetition First Lien Agent*" means Blue Torch Finance LLC, in its capacity as administrative agent and collateral agent under the Prepetition First Lien Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the Prepetition First Lien Credit Agreement.

125.    "*Prepetition First Lien Claims*" means any Claims arising under, derived from, or based upon the Prepetition First Lien Loans under the Prepetition First Lien Credit Agreement.

126.    "*Prepetition First Lien Credit Agreement*" means that certain Prepetition First Lien Credit Agreement, dated as of September 29, 2014, as amended, supplemented, or modified from time to time, by and among PGX Holdings, Inc., the Prepetition First Lien Lenders, and the Prepetition First Lien Agent.

127.    "*Prepetition First Lien Deficiency Claim*" means any Prepetition First Lien Claim that is not a Secured Claim.

128.    "*Prepetition First Lien Lenders*" means, collectively, the banks, financial institutions, and other lenders party to the Prepetition First Lien Credit Agreement from time to time, each solely in their capacity as such.

129.    "*Prepetition First Lien Loans*" means loans outstanding under the Prepetition First Lien Credit Agreement.

130.    "*Prepetition Loan Claims*" means the Prepetition First Lien Claims and the Prepetition Second Lien Claims.

131.    "*Prepetition Loan Documents*" means the Prepetition First Lien Credit Agreement and Prepetition Second Lien Credit Agreement and all other agreements, documents, and instruments related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements.

132.    "*Prepetition Second Lien Agent*" means Prospect Capital Corporation, in its capacity as administrative agent and collateral agent under the Prepetition Second Lien Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the Prepetition Second Lien Credit Agreement.

133.    "*Prepetition Second Lien Claims*" means any Claims arising under, derived from, or based upon the Prepetition Second Lien Loans under the Prepetition Second Lien Credit Agreement.

134.    "*Prepetition Second Lien Credit Agreement*" means that certain Prepetition Second Lien Credit Agreement, dated as of September 29, 2014, as amended, supplemented, or modified from time to time, by and among PGX Holdings, Inc., the Prepetition Second Lien Lender, and the Prepetition Second Lien Agent.

135.    "*Prepetition Second Lien Deficiency Claim*" means any Prepetition Second Lien Claim that is not a Secured Claim.

136.    "*Prepetition Second Lien Lenders*" means, collectively, the banks, financial institutions, and other lenders party to the Prepetition Second Lien Credit Agreement from time to time, each solely in their capacity as such.

137.    "*Prepetition Second Lien Loans*" means loans outstanding under the Prepetition Second Lien Credit Agreement.

138.    "*Prepetition Secured Lenders*" means, collectively, the Prepetition First and Second Lien Lenders.

139.    "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

140.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code that is not otherwise a Secured Tax Claim.

141.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

142.    "*Professional*" means an Entity: (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

143.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

144.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors at a third-party bank with Cash on the Effective Date in an amount equal to the Professional Fee Escrow Amount.

145.    "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.B.3 of the Plan.

146. "***Progrexion APA***" means that certain Asset Purchase Agreement, as amended, supplemented, or otherwise modified by the parties thereto, dated September 28, 2023, by and among, on the one hand, Debtors PGX Holdings, Inc.; Progrexion Holdings, Inc.; Credit.com, Inc.; eFolks Holdings, Inc.; Creditrepair.com Holdings, Inc.; Progrexion ASG, Inc.; Progrexion IP, Inc.; Progrexion Marketing, Inc.; Progrexion Teleservices, Inc.; eFolks, LLC; Creditrepair.com, Inc.; and Credit Repair UK, Inc. and, on the other hand, the Progrexion Purchaser for substantially all the assets of the Sellers (as defined therein), subject to the terms of the Progrexion Sale Order.

147. "***Progrexion Purchaser***" means Credit.com Holdings, LLC, whose bid for part or all of the Debtors' assets was selected by the Debtors and approved by the Progrexion Sale Order as the highest or otherwise best bid in accordance with the Bidding Procedures Order.

148. "***Progrexion Sale Order***" means the order of the Bankruptcy Court approving the Sale Transaction related to the Progrexion APA as contemplated by the Bidding Procedures Order.

149. "***Proof of Claim***" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Administrative Claims Objection Bar Date, or the Governmental Bar Date, as applicable.

150. "***Purchasers***" means, collectively, the Lexington Law Purchaser and the Progrexion Purchaser, as selected by the Debtors and approved by the Bankruptcy Court as the highest or otherwise best bids in accordance with the Bidding Procedures Order.

151. "***Quarterly Fees***" means any and all fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable.

152. "***Reinstate***," "***Reinstated***," or "***Reinstatement***" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

153. "***Rejected Executory Contracts and Unexpired Leases Schedule***" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

154. "***Related Party***" means, each of, and in each case in its capacity as such, current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors. For the avoidance of doubt, the members of each Governing Body are Related Parties of the Debtors.

155. "***Released Party***" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtor; (c) the Plan Administrator; (d) each Consenting Stakeholder; (e) the Agent; (f) all Holders of Claims; (g) all Holders of Interests; (h) the Purchasers; (i) the Committee and its members (in their capacity as Committee members); (j) the Creditor Trust (including the Creditor Trustee on behalf of the Creditor Trust): (k) each current and former Affiliate of each Entity in clause (a) through the following clause (l); and (l) each Related Party of each Entity in clause (a) through this clause (l); *provided* that any Holder of a Claim or Interest that opts out of the releases contained in the Plan shall not be a Released Party.

156. "***Releasing Parties***" means, each of, and in each case in its capacity as such (a) the Debtors; (b) the Wind-Down Debtor; (c) the Plan Administrator; (d) each Consenting Stakeholder; (e) the Agent; (f) all Holders of Claims; (g) all Holders of Interests; (h) the Purchasers; (i) the Committee and its members (in their capacity as Committee members); (j) the Creditor Trust (including the Creditor Trustee on behalf of the Creditor Trust); (k) each current and former Affiliate of each Entity in clause (a) through the following clause (l) for which such Entity is legally

13

entitled to bind such Affiliate to the releases contained in the Plan under applicable non-bankruptcy law; and (l) each Related Party of each Entity in clause (a) through this clause (l) for which such Affiliate or Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law; *provided, however*, that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the release contained in the Plan; (y) timely objects to the Third-Party Release and such objection is not withdrawn before Confirmation; or (z) is an Entity in a voting class whose solicitation package was returned as undeliverable.

157. "*Required Consenting Lenders*" means, as of the relevant date, Consenting Lenders holding at least 50.01% of the aggregate outstanding principal amount of the Prepetition First Lien Loans and the Prepetition Second Lien Loans that are held by all Consenting Lenders.

158. "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of June 4, 2023, by and among the Debtors and certain Holders of Claims and Interests, including all exhibits and schedules attached thereto, as may be amended in accordance with its terms.

159. "*Restructuring Transactions*" means the transactions described in Article IV.B of the Plan.

160. "*Retained Causes of Action*" means any Causes of Action that vest in the Wind-Down Debtor on the Effective Date and for the avoidance of doubt, Retained Causes of Action shall not include any of the Transferred Causes of Action or any Causes of Action that are settled, released, or exculpated under the Plan, including as part of the claims reconciliation process.

161. "*Sale Closing*" means the closing of the transactions contemplated by the Asset Purchase Agreements.

162. "*Sale Orders*" means, collectively, the Progrexion Sale Order and the Lexington Law Sale Order.

163. "*Sale Transaction*" means the sale of all or substantially all of the Debtor's assets to the applicable Purchaser(s) as set forth in the Asset Purchase Agreements.

164. "*Sale Transaction Documentation*" means all motions, filings, documents, and agreements related to the Sale Transaction, including without limitation, the Asset Purchase Agreements, the Sale Orders, the Bidding Procedures, the Bidding Procedures Motion, and the Bidding Procedures Order.

165. "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors.

166. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time.

167. "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; provided that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest. For the avoidance of doubt, neither DIP Claims nor Prepetition Loan Claims are, and shall not be, Section 510(b) Claims.

168. "*Secured*" means when referring to a Claim: (a) secured by a Lien on collateral in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

169. "**Secured Tax Claim**" means any Secured Claim that, absent its secured status would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

170. "**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

171. "**Security**" means a security as defined in section 2(a)(1) of the Securities Act.

