**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**PATRICIA SANDERS,**

          **Plaintiff,**

**v.**

                **Civil Action No. 4:25-cv-00149-JKW-DEM**

**OQUIRRH MOUNTAIN LAW**
**GROUP, P.C., d/b/a LEXINGTON**
**LAW,**

          **Defendant.**

**DEFENDANT OQUIRRH MOUNTAIN LAW GROUP, P.C. D/B/A LEXINGTON LAW'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Defendant Oquirrh Mountain Law Group, P.C. d/b/a Lexington Law ("Oquirrh Mountain Law Group"), by and through its undersigned counsel, hereby submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, to Transfer Venue pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1412. For the reasons below, the Court should dismiss this case for failure to state a claim or, in the alternative, transfer this case to the United States District Court for the District of Delaware for referral to the United States Bankruptcy Court for the District of Delaware.

**INTRODUCTION**

Plaintiff Patricia Sanders ("Plaintiff") brings five causes of action against Oquirrh Mountain Law Group, alleging violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679a, *et seq.*, as well as breach of contract, fraud, negligent misrepresentation, and unjust enrichment. These claims all arise out of Plaintiff's interactions with a company doing business as Lexington Law in 2022. Her claims, however, are not properly asserted against Oquirrh Mountain Law Group (the company currently doing business as Lexington Law), and are in direct

contravention of orders entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").   Specifically, Plaintiff is attempting to pursue claims against Oquirrh Mountain Law Group that were released and subjected to an injunction against future action in 2023 in connection with the bankruptcy proceedings of a now-defunct former entity, John C. Heath, Attorney at Law, PC d/b/a Lexington Law Firm (the "Former Lexington Law"). Oquirrh Mountain Law Group purchased the assets of the Former Lexington Law through a bankruptcy-court-authorized sale of the Former Lexington Law's assets which was free and clear of any and all claims that could be asserted against the Former Lexington Law.  Indeed, Oquirrh Mountain Law Group was not even formed until September 14, 2023, and thus did not even exist in 2022 when Plaintiff alleges her claims arose.  The Bankruptcy Court also approved an injunction that expressly enjoined such claims from being brought against Oquirrh Mountain Law Group. Because these claims based on alleged conduct of the Former Lexington Law are released and subject to an injunction precluding their assertion against Oquirrh Mountain Law Group, Plaintiff has failed to state a claim against Oquirrh Mountain Law Group, and the case must be dismissed.

Alternatively, to the extent there is any question regarding the scope, interpretation, and enforcement of the Bankruptcy Court's orders and the approved injunction, the Bankruptcy Court is the proper and most efficient forum to interpret and enforce its orders.  Accordingly, Oquirrh Mountain Law Group respectfully requests, in the alternative to its request for dismissal, that this Court transfer this action to the United States District Court for the District of Delaware for referral to the Bankruptcy Court and enforcement of the Bankruptcy Court's orders.

## BACKGROUND AND PROCEDURAL HISTORY

### A.      The Former Lexington Law's Bankruptcy and Sale of All Assets

On June 4, 2023, the Former Lexington Law and other related entities filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532

(the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware.[1]  *In re PGX Holdings, Inc.*, No. 23-10718 (Bankr. D. Del.).

Thereafter, the Former Lexington Law entered into a proposed purchase agreement called the Lexington Law Stalking Horse Purchase Agreement (the "Sale Agreement") with AcquisitionCo.  **Exhibit 1**, Lexington Law APA, *In re PGX Holdings, Inc.*, No. No. 23-10718, ECF No. 331-3 (Bankr. D. Del. Aug. 4, 2023).  The Sale Agreement provided that the Former Lexington Law would sell all of its operating assets and business to AcquisitionCo free and clear of liens, claims, encumbrances, and other interests, upon approval by the Bankruptcy Court.  *Id.* at p. 16 ¶ 2.1.  On August 4, 2023, the Former Lexington Law filed a motion seeking, among other things, entry of an order authorizing and approving the Sale Agreement.  *See In re PGX Holdings, Inc.*, No. No. 23-10718, ECF No. 331 (Bankr. D. Del. Aug. 4, 2023).

