**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

PATRICIA SANDERS,

        **Plaintiff,**

                                  **Civil Action No. 4:25-cv-00149-JKW-DEM**

**v.**

OQUIRRH MOUNTAIN LAW
GROUP, P.C., d/b/a LEXINGTON
LAW,

        **Defendant.**

**DEFENDANT OQUIRRH MOUNTAIN LAW GROUP, P.C. D/B/A LEXINGTON
LAW'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED
<u>COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE</u>**

Defendant Oquirrh Mountain Law Group, P.C. d/b/a Lexington Law ("Oquirrh Mountain

Law Group" or "OMLG"), by and through its undersigned counsel, hereby submits this reply to

Plaintiff Patricia Sanders' ("Plaintiff") Opposition to Oquirrh Mountain Law Group, P.C.'s Motion

to Dismiss (ECF No. 21) (the "Opposition") and in support of its Motion to Dismiss Plaintiff's

Amended Complaint or, in the Alternative, to Transfer Venue (ECF No. 17) (together, with the

memorandum of law in support thereof (ECF No. 18), the "Motion to Dismiss"[1]).

<u>**INTRODUCTION**</u>

In an attempt to salvage her doomed Amended Complaint, Plaintiff's Opposition paints a

picture of an insider scheme through the Chapter 11 bankruptcy proceeding (the "Bankruptcy

Case"[2]) of John C. Heath, Attorney at Law, PC d/b/a Lexington Law Firm (the "Former Lexington

Law") (collectively with its debtor affiliates, the "Debtors") that injured the Plaintiff.  In doing so,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion to Dismiss.

[2] The Bankruptcy Case was jointly administered under the lead case of *In re PGX Holdings, Inc.*, Case Number 23-10718-CTG in the United States Bankruptcy Court for the District of Delaware.

Plaintiff pins the alleged wrongdoing onto OMLG based on a theory of successor liability.  But this theory—which is notably absent from the Plaintiff's Amended Complaint—fails as a matter of law.

The Opposition grossly misstates fundamental principles of bankruptcy law and attempts to circumvent orders of the Bankruptcy Court to try and recover on her claims from OMLG.  Not only did the Bankruptcy Court enter an order (the "Confirmation Order"[3]) confirming the Debtors' Chapter 11 Plan of reorganization (the "Plan"[4]) which enjoined claimants from asserting against OMLG any claims against the Former Lexington Law for pre-Bankruptcy Case conduct, but it also entered an order transferring the Former Lexington Law's assets  (the "Transferred Assets") to OMLG free and clear of any liability (the "Sale")—expressly including claims of successor liability.  Contrary to what the Plaintiff would have this Court believe, the Former Lexington Law provided proper notice of the Sale by publishing notice in the *New York Times*.

Plaintiff's grievance is with the Former Lexington Law.  In fact, Plaintiff alleges *no facts* in the Amended Complaint that would subject OMLG to liability absent the Sale.  But Plaintiff's failure to address her claims against the Former Lexington Law through the Bankruptcy Case precludes her from subjecting OMLG to liability.  In any event, it is the Bankruptcy Court that is the proper forum to determine her issues.  As a matter of law, Plaintiff pleads no claims against OMLG and the Amended Complaint must be dismissed.

---

[3] *See* Findings of Fact, Conclusions of Law, and Order Approving the Debtors' Disclosure Statemnt For, and Confirming the Second Amended Joint Chapter 11 Plan of PGX Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, *In re PGX Holdings, Inc.*, No. 23-10718, ECF No. 681 (Bankr. D. Del. Dec. 26, 2023).

[4] *See* Plan, *In re PGX Holdings, Inc.*, No. 23-10718, ECF No. 681-1 (Bankr. D. Del. Dec. 26, 2023).