172. "**Stipulated Final Judgment and Order**" means that certain *Stipulated Final Judgment and Order*, [Docket No. 600] entered on August 30, 2023 in the matter *Bureau of Consumer Financial Protection v. Progrexion Marketing, Inc., et al.*, Case No. 2:19-cv-00298-BSJ.

173. "**Tax Code**" means the United States Internal Revenue Code of 1986, as amended.

174. "**Third-Party Release**" means the release given by the Releasing Parties to the Released Parties as set forth in Article VIII.B and Article VIII.C of the Plan.

175. "**Transferred Causes of Action**" means any and all Causes of Action held by the Debtors that were transferred to the Purchasers pursuant to the Sale Transaction.

176. "**Treasury Regulations**" means the regulations promulgated under the Tax Code by the United States Department of the Treasury.

177. "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

178. "**Unexpired Lease**" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

179. "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

180. "**Unused Critical Vendor Cash**" means, the extent to which the aggregate amount of the Debtors' payment of prepetition amounts on account of Critical Vendor Claims (as defined in the Critical Vendor Order) in accordance with the Approved Budget is less than $3.624 million. The Debtors shall make all payments on account of Critical Vendor Claims (as defined in the Critical Vendor Order) consistent with the $3.624 million aggregate amount of such Claims set forth in the Approved Budget.

181. "**Voting Deadline**" means 4:00 p.m. (prevailing Eastern Time) on October 20, 2023.

182. "**WARN Act**" means the Worker Adjustment and Retraining Notification Act of 1988, as amended, and the rules and regulations promulgated thereunder.

183. "**Wind-Down Budget**" means the wind-down budget funding the wind-down of the Debtors estates, in an amount no less than $2.625 million, acceptable to the Debtors, the DIP Lenders, and the Committee, to be held in escrow by the DIP Agent and to be released only upon the closing of the Sale Transaction, which shall automatically be increased on a dollar for dollar basis to the extent, as of the date of the consummation of the Sale Transaction, the Debtors have capital in excess of the amount set forth in the then-approved budget; *provided, however*, such that in no event shall the wind-down budget exceed $3,000,000. Notwithstanding the foregoing or anything to the contrary herein, the Wind-Down Budget shall be funded in accordance with the budget Filed at Docket No. 255, and the use of the Wind-Down Budget shall be subject to the Committee's consent.

184. "**Wind-Down Debtor**" means the Debtor or Debtors or any successor or successors thereto after the Effective Date responsible for winding down the Debtors' Estates and implementing the terms of the Plan.

185.     "***Wind-Down Debtor Account***" means the Debtors' bank account or accounts used to fund all expenses and payments required to be made by the Wind-Down Debtor, which account will be funded on the Effective Date with Available Cash in the Wind-Down Debtor Account Amount.  Following the wind down of the Chapter 11 Cases, any remaining amounts in the Wind-Down Debtor Account shall be Excess Distributable Cash.  For the avoidance of doubt, the Wind-Down Debtor Account shall become property of the Wind-Down Debtor on the Effective Date.

186.     "***Wind-Down Debtor Account Amount***" means $2,625,000, plus any amounts budgeted to be utilized under the DIP Facility but not actually utilized by the Debtors as of the Effective Date, minus any amounts used to fund the Professional Fee Escrow Account or otherwise reserved or used by the Plan Administrator to fund the wind down of the Debtors' Estates in accordance with the Wind-Down Budget.

187.     "***Wind-Down Debtor Assets***" means all of the remaining assets of the Debtors' Estates following the consummation of the Sale Transaction excluding (a) the GUC Trade Settlement Cash Reserve and (b) the Other Assets.

*B.*     *Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Wind-Down Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors or the Wind-Down Debtor, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Wind-Down Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Wind-Down Debtor*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Debtor shall mean the Debtors and the Wind-Down Debtor, as applicable, to the extent the context requires.

G.      *No Substantive Consolidation; Limited Administrative Consolidation*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors except for the limited purposes set forth herein. The entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the limited consolidation of each of the Debtors, and their respective estates, solely for voting, confirmation, and distribution purposes under the Plan.  This limited consolidation shall not affect (other than for purposes related to funding distributions under the Plan) (a) the legal and organizational structure of the Debtors, (b) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, and (c) distributions out of any insurance policies or proceeds of such policies.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *General Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtor, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims, the DIP Claims, and Claims for fees and expenses pursuant to section 1930 of chapter

17

123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim in an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following: (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Wind-Down Debtor, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except with respect to Administrative Claims that are Professional Fee Claims, DIP Claims, or subject to section 503(b)(1)(D) of the Bankruptcy Code, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Wind-Down Debtor no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Wind-Down Debtor and the requesting party by the Administrative Claims Objection Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtor, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Wind-Down Debtor or any notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.      *Professional Fee Claims*

     1.      <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than sixty (60) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Wind-Down Debtor shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account, when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

     2.      <u>Professional Fee Escrow Account</u>

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been indefeasibly paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Wind-Down Debtor.

The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to each such Professional by the Debtors or the Wind-Down Debtor, as applicable, from the funds held in the Professional

Fee Escrow Account or the Wind-Down Debtor Account, as applicable, as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Wind-Down Debtor's obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Debtor and constitute part of the Wind-Down Debtor Assets without any further notice to or action, order, or approval of the Bankruptcy Court.

3.   Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account, *provided* that the Wind-Down Debtor shall use Cash on hand or from the Wind-Down Debtor Account to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.   Post-Confirmation Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Wind-Down Debtor. The Debtors and Wind-Down Debtor (as applicable) shall pay, within ten (10) Business Days after submission of a detailed invoice to the Debtors or Wind-Down Debtor (as applicable), with a copy to the Committee, such reasonable claims for compensation or reimbursement of expenses incurred by the Professionals of the Debtors and Wind-Down Debtor (as applicable). If the Debtors or Wind-Down Debtor (as applicable) dispute the reasonableness of any such invoice, the Debtors or Wind-Down Debtor (as applicable) or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.   *DIP Claims*

Pursuant to the Sale Orders, the DIP Claims were assumed by the Progrexion Purchaser in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim as of consummation of the Sale Transaction, and the Debtors have no further obligation to the DIP Lenders or any other party with respect to the DIP Claims, except to the extent otherwise set forth herein. Pursuant to the Sale Orders, all Liens and security interests granted to secure the Allowed DIP Claims were terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, and notwithstanding anything to the contrary herein, any requests for payment or reimbursement of expenses issued by a professional pursuant to the DIP Order are not required to be Filed or served, and shall not be subject to review, other than as contemplated by the DIP Order.

*D.*     *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

*A.*     *Classification of Claims and Interests*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4 | Prepetition First Lien Claims | Impaired | Entitled to Vote |
| 5 | Prepetition Second Lien Claims | Impaired | Entitled to Vote |
| 6A | Continuing Trade Claims | Impaired | Entitled to Vote |
| 6B | Other General Unsecured Claims | Impaired | Entitled to Vote |
| 6C | Litigation Claims | Impaired | Entitled to Vote |
| 6D | CFPB Claim | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 9 | Interests in PGX | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Interests in Lexington Law Firm | Impaired | Not Entitled to Vote (Deemed to Reject) |

20

| 11 | 510(b) Claims | | Impaired | Not Entitled to Vote (Deemed to Reject) |
|----|----------------|--|----------|------------------------------------------|

**B.** *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1. <u>Class 1 – Secured Tax Claims</u>

   (a) *Classification*: Class 1 consists of all Secured Tax Claims.

   (b) *Treatment*: Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, in exchange for such Secured Tax Claim, on or as soon as reasonably practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of a Secured Tax Claim shall receive, at the option of the Plan Administrator:

      (i) payment in full in Cash of such Holder's Allowed Secured Tax Claim, or

      (ii) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Plan Administrator to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

   (c) *Voting*: Class 1 is Unimpaired under the Plan. Holders of Secured Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2. <u>Class 2 – Other Secured Claims</u>

   (a) *Classification*: Class 2 consists of all Other Secured Claims.