On August 25, 2023, the Bankruptcy Court entered an Order (I) Approving Lexington Law Stalking Horse Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Oridnary Course of Business, (II) Authorizing The Sale of Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief (the "Sale Order").  *In re PGX Holdings, Inc.*, No. No. 23-10718, ECF No. 423 (Bankr. D. Del. Aug. 25, 2023).  In the Sale Order, attached as **Exhibit 2**, the Former Lexington

---

[1] This Court may take judicial notice of the facts and documents in the related bankruptcy proceeding—*In re PGX Holdings, Inc.*, No. 23-10718 (Bankr. D. Del.)—as they are matters of public record.  *See Lipton v. MCI Worldcom, Inc.,* 135 F. Supp. 2d 182, 186 (D.D.C. 2001) (taking judicial notice of documents referred to in the complaint and public documents). "[T]he court may take judicial notice of [public documents] … even if they are not included in, or attached to the complaint." *Lipton*, 135 F. Supp. 2d at 186; *see Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (holding that public documents from courts and administrative agencies are judicially noticeable); *Kungle v. State Farm, Fire & Cas. Co.*, 48 F. Supp. 3d 67, 74 (D.D.C. 2014) (taking judicial notice of records from other court proceedings).

Law's assets transferred to AcquisitionCo and its successor, the "Lexington Law Purchaser," "free and clear of all claims," as defined and used in "the Bankruptcy Code, including section 101(5)." *Id.* at p. 2; *id.* at p. 12 ¶ X; *see* 11 U.S.C. § 101(5) (defining "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . ."). The "Lexington Law Purchaser" was to be the successful bidder through a good-faith bidding procedure defined in the Sale Agreement. *Id.* at p. 7 ¶ L; *id.* at pp. 10-11 ¶¶ T-W. Moreover, the Sale Order expressly states that "neither the Lexington Law Purchaser (nor any of its affiliates, successors, or assigns) shall have any responsibility for (a) any liability or other obligation of the Debtors related to the Transferred Assets or (b) *any Claim against the Debtors or any of their predecessors or affiliates*." *Id.* at p. 29 ¶ 16 (emphasis added). The Sale Order also provided that the Bankruptcy Court "retain[s] exclusive jurisdiction with respect to all matters arising in connection with or related to" the Sale Order approving the Sale Agreement. *Id.* at pp. 39-40 ¶ 43.

The Defendant in this matter, Oquirrh Mountain Law Group, was formed on September 14, 2023. *See* **Exhibit 3**, Utah Business Registration. Oquirrh Mountain Law Group acquired the assets of the Former Lexington Law as the "Lexington Law Purchaser," free and clear of all claims through the sale and approval of the Bankruptcy plan. *See* **Exhibit 4**, Findings of Fact, Conclusions of Law, and Order Approving the Debtor's Disclosure Statement For, and Confirming the Second Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code ("Order Confirming Chapter 11 Plan"), *In re PGX Holdings, Inc.*, No. No. 23-10718, ECF No. 681 (Bankr. D. Del. Dec. 26, 2023), at Ex. A, p. 9 ¶ 100 (identifying Oquirrh Mountain Law Group, P.C. as the "Lexington Law Purchaser"); Ex. 2, Sale Order at pp. 28-29 ¶ 16. The approved Chapter 11 plan also included an injunction mandating

4

that all persons "who have held, hold, or may hold Claims, Interests, or Causes of Action" against the Former Lexington Law "shall be precluded and permanently enjoined on and after the Effective Date, from . . . commencing or continuing in any manner any Claim, action, or other proceeding of any kind" against any of the "Released Parties." Ex. 3, Order Confirming Chapter 11 Plan at Ex. A, p. 44. "Released Parties" is defined in the plan to include the "Lexington Law Purchaser," further defined as Oquirrh Mountain Law Group. *Id.* at Ex. A, p. 13 ¶¶ 150, 155 (defining "Released Party" and "Purchasers" to include the "Lexington Law Purchaser"); *id.* at Ex. A, p. 9 ¶ 100 (identifying Oquirrh Mountain Law Group, P.C. as the "Lexington Law Purchaser"). This injunction was expressly approved by the Bankruptcy Court. *Id.* at p. 20 ¶ 41.