## ARGUMENT

**I.    The Amended Complaint Fails to Allege Any Theory of Successor Liability At All.**

As a threshold matter, Plaintiff's Amended Complaint does not allege any theory of successor liability against OMLG, and this omission is fatal to her claims. A plaintiff must plead factual and legal allegations that make the asserted theory of liability plausible on the face of the complaint. A successor liability theory is not presumed and is a distinct basis for imposing liability that must be affirmatively alleged and supported by well-pleaded facts. *Leonard v. Bed, Bath & Beyond, Inc.*, No. 5:15-cv-00284, 2016 WL 158587, at *3 (E.D.N.C. Jan. 8, 2016) ("[I]n order to bring a claim against a corporation based on the conduct of its predecessor, a plaintiff must allege at least one basis for successor liability."); *68th St. Site Work Grp. v. Airgas, Inc.*, No. 1:20-cv-3385, 2021 WL 4255030, at *9 (D. Md. Sept. 16, 2021) ("Cases considering successor liability claims under a motion to dismiss standard have generally required (1) the plaintiff to identify which of the four exceptions it is invoking for successor liability and (2) facts supporting the invocation of the chosen exception."). Plaintiff's Amended Complaint does not set forth any such theory or supporting facts.

Plaintiff cannot cure this defect through briefing. "A plaintiff is 'bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.'" *Blissful Enters., Inc. v. Cincinnati Ins. Co.*, 421 F. Supp. 3d 193, 198 (D. Md. 2019) (citation omitted), *aff'd*, No. 19-2217, 2022 WL 6671618 (4th Cir. Oct. 11, 2022). Courts in the Fourth Circuit routinely refuse to consider new theories or factual predicates raised for the first time in an opposition to a motion to dismiss, precisely because such arguments circumvent the pleading requirements of the Federal Rules of Civil Procedure and deprive defendants of fair notice. *Id.* 198-99; *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints

through briefing or oral advocacy."); *Kerpen v. Metro. Washington Airports Auth.*, 260 F. Supp. 3d 567, 587 (E.D. Va. 2017) (finding the plaintiffs "cannot plead one set of facts in their Amended Complaint and expect the Court to rule on another" where the opposition is more than "a mere tweak of their legal theory"), *aff'd*, 907 F.3d 152 (4th Cir. 2018).

Here, in her Opposition, Plaintiff for the first time contends that she may assert a claim against OMLG based on the conduct of its alleged predecessor—the Former Lexington Law. Opp. at 5-8. She did not, however, plead any such theory in the Amended Complaint. The Amended Complaint does not allege any facts that would bring this case within the "mere continuation" exception—or, for that matter, *any* exception—to the general rule that a corporation is not liable for the acts of another. *Kaiser Found. Health Plan of Mid-Atl. States v. Clary & Moore, P.C.*, 123 F.3d 201, 204 (4th Cir. 1997) (holding that the general rule is that "a company that purchases or otherwise receives the assets of another company is generally not liable for the debts and liabilities of the selling corporation" subject to four exceptions, including "the purchasing corporation is merely a continuation of the selling corporation"),

Because a theory of successor liability must be affirmatively pled in the complaint (and, as Plaintiff concedes, she did not do so here), Plaintiff cannot now salvage her claims against OMLG by asserting an entirely new legal theory in her Opposition brief. *Carolina Power & Light Co. v. 3M Co.*, No. 5:08-cv-460, 2010 WL 11420854, at *16 (E.D.N.C. Mar. 24, 2010) (granting motion to dismiss where plaintiffs "have not alleged facts that would give notice to successor defendants as to the particular theory of successor liability that claimants seek to put forward"); *In re Univ. Directories, LLC*, 629 B.R. 578, 585 (Bankr. M.D.N.C. 2021) (asserting a standalone successor liability claim). The Court should disregard Plaintiff's belated successor-liability argument and dismiss the claims against OMLG.

4

II.     **Any Claim Based on Successor Liability Necessarily Fails.**

Even if Plaintiff could procedurally assert a successor liability claim at this stage in the proceeding (she cannot), any such claim fails.  First, the Bankruptcy Court approved the Sale of the Transferred Assets free and clear of any and all claims, liabilities, obligations, and encumbrances.  Accordingly, OMLG took title to the Transferred Assets free and clear of Plaintiff's claims based on the Former Lexington Law's alleged wrongdoing.  Second, OMLG is not a mere continuation of the Former Lexington Law.  Plaintiff's only thread to connect OMLG to any potential liability fails, and accordingly, so must the Amended Complaint.

A. OMLG purchased the Transferred Assets free and clear of any and all claims, including any potential successor liability claims.