   (b) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for such Allowed Other Secured Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Wind-Down Debtor:

      (i) payment in full in Cash of such Holder's Allowed Other Secured Claim;

      (ii) the collateral securing such Holder's Allowed Other Secured Claim;

      (iii) Reinstatement of such Holder's Allowed Other Secured Claim; or

      (iv) such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

Case 4:25-cv-03497-CTEM Document 1-4 Filed 12/26/25 Page 27 of 64
Case 23-90718 Document 681 Filed in TXSB on 12/01/23 Page 84 of 121
PageID# 328

(c) *Voting*: Class 2 is Unimpaired under the Plan. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3. <u>Class 3 – Other Priority Claims</u>

(a) *Classification*: Class 3 consists of all Other Priority Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Administrative, Priority, Priority Tax Claim, or other Allowed Priority Claim (which, for the avoidance of doubt, may include any Allowed Priority Claim arising under the WARN Act), will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c) *Voting*: Class 3 is Unimpaired under the Plan. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4. <u>Class 4 – Prepetition First Lien Claims</u>

(a) *Classification*: Class 4 consists of all Prepetition First Lien Claims.

*Treatment*: After payment in full in Cash of all Administrative and Priority Claims and Other Priority Claims and funding of the Wind-Down Budget, (unless the applicable Holder agrees to less favorable treatment), the Holders of Prepetition First Lien Claims shall be entitled to their Pro Rata share of the Distributable Proceeds, if any, up to the Allowed amount of such Prepetition First Lien Claims, less the Credit Bid Amount; *provided* that the Prepetition First Lien Deficiency Claims shall be subordinated and junior to all Allowed General Unsecured Claims for purposes of distributions under the Plan; *provided*, *further* that such subordination shall be capped at $10 million distributed to Holders of Allowed General Unsecured Claims under the Plan (which distribution shall include, for the avoidance of doubt, the GUC Trade Settlement Cash Reserve and any Other Assets subsequently monetized pursuant to the terms and conditions of the Creditor Trust), after which the Prepetition Secured Lenders shall receive their Pro Rata share of any distribution to Holders of Class 6B Other General Unsecured Claims on account of such Deficiency Claims (except for any distribution on account of the PIK Notes) and shall constitute Other GUC Claimants on account of such Prepetition First Lien Deficiency Claims.

(b) *Voting*: Class 4 is Impaired under the Plan. Holders of Prepetition First Lien Claims are entitled to vote to accept or reject the Plan.

5. <u>Class 5 – Prepetition Second Lien Claims</u>

(a) *Classification*: Class 5 consists of all Prepetition Second Lien Claims.

(b) *Treatment*: After payment in full in Cash of all Administrative and Priority Claims, Other Priority Claims, and Prepetition First Lien Claims, and funding of the Wind-Down Budget (unless the applicable Holder agrees to less favorable treatment), the Holders of Prepetition Second Lien Claims shall be entitled to their Pro Rata share of the Distributable Proceeds,

22

if any, up to the Allowed amount of such Prepetition Second Lien Claims, less the Credit Bid Amount; *provided* that the Prepetition Second Lien Deficiency Claims shall be subordinated and junior to all Allowed General Unsecured Claims for purposes of distributions under the Plan; *provided*, *further* that such subordination shall be capped at $10 million distributed to Holders of Allowed General Unsecured Claims under the Plan (which distribution shall include, for the avoidance of doubt, the GUC Trade Settlement Cash Reserve and including any Other Assets subsequently monetized pursuant to the terms and conditions of the Creditor Trust), after which the Prepetition Secured Lenders shall receive their Pro Rata share of any distribution to Holders of Class 6B Other General Unsecured Claims on account of such Deficiency Claims (except for any distribution on account of the PIK Notes) and shall constitute Other GUC Claimants on account of such Deficiency Claims.

(c)     *Voting*:  Class 5 is Impaired under the Plan.  Holders of Prepetition Second Lien Claims are entitled to vote to accept or reject the Plan.

6.     Class 6A – Continuing Trade Claims

(a)     *Classification:*  Class 6A consists of all Continuing Trade Claims.

(b)     *Treatment:*  Except to the extent that a Holder of a Continuing Trade Claim agrees to less favorable treatment, on the Effective Date, in exchange for such Allowed Continuing Trade Claim, each Holder of an Allowed Continuing Trade Claim who has not otherwise been paid in full under the Critical Vendor Order shall be paid in Cash its Pro Rata share of (i) cash in the amount of $3.25 million; (ii) the unused Wind-Down Budget; and (iii) Unused Critical Vendor Cash.

(c)     *Voting:*  Class 6A is Impaired under the Plan.  Holders of Allowed Continuing Trade Claims are entitled to vote to accept or reject the Plan.

7.     Class 6B – Other General Unsecured Claims

(a)     *Classification:*  Class 6B consists of all Other General Unsecured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Other General Unsecured Claim agrees to less favorable treatment (including but not limited to the subordination of Deficiency Claims as set forth in herein), in exchange for such Other General Unsecured Claim, each Holder of an Allowed Other General Unsecured Claim shall receive its Pro Rata share of the beneficial interest in the Creditor Trust and as beneficiary of the Creditor Trust shall receive, on a distribution date, their Pro Rata share of net Cash derived from the Creditor Trust Assets available for distribution on each such distribution date as provided under the Plan and Creditor Trust Agreement, including:

(i)     A portion of the GUC Litigation Claims Settlement Cash (as allocated by the Committee in its sole discretion and to be disclosed in the Plan Supplement);

(ii)     the PIK Notes;

(iii)     proceeds of Other Assets; and

(iv)     the Excess Distributable Cash, if any (collectively, the "Other General Unsecured Claim Proceeds");

*provided* that if Class 6C (Litigation Claims) is an accepting Class, the Committee, in its sole discretion, may allocate to Holders of such claims a portion of the GUC Litigation

23

Claims Settlement Cash to be disclosed in the Plan Supplement that would otherwise have been distributed to Class 6B (Other General Unsecured Claims).

    (c)    *Voting:* Class 6B is Impaired under the Plan. Holders of Allowed Other General Unsecured Claims are entitled to vote to accept or reject the Plan.

8.    <u>Class 6C – Litigation Claims</u>

    (a)    *Classification:* Class 6C consists of all Litigation Claims.

    (b)    *Treatment:* If Class 6C is an accepting Class, except to the extent that a Holder of a Litigation Claim agrees to less favorable treatment, in exchange for such Litigation Claim, each Holder of a Litigation Claim shall receive its Pro Rata share of a portion of the GUC Litigation Claims Settlement Cash (as allocated by the Committee in its sole discretion and to be disclosed in the Plan Supplement); *provided* that, if the Class of Litigation Claims is not an accepting Class, then such Holders of Litigation Claims shall receive their Pro Rata share of the Other General Unsecured Claim Proceeds on a *pari passu* basis as Holders of Other General Unsecured Claims.

    (c)    *Voting:* Class 6C is Impaired under the Plan. Holders of Allowed Litigation Claims are entitled to vote to accept or reject the Plan.

9.    <u>Class 6D – CFPB Claim</u>

    (a)    *Classification:* Class 6D consists of the CFPB Claim.

    (b)    *Treatment:* Except to the extent that the Holder of the CFPB Claim agrees to less favorable treatment, in exchange for such CFPB Claim, the Holder of the CFPB Claim shall receive $50,000 of the GUC Litigation Claims Settlement Cash.

    (c)    *Voting:* Class 6D is Impaired under the Plan. The Holder of the Allowed CFPB Claim is entitled to vote to accept or reject the Plan.

10.    <u>Class 7 – Intercompany Claims</u>

    (a)    *Classification*: Class 7 consists of all Intercompany Claims.

    (b)    *Treatment*: Allowed Intercompany Claims, to the extent not assumed pursuant to the terms of the Sale Orders, shall, at the election of the applicable Debtor, be (a) Reinstated, (b) converted to equity, (c) otherwise set off, settled, distributed, contributed, cancelled, or released, or (d) otherwise addressed at the option of the Wind-Down Debtor without any distribution; *provided, however*, such election shall not adversely affect the treatment provided to Classes 6A, 6B, 6C, and 6D.