**B.      Plaintiff's Complaint**

On or about November 18, 2025, Plaintiff commenced this action in this Court against Oquirrh Mountain Law Group, P.C. d/b/a Lexington Law, alleging that she retained a credit repair company named Lexington Law that generated false and fabricated monthly credit reports to induce Plaintiff to continue using its services. (ECF No. 1.) On December 5, 2025, Plaintiff filed an Amended Complaint containing the same substantive allegations. (ECF No. 7.) Specifically, Plaintiff alleges that sometime prior to 2022, she retained Lexington Law for credit repair services and, beginning in 2022, she noticed what she contends were false and fabricated monthly credit reports and status updates being provided to her. Compl. ¶¶ 15, 17. She claims these allegedly fabricated reports continued to be provided "through 2022" and that she "terminated her service with Lexington Law around 2022." *Id.* ¶¶ 18, 23. Plaintiff alleges no other allegedly violative conduct from Lexington Law other than these events confined to 2022.

As apparent from her Amended Complaint, Plaintiff's claims arose in 2022 and ended in 2022, and thus pre-date the Bankruptcy, the Sale Order, and Oquirrh Mountain Law Group's formation.

## <u>ARGUMENT</u>

**I.     Plaintiff fails to state a claim against Oquirrh Mountain Law Group and therefore this case must be dismissed with prejudice.**

Plaintiff cannot state a claim against Oquirrh Mountain Law Group based on conduct of the Former Lexington Law that occurred prior to Oquirrh Mountain Law Group's formation, and which resulted in claims that were fully released in the bankruptcy and sale of the Former Lexington Law's assets and subject to an injunction approved by the Bankruptcy Court.

Plaintiff's Amended Complaint makes clear that her claims arose from conduct of a credit repair company named Lexington Law that she alleges occurred in 2022 and ceased in 2022. *See* Compl. ¶¶ 17, 18, 23. Indeed, she alleges that she "terminated her service with Lexington Law around 2022," thus precluding any allegation that her claims arose from conduct after 2022. *Id.* ¶ 23. Although the named Defendant in this case is currently doing business as Lexington Law, this Court can take judicial notice of the records from the Utah Division of Corporations and Commercial Code which establish that Oquirrh Mountain Law Group was not formed until September 14, 2023, after the date Plaintiff's claims arose. *See* Ex. 3.

Furthermore, this Court can determine through review of the record of the Bankruptcy case *In re PGX Holdings, Inc.* No. 23-10718 (Bankr. D. Del.), that the entity formerly doing business as Lexington Law prior to 2023 was a different entity: John C. Heath, Attorney at Law, PC d/b/a Lexington Law Firm. That entity ceased operations in connection with the Bankruptcy, its assets were sold free and clear of all claims through a good-faith bidding procedure approved by the Bankruptcy Court, and the Chapter 11 bankruptcy plan was confirmed by the Bankruptcy Court on December 26, 2023. *See* Exhibit 2, Sale Order, at 28-29 ¶ 16; Exhibit 4, Order Approving Chapter 11 Plan, at p. 30 ¶ 70 (confirming Chapter 11 bankruptcy plan). Under the Bankruptcy Code, the confirmation of a plan discharges the debtor from any claim that arose before the date

6

of such confirmation whether or not a proof of claim is filed and whether or not the holder of such claim has accepted the plan. 11 U.S.C. § 1141(d)(1)(A); *Givens v. Washington Mutual*, No. 5:09-cv-00076, 2012 WL 3133639, at \*2 (W.D. Va. July 31, 2012). Further, the Bankruptcy Court also issued an injunction preventing any claim-holder from bringing any claims arising from pre-bankruptcy conduct of the Former Lexington Law against the Lexington Law Purchaser, Oquirrh Mountain Law Group. *See* Ex. 3, Order Confirming Chapter 11 Plan at Ex. A, p. 44 (describing injunction); *id.* at Ex. A, p. 13 ¶¶ 150, 155 (defining "Released Party" and "Purchasers" to include the "Lexington Law Purchaser"); *id.* at Ex. A, p. 9 ¶ 100 (identifying Oquirrh Mountain Law Group, P.C. as the "Lexington Law Purchaser"); *id.* at p. 20 ¶ 41 (approving injunction).