A sale free and clear of all claims, liens, and encumbrances—including successor liability claims—is not a novel concept in bankruptcy.  Such free and clear sales are intended to have a sweeping scope to maximize value of bankruptcy estate assets and therefore capture claims based on successor liability.  *See United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573, 580 (4th Cir. 1996) (citing H.R. Rep. No. 95-595, 95th Cong., 2d Sess. 309 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266); *WQB Ptnr. v. Virginia Dep't of Medical Assistance Servs. (In re WBQ Ptnr.)*, 189 B.R. 97, 109 (Bankr. E.D. Va. 1995) ("'free-and-clear language' is designed to avoid" injury to debtor's creditors and estate).

Indeed, "[t]he underlying principle of § 363(f) is to permit sales free and clear of successor liability and therefore this section is frequently used by debtors needing to sell ongoing business before the often lengthy bankruptcy process has been contemplated."  *Bes Enters. v. Natanzon*, Case No. RDB 06-870, 2006 WL 3498419, at *4 (D. Md. Dec. 4, 2006); *see Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 155 (2d Cir. 2016) ("Sister courts have held that §

5

365(f) may be used to bar a variety of successor liability claims that relate to ownership of property . . . ."); *In re RunItOneTime LLC*, Case No. 25-90191, 2026 WL 208451, at \*5 (Bankr. S.D. Tex. Jan. 26, 2026) ("Hence, many courts interpret § 363(f) to permit bankruptcy courts to approve a sale free and clear of successor liability claims). In the Bankruptcy Case, the Sale Order expressly provides that the purchased assets were transferred to OMLG clear of any liability or "debts arising in any way in connection with any agreements, acts, . . . and all other matters of any kind and nature, **whether known or unknown, . . . filed or unfiled, . . . including claims otherwise arising under any theory, law or *doctrine of successor or transferee liability*.**" Sale Order ¶ 16 (emphasis added).

Plaintiff does not contend that OMLG injured her in any way that would entitle her to recovery. Rather, all conduct that Plaintiff complains of occurred *prior* to the Bankruptcy Case, and thus prior to OMLG's purchase of the Former Lexington Law brand and assets. *See generally* Compl. The *sole* basis for Plaintiff's claims against OMLG is that OMLG purchased assets as a going concern from the Former Lexington Law. *See* Opp. at 5-8 (raising for the first time that Plaintiff's claims are based on a successor liability theory). But Plaintiff fails to understand that the Bankruptcy Court ordered that OMLG shall not have "(a) any liability or other obligation of the Debtors related to the Transferred Assets or (b) any Claims against the Debtors or any of their predecessors or affiliates." Sale Order ¶ 16. Plaintiff's claims, accordingly, remained against the Former Lexington Law, and cannot be asserted against OMLG.

Moreover, though Plaintiff attempts to convince this Court otherwise, she received sufficient and proper notice of the Sale process, during which she should have raised her claims. In its order approving the bidding procedures for the Transferred Assets (the "Bid Procedures

6

Order[5]"), the Bankruptcy Court provided that notice of the Sale process was to be published in *The New York Times* (the "Publication Notice"), and would constitute "sufficient and proper notice of the [Sale process] to any other interested parties ***whose identities are unknown to the Debtors***." Bid Procedures Order ¶ 31 (emphasis added). The Bankruptcy Court expressly found that the Former Lexington Law, through the Publication Notice, properly provided adequate notice to all parties of the Sale. Sale Order ¶ G; *see* Fed. R. Bankr. P. 9008 (authorizing bankruptcy court to determine place and manner of publication notice).

Plaintiff received sufficient and proper notice of the Sale and yet took no action with respect to her alleged claims against the Former Lexington Law. OMLG purchased the Transferred Assets as a going concern, free and clear of any and all liabilities of the Former Lexington Law. The Amended Complaint fails and must be dismissed.

B. <u>OMLG is not a mere continuation of the Former Lexington Law.</u>

Although Virginia law generally provides that "a company that purchases or otherwise receives the assets of another company is not liable for the debts and liabilities of the selling corporation," Plaintiff seeks to avoid this rule by arguing that "the purchasing corporation is merely a continuation of the selling company." *Kaiser*, 123 F.3d at 204 (recognizing four exceptions to the general rule). Plaintiff's attempt to invoke the "mere continuation" exception to support a successor-liability theory fails.