    (c)    *Voting*: Holders of Intercompany Claims are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

11.    <u>Class 8 – Intercompany Interests</u>

    (a)    *Classification:* Class 8 consists of all Intercompany Interests.

(b)    *Treatment*: Allowed Intercompany Interests shall, at the election of the applicable Debtor, be (a) Reinstated or (b) set off, settled, addressed, distributed, contributed, merged, cancelled, or released, or (c) otherwise addressed at the option of the Wind-Down Debtor without any distribution; *provided, however*, such election shall not adversely affect the treatment provided to Classes 6A, 6B, 6C, and 6D.

(c)    *Voting*: Holders of Intercompany Interests are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

12.    Class 9 – Interests in PGX

(a)    *Classification:* Class 9 consists of all Interests in PGX.

(b)    *Treatment*: Interests in PGX shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Interests in PGX will not receive any distribution on account of such Interests.

(c)    *Voting:* Class 9 is Impaired under the Plan. Holders of Interests in PGX are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

13.    Class 10 – Interests in Lexington Law Firm

(a)    *Classification:* Class 10 consists of all Interests in Lexington Law Firm.

(b)    *Treatment*: Interests in Lexington Law Firm shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Interests in Lexington Law Firm will not receive any distribution on account of such Interests.

(c)    *Voting:* Class 10 is Impaired under the Plan. Holders of Interests in Lexington Law Firm are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

14.    Class 11 – Section 510(b) Claims

(a)    *Classification:* Class 11 consists of all Section 510(b) Claims.

(b)    *Allowance:* Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Claim exists, may only become Allowed by Final Order of the Bankruptcy Court. The Debtors are not aware of any valid Section 510(b) Claim and believe that no such Section 510(b) Claim exists.

(c)    *Treatment*: Allowed Section 510(b) Claims, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.

(d)    *Voting:* Class 11 is Impaired under the Plan. Holders (if any) of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, such Holders (if any) are not entitled to vote to accept or reject the Plan.

25

C.      *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Wind-Down Debtor's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired. Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B herein. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.      *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtor reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.      *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

G.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Purchasers, and in exchange for the Debtors' and Wind-Down Debtor's agreement under the Plan to provide management services to certain other Debtors and Wind-Down Debtor, to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors and Wind-Down Debtor to the Holders of certain Allowed Claims.

H.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      *General Settlement of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, to the extent provided by the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan, including the terms of the Global Settlement and incorporates the terms of the Global Settlement Term Sheet.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies including the Global Settlement, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.      *Restructuring Transactions*

On or before the Effective Date, the applicable Debtors or the Wind-Down Debtor shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, consummation of the Sale Transaction pursuant to the Asset Purchase Agreements, the issuance of all certificates and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions (collectively, the "Restructuring Transactions").  The actions to implement the Restructuring Transactions may include:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and Asset Purchase Agreements and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4)  all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.  The Debtors and the Wind-Down Debtor, as applicable, shall be authorized to implement the Plan and/or the Restructuring Transactions in the manner most tax efficient to the Purchasers, the DIP Agent and the Debtors, as determined by the Debtors in their business judgment and with the consent of the DIP Agent and the Purchasers, given the totality of the circumstances, and with the consent of the Committee insofar as such implementation may impact or affect the Wind-Down Budget.  The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

C.      *Sources of Consideration for Plan Distributions*

The Debtors and Wind-Down Debtor, as applicable, shall fund the distributions and obligations under the Plan with Available Cash from the Wind-Down Budget held in the Wind-Down Debtor Account, as applicable, on the Effective Date.  Sources to fund the distributions and obligations under the Plan include cash from the Creditor Trust in the amount of $100,000, from the GUC Trade Settlement Cash in the amount of $3.25 million, from the GUC Litigation Claims Settlement Cash in the amount of $750,000 (of which $50,000 will be paid to the Holder of the Allowed CFPB Claim on account of the CFPB Claim as set forth in Article III), and from the PIK Notes to be issued by the Progrexion Purchaser.  As indicated in Article II, pursuant to the Sale Orders, the DIP Claims have been satisfied in full in connection with the Sale Transaction.

*D.      Wind-Down Debtor*

The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtor solely for the purposes of (l) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtor, if any, (2) resolving any Disputed Claims, (3) paying or otherwise satisfying Allowed Claims, (4) filing appropriate tax returns, and (5) administering the Plan in an efficacious manner.  The Wind-Down Debtor shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to File motions or substitutions of parties or counsel in each such matter; *provided, however*, that the Creditor Trustee shall have the rights, powers and authority as provided in Article IV. G herein and in the Creditor Trust Agreement, and shall be substituted as the party-in-lieu of the Debtors in all matters as provided in Article IV.G herein and in the Creditor Trust Agreement.

On the Effective Date, the Wind-Down Debtor Assets shall vest in the Wind-Down Debtor for the primary purpose of liquidating the Wind-Down Debtor Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business.  The Wind-Down Debtor will, in an expeditious but orderly manner, liquidate and convert to Cash the Wind-Down Debtor Assets, make timely distributions pursuant to the Plan and Confirmation Order, and not unduly prolong its duration.  Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan.  The Wind-Down Debtor shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

*E.      Liquidating Trust*

Notwithstanding anything to the contrary herein, the Plan Administrator, in his or her discretion, may transfer all or any portion of the assets of the Wind-Down Debtor to the Liquidating Trust, which shall be a "liquidating trust" as that term is used under section 301.7701-4(d) of the Treasury Regulations.  For the avoidance of doubt, in the event of a Permitted Transfer, the provisions set forth in Article IV.Q herein shall continue to govern all matters associated with the prosecution, settlement, or collection upon any Retained Causes of Action transferred to the Liquidating Trust.  The Liquidating Trust shall be established for the primary purpose of liquidating the Liquidating Trust's assets, reconciling claims asserted against the Wind-Down Debtor, and distributing the proceeds thereof in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidating Trust.  Upon the transfer of the Wind-Down Debtor's assets to the Liquidating Trust, the Wind-Down Debtor will have no reversionary or further interest in or with respect to the assets of the Liquidating Trust.  To the extent beneficial interests in the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests.  Prior to any Permitted Transfer, the Plan Administrator may designate trustee(s) for the Liquidating Trust for the purposes of administering the Liquidating Trust.  The reasonable costs and expenses of the trustee(s) shall be paid from the Liquidating Trust.

1.      Liquidating Trust Treatment

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Debtors expect to treat the Liquidating Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code, and the trustee of any Liquidating Trust will take a position on the Liquidating Trust's tax return accordingly.  For U.S. federal income tax purposes, the transfer of assets to the Liquidating Trust will be deemed to occur as (a) a first-step transfer of the Liquidating Trust Assets to the Holders of the applicable Claims, and (b) a second-step transfer by such Holders to the Liquidating Trust.

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust.  If the IRS were to successfully challenge the classification of the Liquidating Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust and the Liquidating Trust beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax).  For example, the IRS could

28

characterize the Liquidating Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the trustee(s) of the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the trustee(s) of the Liquidating Trust, and the holders of Claims receiving interests in the Liquidating Trust shall take consistent positions with respect to the valuation of the Liquidating Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the Liquidating Trust beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trust shall in no event be dissolved later than five (5) years from the creation of such Liquidating Trust unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (or within the six (6) month period prior to the end of an extension period), determines that a fixed period extension (not to exceed five (5) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the trustee(s) of the Liquidating Trust that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

The Liquidating Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidating Trust Assets (e.g., income, gain, loss, deduction and credit). Each Liquidating Trust beneficiary holding a beneficial interest in the Liquidating Trust will receive a copy of the information returns and must report on its federal income tax return its share of all such items. The information provided by the Liquidating Trust will pertain to Liquidating Trust beneficiaries who receive their interests in the Liquidating Trust in connection with the Plan.

2.  Disputed Ownership Fund Treatment

With respect to any of the assets of the Liquidating Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust, the Debtors intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

F.  *Plan Administrator*

On the Confirmation Date, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors shall be deemed to have been terminated and such persons shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed by each Debtor as the sole director and the sole officer of such Wind-Down Debtor and shall succeed to the powers of such Debtor's directors

29

and officers. The Plan Administrator shall be the sole representative of, and shall act for each Wind-Down Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same), except as applicable to the Creditor Trustee as provided in G herein and in the Creditor Trust Agreement  For the avoidance of doubt, the foregoing shall not limit the authority of each Wind-Down Debtor or the Plan Administrator, as applicable, to continue the employment of any former director or officer.