It is thus clear that any claims Plaintiff may have had against the Former Lexington Law were released as part of the Sale Agreement, were not transferred as part of the sale of the Former Lexington Law's assets, and are subject to the Bankruptcy' Court's injunction order. There is therefore no basis to assert any such claim against Oquirrh Mountain Law Group. Plaintiff has therefore failed to state any claim against Oquirrh Mountain Law Group, and her claims must be dismissed with prejudice. *See Givens*, 2012 WL 3133639, at \*2 (dismissing claims for failure to state a claim where alleged debts were discharged in bankruptcy through confirmation of Chapter 11 plan).

**II.    In the alternative, the Court should transfer this case to the District of Delaware to be referred to the Bankruptcy Court for enforcement of its Orders.**

Alternatively, to the extent there is any question regarding the interpretation or enforcement of the Bankruptcy Court's orders (which there should not be), this Court should transfer the case to the District of Delaware to be referred to the Bankruptcy Court for adjudication of those issues.

Under 28 U.S.C. § 1412, a district court "may transfer a case or proceeding under Title 11 to a district court for another district in the interest of justice or for the convenience of the parties."

Thus, a district court may transfer this case for either the interest of justice or the convenience of the parties. *See In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) ("Section 1412 is worded in the disjunctive allowing a case to be transferred under either the interest of justice rationale or the convenience of parties rationale"). There is also a presumption that "court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation, including those suits which have been filed in other state or federal courts." *Hohl v. Bastain*, 279 B.R. 165, 177–78 (W.D. Pa. 2002); *Quesenberry v. Chrysler Grp. LLC*, No. 12-cv-48, 2012 WL 3109431, at *5 (E.D. Ky. July 31, 2012) (recognizing presumption that the proper venue is the bankruptcy court).

Transfer of this case is appropriate under 28 U.S.C. § 1412 because transfer is in the interest of justice. The "interest of justice" prong of 28 U.S.C. § 1412 is "a broad and flexible standard which must be applied on a case-by-case basis." *Gulf States Exploration Co. v. Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2nd Cir. 1990). The factors considered when deciding whether to transfer a case in the interest of justice include: "(i) the economic administration of the bankruptcy estate; (ii) the presumption in favor of trying cases 'related to' a bankruptcy case in the court in which the bankruptcy is pending; (iii) judicial efficiency; (iv) the ability to receive a fair trial; (v) the state's interest in having local controversies decided within its borders; (vi) enforceability of any judgment rendered; and (vii) the plaintiff's original choice of forum." *Hilton Worldwide, Inc. Glob. Benefits Admin. Comm. v. Caesars Ent. Corp.*, 532 B.R. 259, 274 (E.D. Va. 2015). The most important consideration is whether the transfer would promote the economic and efficient administration of the estate. *Id.*

Here, the interests of justice clearly weigh in favor of transferring Plaintiff's claims. *Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 266 (M.D.N.C. 2001) ("Although the state's interest in

deciding local controversies and the plaintiff's original choice of forum favor retaining venue, these factors are outweighed by considerations of consistency, judicial economy, and economic administration of the bankruptcy estate."). The Bankruptcy Court approved the Sale Agreement, which authorized the sale of the Debtor's assets to Oquirrh Mountain Law Group free and clear of all claims.  In its Sale Order, the Bankruptcy Court expressly held that "the Transferred Assets [were] sold *free and clear of all Claims*, Interests, and Encumbrances" and that "any other creditors . . . who may or do hold Claims . . . [are] *prohibited, forever barred, estopped, and permanently enjoined*, from asserting or pursuing such Claims against Lexington Law Purchaser, its affiliates, successors, assigns, its property or the Transferred Assets."  Exhibit A at ¶¶ 5, 7 (emphases added). The Sale Order further provides that "neither the Lexington Law Purchaser (nor any of its affiliates, successors, or assigns) shall have any responsibility for . . . *any Claims against the Debtors*."  *Id.* at ¶ 16 (emphasis added).