Courts consider not only "whether and to what extent there is an identity of ownership," but also a number of additional factors, including: how the nature and scope of the two businesses compare; whether there has been a transfer of assets for less than adequate consideration; whether two separate entities continue to exist after the transaction; whether the new company operates

---

[5] *See* Order, *In re PGX Holdings, Inc.*, No. 23-10718, ECF No. 331-1 (Bankr. D. Del. Aug. 4, 2023).

with the same trappings as the old company—such as the same address, physical space, and phone numbers; and how the assets of the two companies compare. *Dixon Lumber Co., Inc. v. Austinville Limestone Co., Inc.*, 256 F. Supp. 3d 658, 674-75 (W.D. Va. 2017). However, the Supreme Court of Virginia has found that "[w]hen . . . the purchase of all the assets of a corporation is a bona fide, arm's-length transaction, the 'mere continuation' exception does not apply." *Harris v. T.I., Inc.*, 243 Va. 63, 70-71 (1992) (finding "the facts alleged by the executor would not support a finding that the 'mere continuation' exception applies").

Here, Plaintiff has not—and cannot—allege any facts in the Amended Complaint or the Opposition suggesting that OMLG's acquisition of the Former Lexington Law was anything other than a bona fide, arm's-length transaction. Nor could Plaintiff do so, as the Bankruptcy Court, as noted above, approved the Lexington Law Stalking Horse Purchase Agreement (the "Sale Agreement"), expressly finding that the agreement "constitutes the highest and best offer received by the [Former Lexington Law] for the Transferred Assets," "is fair and reasonable," and "is in the best interests of the [Former Lexington Law], their estates, *their creditors* and all other parties in interest." Sale Order ¶ M (emphasis added). The Bankruptcy Court further found (1) the "sale process engaged in by the [Former Lexington Law] and [OMLG]. . . was . . . in *good faith*, and substantively and procedurally fair to all parties in interest;" (2) "each [entity] acted in *good faith* and without collusion or fraud of any kind;" (3) "[OMLG] is a *good faith purchaser* within the meaning of the Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision;" and (4) "each term of the [Sale Agreement and Order] . . . has proceeded in *good faith*." *Id.* at ¶¶ T-V (emphases added). Based on these findings, the Bankruptcy Court concluded that "[t]he form and total consideration to be realized by the [Former Lexington Law] under the . . . [Sale] Agreement constitutes *fair value, fair, full and adequate consideration, reasonably*

8

*equivalent and reasonable market value for the Transferred Assets*." *Id.* at ¶ W (emphasis added). Thus, OMLG's acquisition of the Former Lexington Law's assets—conclusively established by the Bankruptcy Court as a bona fide, arm's-length transaction—is fatal to Plaintiff's reliance on the "mere continuation" exception necessary to sustain a successor-liability theory.  Moreover, the Bankruptcy Court expressly found that OMLG was ***not*** a mere continuation of Former Lexington Law or any of the Debtors.  *See id.* at ¶ EE.

Plaintiff instead ignores the significance of the Sale Order and cherry-picks the factors that purportedly support her theory that OMLG is a "mere continuation" of the Former Lexington Law. But even assuming a common identity of ownership and that only one corporation remains, those facts do not, standing alone, establish that OMLG is a mere continuation of the Former Lexington Law in light of the Bankruptcy Court's finding that the Sale Agreement was a bona fide, arm's-length transaction.  *See Vir2us, Inc. v. Sophos Inc.*, No. 2:19-cv-18, 2019 WL 8886440, at \*5 (E.D. Va. Aug. 14, 2019) (finding the "acquisition of another company's assets for adequate consideration is evidence of an arm's-length transaction" and "undermines any continuation claim" (internal quotation marks omitted)).  Therefore, Plaintiff cannot prevail on a "mere continuance" theory of successor liability.