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtor, upon the monthly submission of statements to the Plan Administrator and in accordance with the Wind-Down Budget.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

G.      Creditor Trustee

The Committee shall have the right in its sole discretion, but not the obligation, to appoint the Creditor Trustee at any time prior to the Plan Supplement Filing Date.  If so appointed, the Creditor Trust will be established on the Effective Date and governed by the terms of the Creditor Trust Agreement, and the cash from the Debtors' cash on hand in the amount of $100,000, Excess Distributable Cash, and the PIK Notes shall be transferred, and the Other Assets and all rights to pursue the liquidation and/or monetization of the Other Assets (including collecting amounts due under or realizing upon the PIK Notes), shall be deemed transferred, to the Creditor Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests without any further action of any of the Debtors, the Plan Administrator on behalf of the Wind-Down Debtor, the Committee, the Creditor Trustee, or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors or the Wind-Down Debtor.  The Creditor Trustee's duties, powers, responsibilities, and compensation will be established by the Creditor Trust Agreement.  Pursuant to Bankruptcy Code section 1123(b)(3), the Creditor Trustee shall be deemed the appointed representative to liquidate and/or monetize the Other Assets, collect amounts due under or realize upon the PIK Notes, and effectuate all distributions (as detailed in the Creditor Trust Agreement) to Holders of Allowed Class 6B Other General Unsecured Claims, and the Creditor Trustee shall be granted standing, authority, power and right to assert, prosecute and/or settle or take any other actions necessary to effectuate those duties and all other duties as detailed in the Creditor Trust Agreement based upon its powers as a bankruptcy appointed representative of the Debtors' Estates with the same or similar abilities possessed by bankruptcy or insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, creditors' committees, or similar officials or entities.  For the avoidance of doubt, the Creditor Trustee shall not effectuate any distributions to, nor shall any distributions of the Creditor Trust Assets be made to Holders of Allowed Class 6A Continuing Trade Claims, Class 6C Litigation Claims, or Class 6D CFPB Claims on account of such Claims.

H.      Exculpation, Indemnification, Insurance, and Liability Limitation

The Plan Administrator, the Creditor Trustee, and all professionals retained by the Plan Administrator and the Creditor Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each Wind-Down Debtor.  The Plan Administrator and the Creditor Trustee may each obtain, at the expense of the Wind-Down Debtor, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtor.  The Plan Administrator and the Creditor Trustee may rely upon written information previously generated by the Debtors.

I.      Tax Returns

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and the Wind-Down Debtor, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

*J.      Dissolution of the Wind-Down Debtor*

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, each Wind-Down Debtor shall be deemed to be dissolved without any further action by such Wind-Down Debtor, including the filing of any documents with the secretary of state for the state in which each such Wind-Down Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve each Wind-Down Debtor in and withdraw each Wind-Down Debtor from applicable states.

*K.      Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with applications for compensation and objections thereto.  The Wind-Down Debtor shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with (a) applications for payment of any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court; and (b) objections to applications for payment of fees and expenses rendered prior to the Effective Date.

*L.      Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except (i) such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan and (ii) any indemnification obligations set forth in Article V.B hereof) shall be cancelled solely as to the Debtors and their affiliates, and the Wind-Down Debtor shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged.  Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

*M.      Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including:  (1) selection of the Plan Administrator and Creditor Trustee; (2) implementation of the Restructuring Transactions; (3) consummation of the Sale Transaction under the Asset Purchase Agreements; (4) funding of all applicable escrows and accounts; and (5) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtor, and any corporate action required by the Debtors or the Wind-Down Debtor in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtor shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtor. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements and documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the

31

name of and on behalf of the Wind-Down Debtor. The authorizations and approvals contemplated by this Article IV.M shall be effective notwithstanding any requirements under non-bankruptcy law.

*N.      Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator, the DIP Agent, the Prepetition First Lien Agent and the Prepetition Second Lien Agent may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Confirmation Order and the Restructuring Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

*O.      Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Wind-Down Debtor, the Creditor Trust or to any other Person or from the Wind-Down Debtor to the Liquidating Trust or any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Wind-Down Debtor; (2) the Restructuring Transactions; (3) any Sale Transaction; (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

*P.      Director and Officer Liability Insurance; Other Insurance*

On or before the Effective Date, the Debtors shall purchase (to the extent not already purchased) and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement. Reasonable directors and officers insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

Any directors and officers insurance policies shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Wind-Down Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under any such policies shall remain available to all individuals within the definition of "Insured" in any such policies.

In addition, on and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any directors and officers insurance policy in effect or purchased as of the Effective Date for the full term of such policy regardless of whether

32

such officers, directors, agents, and/or employees remain in such positions on or after the Effective Date, in each case, to the extent set forth in such policies.

### Q. Causes of Action

Pursuant to the Sale Transaction Documentation, the Debtors assigned and transferred to the Purchasers all of the Transferred Causes of Action pursuant to the Sale Transaction Documentation in connection with the Sale Transactions and in accordance with the Sale Orders. For the avoidance of doubt, the Debtors or the Plan Administrator, as applicable, will retain the right to enforce the terms of the Sale Transaction Documentation. Retained Causes of Action shall initially remain with the Debtors and shall immediately vest with the Wind-Down Debtor as of the Effective Date.

### R. Section 1145 Exemption

Pursuant to section 1145 of the Bankruptcy Code and, to the extent that section 1145 of the Bankruptcy Code is inapplicable, section 4(a)(2) of the Securities Act, the issuance of any Interests pursuant to the Plan is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable United States, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security. As long as the exemption to registration under section 1145 of the Bankruptcy Code is applicable, Interests issued pursuant to the Plan are not "restricted securities" (as defined in rule 144(a)(3) under the Securities Act) and are freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Wind-Down Debtor (as defined in rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

### S. Global Settlement

The Plan implements the Global Settlement and incorporates the terms of the Global Settlement Term Sheet by reference as though fully stated herein. The Global Settlement is a compromise and settlement of numerous issues and disputes between and among the Debtors, the Committee, the DIP Lenders, and the Prepetition First and Second Lien Lenders, designed to achieve a reasonable and effective resolution of the Chapter 11 Cases. Except as otherwise expressly set forth herein, the Global Settlement constitutes a settlement of all potential issues and Claims between and among the Debtors, the Committee, the DIP Lenders, and the Prepetition First and Second Lien Lenders. The Global Settlement shall be effectuated in accordance with the following terms. Continuing Trade Claims, Litigation Claims, and Other General Unsecured Claims shall receive the treatment set forth in Article III herein. The Debtors shall establish the Creditor Trust which, for the avoidance of doubt, shall be funded solely with cash from the Debtors' cash on hand in the amount of $100,000 and which shall have the right to pursue the monetization of the Other Assets (including collecting amounts due under or realizing upon, the PIK Notes). The Creditor Trust shall also hold the PIK Notes for beneficial distribution in accordance with this Article IV.S of the Plan. The identity of the Creditor Trustee and the terms of the governing agreement of the Creditor Trust shall be determined by the Committee and provided in the Plan Supplement.

### T. Provisions Regarding the United States

As to the United States, nothing in the Plan, this Confirmation Order, any Plan Supplement, or any implementing Plan documents, notwithstanding any provision to the contrary contained therein, shall: (a) enjoin or affect any Governmental Unit's setoff rights under federal law, as recognized in section 553 of the Bankruptcy Code, and/or recoupment rights, and such rights shall be preserved and are unaffected (provided that the Debtors' defenses to any such rights of setoff and/or recoupment are expressly reserved); (b) be construed as a compromise or settlement of any liability, claim, cause of action, or interest of the United States, except as explicitly provided for in respect of the CFPB Claim and in accordance with the Stipulated Final Judgment and Order; or (c) be deemed a waiver or release of any liability, claim, cause of action, or interest of the United States, except as otherwise provided in respect of the CFPB Claim and in accordance with the Stipulated Final Judgment and Order.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

*A.      Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is the Asset Purchase Agreements; or (6) is to be assumed by the Debtors and assigned to the Purchasers in connection with the Sale Transaction and pursuant to the Sale Transaction Documents.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Orders to assume and assign Executory Contracts and Unexpired Leases to the Purchasers pursuant to the Asset Purchase Agreements. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtor. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Wind-Down Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

Notwithstanding anything to the contrary in the Plan or the Sale Transaction Documents, the Debtors, the Wind-Down Debtor, the Purchasers and the Plan Administrator, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in this Article V of the Plan and in the Plan Supplement. The Debtors or the Wind-Down Debtor, as applicable, shall provide notice of any amendments to the Rejected Executory Contracts and Unexpired Leases Schedule or the Assumed Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby. For the avoidance of doubt, this Article V relates to Executory Contracts or Unexpired Leases other than such agreements assumed, assumed and assigned, or rejected in accordance with the terms of the Sale Orders.