In other words, Oquirrh Mountain Law Group acquired all of the Debtor's operating assets and business free and clear of all claims.  Because Plaintiff's claim arose in 2022 and pre-dates the Sale Order, her claims were against the Former Lexington Law (the Debtor in the Bankruptcy case) and have now been discharged; they are not properly asserted against Oquirrh Mountain Law Group, and the Bankruptcy Court expressly provided that Oquirrh Mountain Law Group did not assume responsibility for such claims.  Indeed, under the plain language of the Sale Order, Plaintiff is prohibited from asserting such claims against Oquirrh Mountain Law Group.

Moreover, the Bankruptcy Court expressly retained jurisdiction to implement, enforce and interpret its Sale Order.  *See* Exhibit A at ¶ 43 (retaining jurisdiction "with respect to *all matters* arising in connection with or related to *this [Sale] Order*" (emphases added)).  Further, the Bankruptcy Court did not limit its retained jurisdiction to the period while the bankruptcy action

9

was pending. *See Goodall v. Chrysler, Inc.*, No. 3:16-cv-03228, 2017 WL 4076093, at \*10 (C.D. Ill. Sept. 14, 2017). And regardless, bankruptcy courts clearly have jurisdiction to interpret and enforce their own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

Accordingly, the Bankruptcy Court is the court with jurisdiction to interpret its Sale Order if any such interpretation is necessary. *Quesenberry*, 2012 WL 3109431, at \*1. Thus, the interests of justice will be best served by having the Bankruptcy Court address the interpretation and enforcement of its own orders, if necessary for the disposition of this case. *Shatzki v. Abrams*, No. 1:09-cv-02046, 2010 WL 148183, at \*3 (E.D. Cal. Jan. 12, 2010) ("Transfer of the action will permit the Bankruptcy Court to resolve issues pertaining to implementation of its prior orders, including the validity of claims alleged by Plaintiff."); *Goodall*, 2017 WL 4076093, at \*10 ("Claims that challenge the limitations of liability pursuant to a Sale Order—such as the Plaintif's—threaten to affect the bankruptcy estate by altering the estate's obligations to the purchaser.").

Finally, "many courts presume that the proper venue for a proceeding related to a bankruptcy case is in the district hearing the bankruptcy case." *Blanton*, 260 B.R. at 267 (collecting cases). This, too, supports transferring venue to the District of Delaware.

Accordingly, to the extent this Court does not dismiss Plaintiff's case for failure to state a claim, Oquirrh Mountain Law Group requests in the alternative that this case be transferred to the District of Delaware, to be referred to the Bankruptcy Court.

## CONCLUSION

For the foregoing reasons, Defendant Oquirrh Mountain Law Group, P.C. d/b/a Lexington Law's Motion to Dismiss or, in the Alternative, to Transfer Venue should be granted, and the action should be dismissed with prejudice.

10

Date: January 30, 2026

**OQUIRRH MOUNTAIN LAW GROUP, P.C.
D/B/A LEXINGTON LAW**

By: */s/ Noah J. DiPasquale*
Noah J. DiPasquale
Virginia State Bar No. 96519
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point
Richmond, VA  23219
Telephone: (804) 697-1266
Facsimile: (804) 697-1339
Email: noah.dipasquale@troutman.com

*Counsel for Oquirrh Mountain Law Group, P.C.
d/b/a Lexington Law*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January 2026, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Noah J. DiPasquale
Noah J. DiPasquale
Virginia State Bar No. 96519
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point
Richmond, VA  23219
Telephone: (804) 697-1266
Facsimile: (804) 697-1339
Email: noah.dipasquale@troutman.com

*Counsel for Oquirrh Mountain Law Group, P.C. d/b/a Lexington Law*

12

324655430