## III.    Plaintiff Is Enjoined From Pursuing Her Claim Against The Former Lexington Law.

Plaintiff next attempts to remedy her failed pleading by suggesting that the injunction set forth in the Debtors' Plan violates the Supreme Court's recent decision in *Harrington v. Purdue Pharma, LLP*, 603 U.S. 204 (2024).  But Plaintiff's reliance on *Purdue Pharma* is sorely mistaken.

To begin, the Supreme Court noted in its June 27, 2024 opinion that the holdings therein were not retroactively applicable to Chapter 11 plans that had already been confirmed, become effective, and substantially consummated before the decision was issued.  *Id.* at 226.  The Former Lexington Law's Chapter 11 plan was confirmed on December 26, 2023, *see In re PGX Holdings,*

*Inc.*, No. 23-10718, ECF No. 681 (Bankr. D. Del. Dec. 26, 2023), and went effective on December 29, 2023. *See In re PGX Holdings, Inc.*, No. 23-10718, ECF No. 686 (Bankr. D. Del. Dec. 29, 2023). The Supreme Court's June 2024 opinion in *Purdue Pharma* thus has no retroactive applicability to the Plan. Moreover, the Bankruptcy Case closed on August 25, 2025. Final Decree, *In re PHX Holdings, Inc.*, No. 23-10718, ECF No. 979 Bankr. D. Del. Aug. 25, 2025). Plaintiff cannot now—more than two years after confirmation of the Plan and nearly a year after closure of the Bankruptcy Case—seek to retroactively apply the Supreme Court's holding in *Purdue Pharma*.

Even if the Supreme Court's decision could apply to the Former Lexington Law's Plan (it cannot), Plaintiff reads the opinion far too broadly. In *Purdue Pharma*, the debtors' founders—the Sackler family—negotiated a deal with the debtors that would forever bar and enjoin claims against them relating to the debtors' prepetition activities. *Purdue Pharma*, 603 U.S. at 219. The debtors included the Sacklers' release in terms of their plan of reorganization. *Id*. After a careful review, the Supreme Court narrowly held that the Bankruptcy Code does not authorize a plan of reorganization to provide a discharge or injunction to non-debtor third parties where non-consenting creditors would be bound to such releases. *Id*. at 226.

Here, the liability Plaintiff seeks to impose on OMLG was eradicated by the Sale Order, not the Plan. The Supreme Court did not address Section 363 sales and the ambit of free and clear transfers. Rather, the *Purdue Pharma* ruling is narrowly applied to non-consensual third party releases in plans. *Id.* at 227 ("we hold only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants"). Moreover, Plaintiff's reading of *Purdue Pharma*—that the Supreme Court's decision somehow undermines

10

a plan injunction against a debtor—would completely unravel the entire point and purpose of Chapter 11. That is certainly not what the Supreme Court ruled. Again, the Court limited its ruling to apply only to the question before it: whether a plan of reorganization could provide a non-consensual release to a non-debtor third party. *Id.*

As explained in detail above, OMLG has no liability with respect to the Plaintiff's claims. Those claims may only be raised against the Former Lexington Law; however, the Confirmation Order enjoins Plaintiff from doing so. *See* Plan at Art. VIII.E. The Court must not be persuaded by the Plaintiff's attempt to side-step a foundational principle of bankruptcy law merely because she did not do so in a timely manner during the Bankruptcy Case.

## IV. Any Challenge to the Bankruptcy Orders Falls Within the Bankruptcy Court's Reserved Jurisdiction.

To the extent that the Plaintiff is challenging the sufficiency of the Bankruptcy Court's orders, such as the terms of the Sale Order and the Confirmation Order, this Court is, respectfully, not the proper forum to do so. First, courts are uniquely positioned to understand and enforce their own orders. *Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'Ship*, 608 F. App'x 130, 131 (4th Cir. 2015) ("court that enters an injunctive order retains jurisdiction to enforce its order") (quotation omitted)). Second, particularly with respect to bankruptcy issues, the Bankruptcy Court is the most appropriate forum to make such decisions. *Havenstein v. Blessing (In re Blessing)*, Case No. 16-00182, 2016 Bankr. LEXIS 2619, at *4 (Bankr. D. Md. July 18, 2916) ("[T]he Bankruptcy Court retains jurisdiction to interpret its own order. That interpretation of an order deciding a core matter is within the core jurisdiction."); s*ee* Sale Order ¶ 51 (stating the Bankruptcy Court retains exclusive jurisdiction over issues pertaining to the Sale); Confirmation Order ¶ 106 (stating the Bankruptcy Court "shall retain exclusive jurisdiction over the matters arising in, and under, and related to, the [Bankruptcy Case]"). To the extent the Amended Complaint is not dismissed, the

11

Court may transfer this matter to the Bankruptcy Court to interpret and enforce its own orders. 28 U.S.C. § 157.