*B.      Indemnification Obligations.*

Subject to the occurrence of the Effective Date, to the fullest extent permitted by applicable law, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action under any indemnification provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Wind-Down Debtor or the Liquidating Trust, as applicable, which shall be deemed to have assumed the obligation, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date.

*C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of service of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving

34

such rejection, (2) the effective date of such rejection, or (3) the Effective Date. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Wind-Down Debtor and the Holder of such Claim.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an assumed Executory Contract or Unexpired Lease, as reflected on the Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Wind-Down Debtor or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption or assumption and assignment and proposed amounts of Cure Claims to the applicable third parties. **Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment or related cure amount must be Filed, served, and <u>actually</u> <u>received</u> by the Debtors at least seven days before the Confirmation Hearing.**  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment or cure amount will be deemed to have assented to such assumption or assumption and assignment and cure amount.  Notwithstanding anything herein to the contrary, in the event that any Executory Contract or Unexpired Lease is removed from the Rejected Executory Contracts and Unexpired Leases Schedule after such 14-day deadline, a Cure Notice of proposed assumption or assumption and assignment and proposed amounts of Cure Claims with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider whether such Executory Contract or Unexpired Lease can be assumed or assumed and assigned.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Wind-Down Debtor, as applicable, may add such Executory Contract or Unexpired Lease to the Rejected Executory Contracts and Unexpired Leases Schedule, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary (solely to the extent agreed between the Debtors and the counterparty to an applicable Executory Contract or Unexpired Lease), including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtor, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Wind-Down Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

*F.*        *Insurance Policies*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Wind-Down Debtor. For the avoidance of doubt, this Article V.F does not apply to insurance policies or any agreements, documents, or instruments relating thereto that were transferred to the Purchasers in the Sale Transaction.

*G.*        *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

*H.*        *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contracts and Unexpired Leases Schedule, the Assumed Executory Contracts and Unexpired Leases Schedule, or any other exhibit, schedule or annex, nor anything contained in the Plan or Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Wind-Down Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtor, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

*I.*        *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

*A.*        *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan or the Confirmation Order, on the Effective Date (or if a Claim is not an Allowed Claim or on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims (as applicable) in the applicable Class.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that

36

there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Wind-Down Debtor.

C.      *Rights and Powers of Disbursing Agent*

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and the Confirmation Order; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities (in accordance with the Wind-Down Budget); and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or the Confirmation Order, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof; *provided, however,* that the Debtors or the Wind-Down Debtor, as applicable, shall maintain the Claims Register.

2.      Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Wind-Down Debtor in accordance with the Wind-Down Budget.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim, other than one based on a publicly traded Security is transferred twenty (20) or fewer days before the Distribution Record Date, distributions shall be made to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Delivery of Distributions

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.  Distributions to Holders of Allowed Prepetition Loan Claims shall be consistent with the DIP Order and the Prepetition Loan Documents.

3. <u>Minimum Distributions</u>

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $50 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VII from asserting that Claim against the Debtors or their respective property.

4. <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any Holder of an Allowed Claim (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date of the initial attempted distribution. After such date, all unclaimed property or interests in property shall revert to the Wind-Down Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property in property shall be discharged and forever barred.

E. *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors and the Wind-Down Debtor, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Wind-Down Debtor, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

F. *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of the Claims, including any Claims for accrued but unpaid interest.

G. *No Postpetition or Default Interest on Claims*

Unless otherwise specifically provided for in the Plan, the Confirmation Order or the DIP Order, or required by applicable bankruptcy and non-bankruptcy law, (a) postpetition and/or default interest shall not accrue or be paid on any Claims, and (b) no Holder of a Claim shall be entitled to (i) interest accruing on or after the Petition Date on any such Claim or (ii) interest at the contract default rate, as applicable.

H. *Setoffs and Recoupment*

Except as expressly provided in this Plan and the DIP Order, the Wind-Down Debtor may, pursuant to section 553 of the Bankruptcy Code, setoff and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Wind-Down Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Wind-Down Debtor and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Wind-Down Debtor or its successor of any and all claims, rights, and Causes of Action that the Wind-Down Debtor or its successor may possess against the applicable

Holder.  Notwithstanding anything to the contrary herein, in no event shall any Holder of a Claim be entitled to setoff any such Claim against any Purchaser following consummation of the Sale Transaction except as provided for in the Asset Purchase Agreements.

I.      *No Double Payment of Claims.*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims.  No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

J.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

The Debtors or the Wind-Down Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Wind-Down Debtor, provided that the Debtors or the Wind-Down Debtor, as applicable shall provide notice of such reduction to the Holder of such Claim.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Wind-Down Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor or the Wind-Down Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or the Wind-Down Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers satisfies in full or in part a Claim, then immediately upon such insurers' satisfaction of such Claim, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further action, order, or approval of the Bankruptcy Court, provided that notice of such satisfaction is served by the Debtors or the Wind-Down Debtor, as applicable on the Holder of such Claim.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.
PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS**

*A.        Allowance of Claims*

After the Effective Date, the Wind-Down Debtor or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date except as otherwise provided herein with regard to the Creditor Trust. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

*B.        Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan or the Confirmation Order, after the Effective Date, the Plan Administrator shall have the primary authority: (1) to File, withdraw, or litigate judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Wind-Down Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Retained Causes of Action pursuant to Article IV.Q of the Plan. For the further avoidance of doubt, prior to the Effective Date any Litigation Settlement or other settlement of any Litigation Claim shall be subject to the consent of the Committee (which consent shall not be unreasonably withheld), and on and after the Effective Date such consent rights shall belong to the Creditor Trustee.

The Debtors up to the Effective Date, and the Wind-Down Debtor on and after the Effective Date, shall be responsible and obligated to maintain the Claims Register, to administer and adjust the Claims Register in regard to allowance of Claims, and to coordinate with the Creditor Trustee to facilitate any distributions to be made by the Creditor Trustee pursuant to Article IV.G herein and the Creditor Trust Agreement. The Debtors or the Wind-Down Debtor, as applicable, may with the consent of the Committee or the Creditor Trustee (which consent shall not be unreasonably withheld), as applicable, maintain the retention of the Claims and Noticing Agent and develop a budget for compensation of the Claims and Noticing Agent following the Effective Date to be incorporated with the Wind-Down Budget.

*C.        Estimation of Claims*

Before, on, or after the Effective Date, the Debtors, the Wind-Down Debtor, or the Plan Administrator, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate the amount of any Claim pursuant to applicable law, including, without limitation pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Interest, such estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Wind-Down Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims or Interests Without Objection*

Any Claim or Interest that has been paid or satisfied may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Wind-Down Debtor after notice to the Holder of such Claim (or such Holder's known counsel), but without any further notice to or action, order or approval of the Bankruptcy Court; *provided*, that the Wind-Down Debtor shall file a notice of satisfaction or other pleading evidencing such satisfactions and serve the same on the Holders of such Claims, or seek an order of the Bankruptcy Court with respect to the same, upon notice to the Holders of such Claim or Interest.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (1) one-hundred eighty (180) days after the Effective Date and (2) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court, subject to a notice and objection period, for objecting to such Claims. For the avoidance of doubt, Administrative Claims are subject to the Administrative Claims Objection Bar Date and the period of limitation set forth herein shall not apply to Administrative Claims.