## V.    Leave to Amend Is Not Warranted.

In the alternative, Plaintiff requests leave to amend the Amended Complaint to assert factual allegations in support of her successor liability theory.[6] Opp. at 9-10. A court "may deny leave to amend and dismiss with prejudice when amendment would be futile." *Synaptek Corp. v. Sentinel Ins. Co.*, No. 1:18-cv-968, 2018 WL 6042807, at \*3 (E.D. Va. Nov. 15, 2018), *aff'd*, 771 F. App'x 186 (4th Cir. 2019). An amendment is futile "if there is no set of facts that could be proven under the amendment that would constitute a valid and sufficient claim." *Mey v. Patriot Payment Grp., LLC*, No. 5:15-cv-27, 2016 WL 11501450, at \*1 (N.D.W. Va. Jan. 5, 2016); *Does 1-9 v. Murphy*, No. 7:20-cv-00947, 2022 WL 22886817, at \*1 (D.S.C. June 2, 2022) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). As explained in the Motion to Dismiss and herein, Plaintiff's claims fail as a matter of law or, at a minimum, must be transferred to the Bankruptcy Court. Amendment would be futile and cannot cure the fundamental defects in the Amended Complaint. Plaintiff cannot plead around the undisputed facts that: (1) OMLG purchased the Transferred Assets free and clear of any and all claims, including any alleged successor liability claims; (2) the Sale Agreement was a bona fide, arm's-length transaction, as confirmed by the Bankruptcy Court's Sale Order, thereby foreclosing any "mere continuation" theory of successor liability; and (3) pursuant to the Sale Order, Plaintiff is expressly enjoined

---

[6] Despite Plaintiff's contention that she was unaware the Former Lexington Law had sold the company, Opp. at 9, Plaintiff's counsel was informed of the Sale Order approving the sale of Lexington Law Firm as of January 8, 2026. She also specifically named OMLG as the Defendant in this case, revealing she had done enough pre-filing investigation to determine that OMLG had taken over the operation of the Lexington Law brand. Yet Plaintiff made no effort to seek leave to further amend the Amended Complaint.

from pursuing the claims asserted here.  Because leave to amend would be futile, the Amended

Complaint should be dismissed with prejudice and without leave to amend.

## CONCLUSION

For the foregoing reasons, Defendant Oquirrh Mountain Law Group, P.C. d/b/a Lexington

Law respectfully requests that the Court: (1) enter an order dismissing Plaintiff's claims with

prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the

alternative, transferring this case to the United States District Court for the District of Delaware

for referral to the United States Bankruptcy Court for the District of Delaware; and (2) grant

Lexington Law all such other and further relief as the Court deems appropriate.

Date: March 2, 2026                     **OQUIRRH MOUNTAIN LAW GROUP, P.C.**
                                        **D/B/A LEXINGTON LAW**

                                        By: */s/ Noah J. DiPasquale*
                                        Noah J. DiPasquale
                                        Virginia State Bar No. 96519
                                        TROUTMAN PEPPER LOCKE LLP
                                        1001 Haxall Point
                                        Richmond, VA  23219
                                        Telephone: (804) 697-1266
                                        Facsimile: (804) 697-1339
                                        Email: noah.dipasquale@troutman.com

                                        *Counsel for Oquirrh Mountain Law Group, P.C.*
                                        *d/b/a Lexington Law*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March 2026, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Noah J. DiPasquale
Noah J. DiPasquale
Virginia State Bar No. 96519
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point
Richmond, VA  23219
Telephone: (804) 697-1266
Facsimile: (804) 697-1339
Email: noah.dipasquale@troutman.com

*Counsel for Oquirrh Mountain Law Group, P.C. d/b/a Lexington Law*

14