F.      *Disallowance of Claims or Interests*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind-Down Debtor. All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan after notice to the Holder of such Claim, but without any further notice to or action, order, or approval of the Bankruptcy Court.

G.      *Amendments to Proofs of Claims or Interests*

On or after the applicable bar date, a Proof of Claim or Interest may not be Filed or amended without the prior written authorization of the Bankruptcy Court or the applicable Debtor or Wind-Down Debtor, as applicable. Absent such authorization, any new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

H.      *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan or the Confirmation Order, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan and the Confirmation Order. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A.*      ***Release of Liens***

Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or Confirmation Order, immediately following the making of all distributions to be made to an applicable Holder pursuant to the Plan and, in the case of a Secured Claim, including, for the avoidance of doubt, any Prepetition Loan Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.2 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtor to evidence the release of such Lien and/or security interest, including the execution, delivery, and Filing or recording of such releases. The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

If any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan or the Confirmation Order, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Wind-Down Debtor that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtor shall be entitled to make any such filings or recordings on such Holder's behalf.

*B.*      ***Releases by the Debtors***

Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, the Wind-Down Debtor, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtor, or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, the Wind-Down Debtor, or other Entity, or that any Holder of any Claim against or Interest in a Debtor, the Wind-Down Debtor, or other Entity could have asserted on behalf of the Debtors or the Wind-Down Debtor, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Wind Down Debtor (including the Debtors' and the Wind-Down Debtor's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Wind-Down Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtor, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors or the Wind-Down Debtor), intercompany transactions between or among a Debtor, the Wind-Down Debtor, or an affiliate of a Debtor and another Debtor, the Wind-Down Debtor, or

42

affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction, the DIP Credit Agreement, the Prepetition First Lien Credit Agreement, the Prepetition Second Lien Credit Agreement, any other Definitive Document or any Restructuring Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction, any other Definitive Document, any of the Restructuring Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; or (2) any matters retained by the Debtors and the Wind-Down Debtor pursuant to the Schedule of Retained Causes of Action.

*C.*      ***Releases by the Releasing Parties.***

Except as otherwise expressly set forth in this Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtor, or the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors or the Wind-Down Debtor (including the Debtors' and the Wind-Down Debtor's capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Wind-Down Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtor, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors or the Wind-Down Debtor), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction, the DIP Credit Agreement, the Prepetition First Lien Credit Agreement, the Prepetition Second Lien Credit Agreement any other Definitive Document or any Restructuring Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction, any other Definitive Document, any of the Restructuring Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Restructuring Transactions, or

any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions; or (2) the rights of any Holder of Allowed Claims to receive distributions under the Plan.

D.    *Exculpation*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each Exculpated Party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Sale Transaction, the Plan, the Plan Supplement, any other Definitive Document, or any Restructuring Transaction, or any contract, instrument, release or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction, any other Definitive Document, any of the Restructuring Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Sale Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

E.    *Injunction*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors and the Wind-Down Debtor, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Wind-Down Debtor (but solely to the extent such action is brought against the Debtors or the Wind-Down Debtor to directly or indirectly recover upon any property of the Estates, including, without limitation, any such property that vests in the Creditor Trust, as applicable, upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order; (c) creating, perfecting or enforcing any encumbrance of any kind; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.  All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims or Causes of Action that (x) have been released in this Plan (the "Released Claims") or (y) that are subject to exculpation (the "Exculpated Claims"), shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iv) asserting any right of subrogation on account of or in connection with or with respect to the Released

**Claims and Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or (v) or commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Released Claims and Exculpated Claims; *provided*, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.E.**

F.        *Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind-Down Debtor, or another Entity with whom the Wind-Down Debtor has been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

G.        *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

H.        *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX.
### CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

A.        *Conditions Precedent to the Confirmation of the Plan*

It shall be a condition precedent to the Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.     The Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in form and substance reasonably acceptable to the Company Parties, the Required Consenting Lenders, and solely to the limited extent explicitly provided herein, the Committee; and

2.     The Bankruptcy Court shall have entered a Confirmation Order with respect to the Plan in form and substance reasonably acceptable to the Company Parties, the Required Consenting Lenders, and the Committee.

**B.     *Conditions Precedent to the Effective Date***

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.     The Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order) which shall

(a)     authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)     decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)     authorize the Debtors, as applicable or necessary, to the extent not previously authorized by the Sale Orders, to: (i) implement the Restructuring Transactions, including the Sale Transaction; (ii) make all distributions required under the Plan; and (iii) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement;

(d)     authorize the implementation of the Plan in accordance with its terms; and

(e)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax;

2.     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.     the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

4.     the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtors; and

5.     the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated herein, in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors.

**C.     *Waiver of Conditions***

The conditions to Confirmation and to Consummation set forth in Article IX may be waived by the Debtors, subject to the consent of the Committee and the Required Consenting Lenders (in each case, which consent shall not be unreasonably withheld), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

46

*D.*     *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders, or any other Entity in any respect. Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Transaction under the Asset Purchase Agreements or the revocation of the Debtors' authority under the Sale Orders to consummate such Sale Transaction.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.*     *Modification and Amendments*

Except as otherwise specifically provided in the Plan or the Confirmation Order, the Debtors, after consultation with the Committee, reserve the right, with the consent of the Required Consenting Lenders (which consent shall not be unreasonably withheld), to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, if permissible under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, not re-solicit votes on such modified Plan, *provided*, such modification is consistent with the Global Settlement Term Sheet or does not adversely impact the treatment of Classes 6A, 6B, 6C, or 6D. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided*, *however*, that the Debtors or the Wind-Down Debtor, as the case may be, shall not amend or modify the Plan in a manner that adversely affects the treatment of any Class of Claims and/or Interests without resoliciting such Class of Holders of Claims or Interests.

*B.*     *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof, but before entry of the Confirmation Order, are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

*C.*     *Revocation or Withdrawal of Plan*

The Debtors, subject to the consent of the Committee and the Required Consenting Lenders (in each case, which consent shall not be unreasonably withheld), reserve the right to revoke or withdraw the Plan before the Confirmation Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, any Holder, or any other Entity; or (d) modify or alter the terms of the Global Settlement Term Sheet.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to (for the avoidance of doubt, notwithstanding whether such treatment arises under the terms of the Plan or the Sale Orders): (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Wind-Down Debtor amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits or disputes that may arise in connection with the interpretation of the Sale Orders;

10.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

48

13.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.     enter an order or final decree concluding or closing any of the Chapter 11 Cases;

17.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or the Sale Orders, including disputes arising under agreements, documents, or instruments executed in connection therewith;

21.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Restructuring Transactions, whether they occur before, on or after the Effective Date;

22.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

24.     enforce all orders previously entered by the Bankruptcy Court; and

25.     hear any other matter over which the Court has jurisdiction under the Bankruptcy Code.

**ARTICLE XII.**
**MISCELLANEOUS PROVISIONS**

*A.      Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtor, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Wind-Down Debtor, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Statutory Fees*

Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Wind-Down Debtor, the Creditor Trust, or any entity making disbursements on behalf of any the Wind-Down Debtor, or making disbursements on account of an obligation of any Debtor or the Wind-Down Debtor (each, a "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Wind-Down Debtor, on behalf of itself, the Creditor Trust, or any entity making disbursements on behalf of the Wind-Down Debtor, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors, the Wind-Down Debtor, the Creditor Trust (until its wind-down) and the Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

D.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Notices*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing.  Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed to the following:

1.   If to the Debtors, to:

PGX Holdings, Inc.
257 East 200 South, Suite 1200
Salt Lake City, Utah 84111
Attention:        Eric Kamerath
Email address:    ekamerath@ekamlaw.com

-and-

John C. Heath, Attorney At Law PC
P.O. Box 1173
Salt Lake City, Utah 84110
Attention:       John C. Heath
Email address:   jch@johnheathlaw.com

with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:       Joshua A. Sussberg, P.C.
Email address:   joshua.sussberg@kirkland.com

-and-

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attention:       Spencer A. Winters
                 Whitney Fogelberg
                 Alison J. Wirtz
Email address:   spencer.winters@kirkland.com
                 whitney.fogelberg@kirkland.com
                 alison.wirtz@kirkland.com

-and-

Klehr Harrison Harvey Branzburg LLP
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Attention:       Domenic E. Pacitti
                 Michael W. Yurkewicz
Email address:   dpacitti@klehr.com
                 myurkewicz@klehr.com

-and-

Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Attention:       Morton R. Branzburg
Email address:   mbranzburg@klehr.com

2.    If to the Committee, to:

Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Attention:       Eric J. Monzo
                 Brya M. Keilson
                 Jason S. Levin
Email address:   emonzo@morrisjames.com
                 bkeilson@morrisjames.com
                 jlevin@morrisjames.com

-and-

ArentFox Schiff LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Attention:  Andrew I. Silfen
      Beth M. Brownstein
Email address: andrew.silfen@afslaw.com
      beth.brownstein@afslaw.com

-and-

ArentFox Schiff LLP
800 Boylston Street, 32nd Floor
Boston, MA 02199
Attention:  Justin A. Kesselman
Email address: justin.kesselman@afslaw.com

3. <u>If to the Prepetition First Lien Lenders or DIP Lenders, to:</u>

Blue Torch Finance LLC
c/o Blue Torch Capital LP
150 East 58th Street, 39th Floor
New York, New York 10155
Email address: BlueTorchAgency@alterdomus.com

with copies to:

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, New York 10036
Attention:  Roger Schwartz
      Robert Nussbaum
      Michelle Muscara
Email address: rschwartz@kslaw.com
      rnussbaum@kslaw.com
      mmuscara@kslaw.com

-and-

King & Spalding LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Attention:  Geoffrey King
Email address: gking@kslaw.com

-and-

Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Attention:  Robert J. Dehney
      Matthew B. Harvey
      Michael A. Ingrassia

Email address:  rdehney@morrisnichols.com
mharvey@morrisnichols.com
mingrassia@morrisnichols.com

4.  If to the Prepetition Second Lien Lenders, to:

Prospect Capital Corporation
10 East 40th Street, 42nd Floor
New York, New York 10016
Attention:      General Counsel
                Jason Wilson
Email address:  jwilson@prospectcap.com

with copies to:

Proskauer Rose LLP
Eleven Times Square
New York, NY  10036-8299
Attention:      David M. Hillman
Email address:  dhillman@proskauer.com

-and-

Proskauer Rose LLP
2029 Century Park East, Suite 2400
Los Angeles, CA  90067-3010
Attention:      Peter J. Young
Email address:  PYoung@proskauer.com

-and-

Proskauer Rose LLP
70 West Madison, Suite 3800
Chicago, IL  60602-4342
Attention:      Libbie B. Osaben
Email address:  LOsaben@proskauer.com

-and-

Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Attention:      Robert J. Dehney
                Matthew B. Harvey
                Michael A. Ingrassia
Email address:  rdehney@morrisnichols.com
mharvey@morrisnichols.com
mingrassia@morrisnichols.com

5.  If to the United States Trustee, to:

Office of the United States Trustee
for the District of Delaware,
844 King Street, Suite 2207

53

Wilmington, Delaware 19801
Attention:        Jane Leamy
Email address:    Jane.M.Leamy@usdoj.gov

After the Effective Date, the Wind-Down Debtor may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests, *provided* that the Notice of the Effective Date discloses that Entities who wish to continue to receive service of filings must file a renewed request for service under Bankruptcy Rule 2002.

G.       *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.       *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims and Noticing Agent at https://www.kccllc.net/pgx or the Bankruptcy Court's website at http://www.deb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.       *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent, *provided* that, notwithstanding the inclusion of the Asset Purchase Agreements or any documents ancillary thereto in the Plan Supplement, the Sale Transaction contemplated in the Asset Purchase Agreements is severable from the Plan and the Confirmation Order, and the non-Confirmation or non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Transaction contemplated in the Asset Purchase Agreements or the revocation of the Debtors' authority under the Sale Orders to consummate such Sale Transaction.

J.       *Closing of Chapter 11 Cases*

The Wind-Down Debtor shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 or by Local Rule 3002-1, including the motion required by Local Rule 3002-1, and any applicable order necessary to close the Chapter 11 Cases.

K.       *Conflicts*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

PGX Holdings, Inc.

By: /s/ Chad Wallace
Name: Chad Wallace
Title: Chief Executive Officer and President, PGX Holdings, Inc.

55

**Exhibit B**

**Confirmation Order Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| PGX HOLDINGS, INC., *et al.*,[1] | ) | Case No. 23-10718 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) ENTRY OF CONFIRMATION ORDER,
(II) OCCURRENCE OF EFFECTIVE DATE, AND (III) RELATED BAR DATES**

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"),[2] which was attached as Exhibit A to the *Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of PGX Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Confirmation Order").

**PLEASE TAKE FURTHER NOTICE THAT** the Effective Date, as defined in the Plan, occurred on [_____]**, 2023**.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.C of the Plan, unless otherwise wise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Wind-Down Date Debtor and the Holder of such Claim.

**PLEASE TAKE FURTHER NOTICE THAT**, except as otherwise provided by this Confirmation Order, the Plan, or a Final Order of the Bankruptcy Court, the deadline for filing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PGX Holdings, Inc. (2510); Credit Repair UK, Inc. (4798); Credit.com, Inc. (1580); Creditrepair.com Holdings, Inc. (7536); Creditrepair.com, Inc. (7680); eFolks Holdings, Inc. (5213); eFolks, LLC (5256); John C. Heath, Attorney At Law PC (8362); Progrexion ASG, Inc. (5153); Progrexion Holdings, Inc. (7123); Progrexion IP, Inc. (5179); Progrexion Marketing, Inc. (5073); and Progrexion Teleservices, Inc. (5110). The location of the Debtors' service address for purposes of these chapter 11 cases is: 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in Plan.

10787781.v7

requests for payment of Administrative Claims shall be the later of [_____]**, 2024** (the "Administrative Claim Bar Date"), which is the first Business Day that is 30 days after the Effective Date. If a Holder of an Administrative Claim (other than DIP Claims, Professional Fee Claims, or claims subject to section 503(b)(1)(D) of the Bankruptcy Code) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claim Bar Date, such Holder shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtor, or their property without the need for any objection from the Wind-Down Debtor or any notice to or action, order, or approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Plan, the Deadline to file final requests for payment of Professional Fee Claims is [_____]**, 2024** (the "Professional Fee Application Deadline"), which is the first Business Day that is sixty (60) days after the Effective Date. All professionals must file final requests for payment of Professional Fee Claims by no later than the Professional Fee Application Deadline to receive final approval of the fees and expenses incurred in these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan and its provisions are binding on the Debtors, the Wind-Down Debtor, any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, and whether or not such Holder or Entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan, this Confirmation Order, and other documents and materials filed in these Chapter 11 Cases may be obtained at no charge from Kurtzman Carson Consultants LLC, the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent") by (a) visiting the Debtors' restructuring website at https://www.kccllc.net/pgx, (b) writing to: Kurtzman Carson Consultants LLC, Re: PGX Holdings, Inc., et al., 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245, (c) emailing PGXHoldingsInfo@kccllc.com, or (d) calling the Debtors' Notice and Claims Agent at (888) 249-2721 (Domestic) or +1 (310) 751-2604 (International). You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://ecf.deb.uscourts.gov/.

10787781.v7

Dated: [●], 2023
Wilmington, Delaware

/s/

**KLEHR HARRISON HARVEY**
**BRANZBURG LLP**
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
919 North Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:     (302) 426-1189
Facsimile:     (302) 426-9193
Email:         dpacitti@klehr.com
               myurkewicz@klehr.com

- and -

Morton R. Branzburg (*pro hac vice* pending)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:     (215) 569-3007
Facsimile:     (215) 568-6603
Email:         mbranzburg@klehr.com

*Co-Counsel to the Debtors and Debtors in*
*Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Ave
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com

- and -

Spencer Winters (admitted *pro hac vice*)
Whitney C. Fogelberg (admitted *pro hac vice*)
Alison J. Wirtz (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         spencer.winters@kirkland.com
               whitney.fogelberg@kirkland.com
               alison.wirtz@kirkland.com

*Co-Counsel to the Debtors and Debtors in*
*Possession*

3

10787781.v7